Robert Emert
2351 Vista Lago Terrace
Escondido, Ca 92029
info@fanaticsmedia.com

In Pro Per

**FILED**

Feb 07 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ melindaw        DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

ROBERT EMERT

~~Plaintiff~~

Plaintiff,

and

LUIS VENA; ANDREA SCHUCK;

MATTHEW W. CORD; PATTI C. RATEKIN;

DAVID S. SCHULMAN; LORNA A.

ALKSNE; DAVID J. DANIELSEN; MOORE,

SCHULMAN & MOORE , Robert Olague

AND DOES 1 – 20 inclusive

,

Defendants,

Case No.: **'23CV0230 JM   AHG**

**COMPLAINT FOR**
**1. VIOLATION OF FEDERAL**
**CIVIL RIGHTS, UNDER 42**
**U.S.C. § 1983;**
**2. 5th, 14th AMENDMENT**
**VIOLATIONS**
**3. CONSPIRACY**
**4. NEGLIGENCE;**
**5. WILLFUL MISCONDUCT;**

**DEMAND FOR JURY TRIAL ON**
**ALL CLAIMS**

## Introduction and Opening Statement

This is an action brought by Plaintiff against State Officials and Defendants acting under the color of Law for civil rights violations involving his wrongful arrest and wrongful detention.

At this writing, on February 6, 2023, Rob Emert is detained without bail on charges of parental kidnapping. This allegation is entirely false and is the product of the Defendants' judicial deception - first in the Family Law custody case pending in the Superior Court, and lately in Criminal Court. Defendant's deception is the notion that Mr. Emert's 15-year-old son Bryce is a

1
COMPLAINT

victim of kidnapping. Nothing could be further from the truth. Bryce Emert simply wants to live with his father, not his mother.

This crucial fact - that Bryce Emert wants to live with his father - was fraudulently concealed by Judge Ratekin to obtain a custody order in Family Court, and from the Criminal Court to obtain the warrant under which Mr. Emert was arrested and held without bail. Mr. Emert's Rights to Parent (14th Amend.) and to be free of unreasonable seizure (4th Amend.) have been violated.

Defendants all know that the story they are telling is false. As articulated in the Ninth Circuit case Benavidez v. County of San Diego (2021), judicial deception in a child custody case is grounds for a civil rights action under 42 U.S.C. § 1983.

Furthermore, it will be shown that the real reason Mr. Emert has been detained and held without bail has nothing to do with his son Bryce, but rather is to punish him for criticizing government officials. Over the last year, Mr. Emert has been participating in an email chain in which he complains bitterly about what he believes is the failure of various law enforcement entities to protect his rights. Mr. Emert copied these agencies on many emails, to solicit their opinions and responses.

A Protective Order has now been issued from the Criminal Court finding that Rob Emert's emails are somehow "cause for alarm." Mr. Emert's right to free speech about matters in the public interest (1st Amend.) has been violated.

The arrest and detainment without bail never would have happened if the Superior Court had simply granted Mr. Emert's reasonable request for accommodations under the ADA. In September 2021, on the eve of trial in the custody case, Rob Emert suffered a massive heart attack. While confined to a hospital bed in the cardiac unit of the hospital, Rob requested the reasonable accommodation of appearing remotely at trial. These days, remote appearances through video conferencing software are, of course, routine.

Judge Alksne denied Emert's request for a remote appearance and denied his request to continue the trial. The result was a default judgment of child custody over Bryce being awarded to Rob's ex-wife - Defendant Andrea Schuck. The issue of child custody has thus never been adjudicated on the merits. Those merits would include a consideration of what Bryce wants.

2
COMPLAINT

Defendants, and each of them, know perfectly well what Bryce wants - Bryce wants to live with his dad.

Had the Family Court granted Emert's Request for a Remote Appearance at trial, he would have testified that Bryce wants to live with him, and - if the Court would have allowed it - would have Bryce explain it himself. But granting the accommodation request - reasonable though it surely was - would have defeated Defendants' conspiratorial plan - to deprive Robert Emert of his First Amendment right to free speech, his Fourth Amendment right to be free of unreasonable seizure, and his Right to Parent found in the Liberty Clause of the Fourteenth Amendment. (see e.g. Troxell v. Granville (2000).

For the reasons that follow, Robert Emert comes to this honorable United States District Court seeking redress against these named Defendants for civil rights violations and injuries resulting from the failure, by the Superior Court, to provide reasonable accommodations under the ADA.

At all times relevant herein the Defendants and all State Officials acting under the color of law and outside the scope of their jurisdiction and authority, because of making an order two days after being recused from the case, that willfully caused Plaintiff a damage and reputational injury, and in so doing, violated established law, those laws apply to Plaintiff's rights protected under the constitution as set forth in the complaint particularly under the 4th, 5th, 6th, 8th, and 14th amendments.

Be it known, each ·of the state officials herein has sworn an "oath of office" in regard to their duties and therefore each of their acts under "color" of state law is in direct violation of their oath of office and equates to CONSPIRACY under section 1983.

## I. Jurisdiction

1. Plaintiff brings this action pursuant to sections 1983, 1985, 1986 and 1988 and invokes the jurisdiction of this court pursuant to Title 28 use Section 1343 (A)(3)(4), Section 1331, and pursuant to the 14th Amendment, Title 42 use Section. 1983, and the Civil Rights Act of 1870. At all times relevant, all of the causes of action were committed within the geographical jurisdiction of this court.

2. This Court has supplemental jurisdiction over the pendent state law claims under 28 U.S.C. §1367(a).

3. This is an action for monetary damages and injunctive relief brought pursuant to 42 U.S.C. § 1983, Article III of the constitution, and the common law and statutes of the State of California. This Court has jurisdiction over federal civil rights claims, under 42 U.S. Code § 1983. This court has jurisdiction under 28 U.S.C. §1331,§ 1349, and § 1332. 28 U.S.C. § 1343.

4. The venue is proper in this Court at the Southern District Court of California, San Diego, under 28 U.S.C. § 1391(b) because the Defendants are residents of San Diego County, California.

5. This action is an actual controversy in which Plaintiff Robert Emert seeks a declaration of his/her rights under the constitution of the United States. Under 28 U.S.C. § § 2201-2202 this court may declare Robert Emert rights and grant further necessary and proper relief thereon.

6. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38-1 of the local rules for the Southern District of California, Plaintiff demands a trial by jury for all issues pleaded herein so triable.

## II. Parties

**PLAINTIFF** Robert Emert and individual (hereinafter "Plaintiff" or "Father") is a resident of San Diego County (currently held without bail at Vista Detention Center) and resides in San Diego County Ca, he is the father of the minor children.

**DEFENDANT #1** Luis Pena – District Attorney Investigator, and peace officer for 21 years resides at 330 W. Broadway San Diego, CA 92101. Prosecutors do not enjoy prosecutorial immunity when the actions of a prosecutor are "administrative" or "investigative" in nature especially when it's done pre-indictment See Wearry v. Foster, 52 F.4th 258 (5th Cir. 2022)

    a. On information and belief, Luis Pena is trained as a law enforcement officer and investigator. On information and belief, Pena was hired in the San Diego County DA's office to undertake both prosecutorial investigations and police-style first-instance investigations. On information and belief when acting as a first-instance investigator, Pena takes actions identical to those of law enforcement officers searching for evidence to establish probable cause.

4

COMPLAINT

b. On information and belief, Pena acted at all times relevant in the investigator role, investigating to discover evidence to establish probable cause that a crime may have been committed. On information and belief, no traditional law enforcement agency undertook a probable cause investigation or made known to Pena that probable cause existed. On information and belief, Pena began and conducted a first-instance investigation, prior to the establishment of probable cause, to discover whether or not probable cause existed.

In this position, the actions Pena took were virtually identical to the actions that would be taken by a traditional executive-branch law enforcement officer:

c. That Mr. Pena fabricated evidence and colluded with Cord and Schuck to create evidence relating to the claim that Emert was maliciously withholding and "keeping:" 15-year-old B.E. from Andrea Schuck.

d. That Mr. Pena falsified evidence he gathered related to Emert not attending court hearings between June 2021 and November 2021.

e. That Mr. Pena falsified statements from an anonymous FBI source stating Emert threatened him with a Second Amendment reference.

f. That Mr. Pena and Mr. Cord colluded to introduce false testimony from Cord about witness Fidelman harassing Cord and the false claim that the court didn't find Fidelman credible.

g. That Mr. Pean erroneously stated that Emert had not complied with any court orders without excuse.

h. That Pena was acting at all pertinent times in an investigatory function identical to that of a police officer investigating a case to establish probable cause.

**DEFENDANT #2** Andrea Schuck – Ex-wife of Plaintiff, willing participant, conspirator, and procuring cause. 1171 Elfin Forest Rd, E, San Marcos, Ca 92078

**DEFENDANT #3** Matthew W. Cord, Esq of firm Andrew P. Johnson, APC located at 440 S Melrose Dr #260, Vista, CA 92081, willing participant, conspirator, and procuring cause.

**DEFENDANT #4** Patti C. Ratekin (retired commissioner) is now with ADR firm Signature Resolution. Who recused herself and then made a backdated order- thus losing jurisdiction.

**DEFENDANT #5** Dr. Jesse Olague, Psychologist. 12625 High Bluff Dr 304 & #111, San Diego, CA 92130, examined B.E., falsified reports, and a co-conspirator.

**DEFENDANT #6** David S. Schulman, of Moore Schulman and Moore (MSM) attorney for Ms. Schuck. Co-conspirator resides at 12220 El Camino Real Suite 300, San Diego, CA 92130

**DEFENDANT #7** Lorna A. Alksne (Ret.) Resides at 401 B Street, Suite 2100, San Diego, CA 92101, oversaw Ratekin, was the San Diego presiding judge, and officiated the Emert divorce case.

**DEFENDANT #8** Judge David J. Danielsen, Resides at 1100 Union St, San Diego, Ca 92101, Judge responsible for ordering No Bail.

**DEFENDANT #9** Defenda Moore, Schulman & Moore, APC ("MSM") is a law firm whose principal office is in San Diego County. 12220 El Camino Real Suite 300, San Diego, CA 92130

**And Does 1- 20**

### III. Facts and Background

1. In September 2019, Plaintiff Robert Emert (Emert or Plaintiff) and Andrea Schuck represented by David Shulman of Moore Shulman and Moore filed for divorce. Emert was a full-time stay-at-home father who cared for both minor children (S.E. and B.E.) until the divorce action. The case was filed in the San Diego Superior Court, North County Family Division, in Vista. In addition to legal separation, the case involved substantial contested issues, including child custody and visitation; child support; and spousal support.

2. Emert and Schuck have two children ages (B.E.) 15 and (S.E.) 13

3. Emert and Schuck began their divorce proceeding with court orders of 50/50 custody to both Emert and Schuck. The custody arrangement was a healthy balance for the children to spend time with both parents equally.

4. On January 18, 2021, three weeks before Comm Ratekin became commissioner on Plaintiff's case, she issued a press release stating that she had joined Signature Resolution of San Diego as an ADR private judge.

5. On Feb 4, 2021, nearly two years after the divorce started, Commissioner Patti Ratekin was brought in to preside over Emert's divorce case. Prior to hearing Emert's case, Commissioner Ratekin signed her oath of office. Among other things, the oath includes a promise to comply with Canon 6 of the Code of Judicial Ethics.

6. Canon 6 of California's Code of Judicial Ethics requires the disclosure of information relevant to the question of disqualification, including business relationships with lawyers in the case. "New professional engagements to hear a case as a neutral or temporary judge in which the lawyer for a party in a pending case is also counsel of record in the new case must be disclosed." See Jolie, 66 Cal.App.5th at 1043–44 (emphasis added). This is a continuing obligation. Id. at 1043. Disclosure of new matters must be made "as soon as practicable". Id. at 1043; California Rules of Court 2.831(d). This is reinforced by canon 6(D)(5)(a), which requires a temporary judge, "from the time of notice and acceptance of appointment until termination of the appointment," to disclose in writing or on the record "information that is reasonably relevant to the question of disqualification under Canon 6(D)(3), including personal or professional relationships known to the judge . . . that he or she or his or her law firm has had with a party, lawyer, or law firm in the

7

COMPLAINT

current proceeding, even though the judge . . . concludes that there is no actual basis for disqualification." Id. at 1038–39 (emphasis added).

7. Given Ms. Ratekin had only weeks earlier signed on with Signature Resolution, Ms. Ratekin did not disclose that she was being hired by opposing counsel David Schulman for legal services nor did she at any time during the time she presided over the Emert/Schuck family matter.

8. Mr. Schulman is involved in another federal lawsuit *Nicholas A. Vena v. Moore Schulman & Moore* where Vena had hired JAMS to help mediate his divorce case and Commissioner Jeannie Lowe was chosen to mediate. Currently, Vena has survived a motion to dismiss and an Anti-Slapp motion filed by David Schulman for allegedly paying off Commissioner Jeannie Lowe of JAMS (a San Diego-based ADR firm) after hiring her for NEW matters AFTER Lowe began mediating the Vena divorce matter.

> *"Unbeknownst to Nicholas and his counsel, on September 22, just days after Commissioner Lowe signed her disclosure checklist, MSM (Moore Schulman Moore - David Schulman) began sending a large volume of lucrative business to Commissioner Lowe via JAMS. (Compl. ¶ 26.) The first matter was an expansion of a previously disclosed case, which had been closed but was reopened. (Id.) Over the course of several months, MSM retained Commissioner Lowe in multiple new matters, most of which were ongoing during Nicholas's and Christine's child-custody trial. (Id. ¶ 27.) In total, MSM offered Commissioner Lowe employment in eight new or expanded matters. (Id.) Commissioner Lowe never disclosed any of the expanded or new matters"*

8

COMPLAINT

9. After Vena presented evidence of Commissioner Lowe's dealings with MSM and the undisclosed business came to light, Vena's counsel moved to disqualify her. Ultimately, Commissioner Lowe recused herself and the case was reassigned to Superior Court Judge Victor Torres. On February 17, 2022, Judge Torres issued an order voiding all of Commissioner Lowe's orders "for failure to disclose…." (Id.) Vena contends that by then, he had incurred over $1 million in costs and legal fees for the voided legal proceedings. On April 1, 2022, Vena filed a 42 USC 1983 lawsuit against MSM.

10. On information and belief, Plaintiff understands that Comm Ratekin was being paid by Schulman and Moore in the form of increased matters at Signature Resolution and other undisclosed matters while Ratekin was presiding over Plaintiff's divorce matter and while David Schulman was Schuck's counsel.

11. Commissioner Ratekin never disclosed the any of new matters initiated by MSM while Ratekin was working at Signature Resolution while simultaneously adjudicating the divorce matter.

12. Had the undisclosed business dealings come to light, MSM, and Schulman knew that Commissioner Ratekin would likely be deemed disqualified as of the date she began engaging in undisclosed business dealings with them.

13. The purpose of the continuing disclosure requirement is to provide transparency for parties to assess a judge's impartiality and, if necessary, take action such as seeking disqualification. Failure to disclose information undermines this objective and creates a situation where some parties may have an unfair advantage and others are misled. This results in decisions that are based on favoritism and undue influence rather than

impartiality and the merits of the case. The importance of disclosure is especially crucial for Presiding Civil Trial Judges, as they are not protected from the potential conflicts of interest that arise from their business relationships with lawyers, unlike public judges. *[See Hayward v. Superior Court, 2 Cal.App.5th 10, 52 (2016)]*

14. Residents of San Diego should be cautious of potential cases of unethical influence due to a past bribery scandal that occurred in the city's legal system. In this case, prominent attorney Patrick Frega, bribed three superior court judges, Michael Greer, James Malkus, and G. Dennis Adams: United States v. Frega, 179 F.3d 793 (9th Cir. 1999). Greer admitted to accepting benefits from Frega and biased decisions, while Malkus and Adams were convicted of accepting gifts from Frega. All three judges either resigned or were removed from their positions. This previous incident should be kept in mind as Commissioner Ratekin may have had similar dealings with MSM, potentially receiving more benefits and expecting future business from them.

15. In the course of the litigation, Schulman leveraged MSM's favorable position by advancing frivolous arguments, misstating the facts on record, and disregarding procedural requirements. Schulman and other defendants engaged in this conduct with the full knowledge that Commissioner Ratekin would be unlikely to enforce accountability against them.

16. Comm Patti Ratekin's first day hearing the Emert case, without testimony, and without reviewing the case, made an unsubstantiated claim, "Because the place where I see your child (14-year-old B.E.) heading is some kind of a 24-hour school where he's going to be

COMPLAINT

in a boarding type of situation". It appeared to be word for word for what the minor's counsel for B.E. Matthew Cord and Andrea Schuck had asked for outside of court.

17. Comm Ratekin later ordered the parties to see Dr. Jesse Olague about the mental condition of B.E.

18. On Aug 12, 2021, concerned that something didn't seem right, Plaintiff asked a representative of 501 (c) (3) charity Kids Matter to listen in on a meeting with Dr. Olague.

19. Then in a second meeting on Aug 26, 2021, Plaintiff asked that same representative to listen in on that conversation as well. In both of the meetings, at no time did Dr. Olague make any negative recommendations about minor B.E. stated that B.E. was doing fine.

20. However, in Dr. Olague's reports that were intended for the court, he completely mischaracterized and misrepresented what was said in both of those meetings. Dr. Olague, upon learning that a witness was going to contradict his testimony in court, decided to remove himself as a witness.

21. On Sept 29, 2021 minor's counsel for B.E. Matthew Cord filed an emergency ex-parte to reduce Emert's custody of the children.

22. As a result of Mr. Cord's request, Plaintiff suffered a disabling heart attack on Sept 29, 2021, and was hospitalized. (a) Plaintiff was impaired both physically and mentally (b) the impairment led to doctor's orders limiting stressful activities and physical exertion including travel (c) the impact of another high-stress event could prove fatal.

23. The following day, on 9/30/2021, Despite being hospitalized, Ms. Ratekin demanded Plaintiff attend the Ex-parte from my hospital bed. Upon seeing Plaintiff in the hospital

bed, and with my doctor looking on, Ms. Ratekin continues the hearing to 10/4/ 2021 and writes in the minute order that there is no change in custody and the ex parte will continue 10/04/21 (Monday).

24. On 10/4/2021, the morning of the ex-parte, Ms. Ratekin learns from Mr. Cord that B.E. was not in school (he was in Ms. Schuck's care), Ms. Ratekin stops the Ex Parte and says that she is going to shut down the ex parte hearing to find a "facility" to place Bryce in.

25. Plaintiff later learned that on 9/30/2021, Ms. Ratekin, who had continued the ex-parte case until 10/4/2021, claims she entered an order for supervised visitation of B.E and S.E on 9/30/2021.

26. **Based on information and belief, Ms. Rateken back-dated the order AFTER she recused herself.**

27. Comm Ratekin claimed to have made the order based on a witness affidavit mentioned above who witnessed fraud from B.E.'s psychologist Dr. Jesse Olague. Plaintiff alleges Comm Ratekin, made a retroactive order for supervised visits of Plaintiff's children because a Kids Matter Charity member witnessed Dr. Olague lie in his report (then later Dr. Olague recused and pulled the report).

28. On Oct 4, 2021, Comm Ratekin recuses herself and then presiding Judge Alknse takes over the case personally.

29. On Oct 7, 2021, at the height of Covid and only a week after Plaintiff's heart attack, Judge Alksne held another ex-parte emergency hearing where Plaintiff wasn't served (Plaintiff had been recovering at the hospital). Learning at the last minute that the hearing

was taking place, Plaintiff tried to log in remotely (as was customary at the time) but was denied access to this hearing.

30. On Oct 8, 2021, yet another emergency hearing was held by Judge Alksne, and Emert and his witnesses were denied access to the hearing.

31. On Nov 10, 2021, due to the continuing issues with his heart attack,  Emert submitted an ADA MC-410 form requesting ADA accommodations on the written recommendation of Emert's doctor Damian Rasch of the San Diego Cardiovascular Associates based on the lingering effects of his heart attack.

32. On Nov 29, 2021, During yet another hearing, Plaintiff's  ADA coordinator, his witnesses, and Plaintiff are denied access to the hearing despite Judge Alknse receiving a letter from Plaintiff's cardiac specialist letter along with three other doctors letters that a remote hearing was the proper course of action under Cal Rule 3.1332 and is common court protocol regarding medical emergencies and medical conditions.

33. From Sept 30, 2021, and through Plaintiff's arrest on Jan 3, 2023, minor B.E. refused to return to his mother for fear that she would put him in foster care. Emert tried to convince 14-year-old (now 15-year-old) B.E. to see his mother, but B.E. refused to see Schuck, citing that she would mentally abuse him.

34. On Sept 19, 2022, Emert filed and served an RFO for custody of B.E. given B.E. refused to visit Ms. Schuck. Plaintiff encouraged and never stopped B.E. from being in Ms. Schuck's custody.

13
COMPLAINT

35. Since early 2022, Emert had made several attempts with the district attorney and the court to resolve these issues created by conspirators Mr. Cord, Ms. Ratekin, Ms. Schuck, and Dr. Olague.

36. Several matters listed above are still on appeal and ongoing. During 2022, Plaintiff coordinated with the District Attorney Investigator Steven Mcintosh to try to get the matter resolved amicably.

37. Throughout 2022, Mr. Mcintosh told Plaintiff on several occasions that Mr. Cord and Ms. Schuck were actively attempting to have Mr. Emert arrested. Mr. McIntosh was sympathetic to Emert's situation and was guiding Plaintiff to resolve the situation.

38. Throughout 2022 and on several occasions Plaintiff wrote emails to the District Attorney's office, Ms. Schuck, Mr. Schulman, and Mr. Cord outlining the transgressions that were made against Plaintiff.

39. When McIntosh retired as Investigator in November 2022, current DA investigator Luis Pena took over and coordinated with Melissa Diaz, Chief of Family Protection in the District Attorney's office, Ms. Schuck, and Mr. Cord, to have Plaintiff arrested.

40. On January 3, 2023, without a valid warrant, Plaintiff was arrested by Federal Marshals, and Emert's son B.E. was tackled, punched, and placed into custody. This incident was captured on video by minor B.E.

41. Although San Diego's bail schedule sets the amount around $50,000 based on the District Attorney's complaint, Mr. Pena and Ms. Diaz recommended $1,000,000 bail which Plaintiff asserts lacks objective reasonableness.

42. However, without notice, explanation, or change of circumstances, Judge Kimberlee Lagotta, changed the $1 million bail to **NO BAIL**

43. Plaintiff was then kept in jail for 72 hours without seeing a judge. Then on Jan 6, 2023, after not reading the 10-page complaint by the DA, the court ruled that she was going to stick with Judge Lagotta's bail recommendation.

44. On Jan 6, 2023. At no time did the Judge inquire as to Plaintiff's financial situation to afford bail, nor did he inquire as to whether Plaintiff had any weapons.

45. On January 13, 2023, a retired judge brought in for this matter denies bail, citing a letter from Plaintiff's sister Dawn Emert (Attached) where the judge states, "And I don't believe his family, and I think they've communicated to me, are convinced that he's prepared to stand down. And in fact, they feel they need to be on alert to notify the authorities if he's ready to go off again." As any plain reading of the letter from any reasonable person would show, this was not the intent of Dawn Emert.

46. At the Jan 13, 2023 bail hearing. At no time did the Judge inquire as to Plaintiff's financial situation to afford bail, nor did he inquire as to whether Plaintiff had any weapons.

47. All actions of Defendants were committed with the intention to restrain and confine Plaintiff under the color of law without reasonable bail. The arrest was not justified by probable cause and was unreasonable for the violations of clearly established law.

48. Plaintiff was conscious of his confinement and the fact that said bail was unreasonable and not justified by San Diego's bail schedule given the charges. Plaintiff stated as such in his pleadings and on the record on Jan 6th and 13th 2023 in court.

49. In sum, the Defendants' wrongful behavior resulted in material and irreparable harm to Emert. At the start of the custody trial, Emert and Schuck had joint legal custody of all the children. After Comm Ratekin was brought in as commissioner, Comm Ratekin threatened to put B.E. in foster care and later removed parental rights from Emert as a result of a witness signing a declaration in support of Emert. In an attempt to cover for Ms. Ratekin's unconstitutional set of decisions, Judge Alksne, despite the ADA request from Emert on Nov 10, 2021, then orders a new hearing but denies Emert and his witnesses remote access into the court (during the height of Covid) which resulted in a default custody decision against Emert.

50. As a result of the above, in January 2023, defendants Pena, Cord, and Schuck's conspired to create a false set of allegations in support of a warrant to arrest Emert. Plaintiff has suffered numerous damages and other expenses, and loss of the constitutional right to liberty and freedom. Plaintiff was further traumatized, distressed, and lost employment wages from the unlawful arrest and incarceration by Defendants.

**51.** All of the Defendants, at all times related herein, acted wantonly, recklessly, willfully, and maliciously, and "in concert" with additional state, city, and county officers showing a deliberate indifference towards Plaintiff and Plaintiff's rights protected, and guaranteed, by the Constitution, with the direct intent and sole purpose of injuring, humiliating, vexing, oppressing, and causing mental anguish to Plaintiff.

### IV. Federal Causes of Action

All allegations set forth in paragraphs 1 through 51 are incorporated herein by reference.

1

2                                FIRST CAUSE OF ACTION

3    **[42 U.S.C. §1983 Constitutional Violations of Federally Protected rights Declaratory Relief**

4                          **Requested by Plaintiff against Defendants]**

5

6    52. Plaintiff re-allege all prior paragraphs of this complaint and incorporates the same herein

7        by reference.

8
     53. Pena and the defendants deprived Emert of his rights under the Fourteenth Amendment to
9
         the Constitution when Pena deliberately fabricated evidence about Emert maliciously
10
         withholding and keeping 15-year-old B.E. from Andrea Schuck. That Pena deliberately
11
12       made false statements from an anonymous FBI source. That Pena falsified evidence that

13       Emert didn't attempt to attend court hearings that were all used to obtain a criminal

14       charge of PC 287.5 (a) and $1,000,000 in bail.
15
     54. Pena's deliberate fabrication of evidence and use of perjury for purposes of oppression
16
         violates the rights of Emert and B.E. "[G]overnment perjury and knowing use of false
17
18       evidence are absolutely and irreconcilable with the Fourteenth Amendment's guarantee

19       of Due Process in our courts . . .. There are no circumstances in a dependency proceeding

20       that would permit government officials to bear false witness against a parent." Hardwick
21
         v. Vreeken, 844 F.3d 1112, 1120 (9th Cir. 2017).
22

23   55. Plaintiff has a firmly established right to be free from seizure under the fourth

24       amendment, fair due process under the fifth amendment, pre-trial due process, and equal

25       protection under the Fourteenth Amendment and reasonable bail under the Eighth
26
         Amendment.
27

28                                           17
                                        COMPLAINT

56. Injunctive relief is appropriate because the NO BAIL condition set by the court is expected to continue into the future and Plaintiff will be subjected to it repeatedly. Plaintiff is asking for declaratory relief to instruct the state court to refrain from violating federal law. The Ninth Circuit has concluded that a statute containing citizen suit provisions could not have been intended to abrogate the Ex Parte Young exception.

57. On information and belief, Plaintiff alleges that his written emails indicated above enraged the District Attorney staff, Mr. Schulman, Ms. Schuck, and Mr. Cord, and thus caused the defendants to conspire and pursue charges against Plaintiff. The emails that included defendants were part of a wider distribution to news outlets and city officials. Defendants were so enraged and embarrassed by Plaintiff's emails, that they eventually convinced a new District Attorney Investigator Luis Pena with support from Ms. Diaz to press forward with an arrest for Plaintiff's arrest under false circumstances of a backdated court order created 14 months prior.

58. On information and belief, Plaintiff alleges that because of Plaintiff's email activities that embarrassed defendants cc'd on his emails, the new District Attorney Pena asked for $1,000,000 bail.

59. Defendant Cord made false statements to Pena. His claims about Fidelman are not true as Fidelman has never met, spoken, or communicated electronically with Cord. Moreover, Cord misled the DA about Comm Ratekin's ruling that Fidelman was found not credible. Fidelman never testified in court nor did Ratekin rule the declaration as not credible. Pena used this information to bolster his arrest warrant and $1 million bail request.

60. Defendant Pena made false allegations in his declaration by stating that minor B.E. was "maliciously withholding and keeping B.E…. from Ms. Schuck." Pena never spoke to or corresponded with B.E. as the previous DA McIntosh had. If Pena had done a proper investigation B.E. would have told him that as a 15-year-old, he was CHOOSING to stay with his father and that his father could not force him to go to Ms. Schuck's house. *Coursey v. Superior Court, 194 Cal.App.3d 147 (Cal. Ct. App. 1987)* affirms that an investigation must be made as to whether the father stopped his 15-year-old from obeying the court order, or that the 15-year-old was refusing to go. No such investigation was made by Mr. Pena or the Superior court. "Mr. Pena also states that a hearing was held by Alskne, on Nov 29, 2021, and that Emert was aware of the hearing and didn't show up. Pena again failed to conduct a proper investigation. Plaintiff, along with three witnesses did attempt to log in to the hearing but Judge Alksne BLOCKED Plaintiff from attending. Plaintiff informed the court before and after the hearing along with witness statements. In fact, for every hearing Pena refers to, Plaintiff attempted to attend and was blocked by the court even though Plaintiff filed an ADA request with the court after his heart attack. Pena has misled the court in his declaration by stating that Plaintiff didn't share future court dates with DA McIntosh. That is categorically untrue. Plaintiff not only kept DA McIntosh apprised of his court dates, but Plaintiff did attend them up to and as late as December 2022. Worse, Pena violates Plaintiff's 4th (without a valid warrant), 5th (due process), and 14th Amendment (pre-trial due process) due to Pena's exaggerations and reliance on 3rd party witnesses without attribution and a proper investigation.

61. Mr. Pena's $1 million bail request and Judge. Lagotta's subsequent NO BAIL order is objectively unreasonable. The San Diego bail schedule lists the offense charged for Parental Kidnapping at $50,000 in their bail schedule.

62. Pena breached his duty when he failed to review the files and properly investigate the claims made by Plaintiff in advance of signing Pena's declaration. Pena's breach actually and proximately caused the arrest and NO BAIL detention and the damage that resulted from such arrest, and detention, including but not limited to emotional distress.

63. At the bail review hearing on Jan 13, 2023, retired Judge David Danielsen didn't inquire about Emert's financial situation and deliberately misinterpreted the letters in support of Emert. On information and belief, Plaintiff believes the San Diego criminal courts are denying bail as a precaution against the impact of In Re Humphrey. According to a joint UCLA and Berkeley law report in, *COMING UP SHORT The Unrealized Promise of In re Humphrey,* judges are interpreting Humphrey as increasing their authority to order no bail holds. Stating that, Judge Couzens is essentially telling judges that they can detain individuals with no bail when their risk level is any higher than "some risk." The Humphrey court, however, did not delineate the options in this way. The court stated, "Where the record reflects the risk of flight or a risk to public or victim safety, the court should consider whether nonfinancial conditions of release may reasonably protect the public and the victim or reasonably assure the arrestee's presence at trial.

64. This bail-procedure action will not interfere with the state court criminal proceeding. Plaintiff does not seek to enjoin the criminal proceeding and does not seek to in any way

inhibit the prosecution of underlying state criminal action. No state statute requires

staying of the criminal action, plaintiff does not intend to ask for such a stay.

65. Absent this court's intervention, Defendants will continue to violate Plaintiff's right in

the manner described herein.  Plaintiff requests the court issue a declaratory relief in

regard to the unreasonable bail.


## SECOND CAUSE OF ACTION:

[42 U.S.C. §1983 Constitutional Violations– 5th Amendment right to present a defense, 14th
amendment procedural due process claim of unfair procedures.  Alksne, Ratekin – **Declaratory
Relief ONLY Requested**]

66. Plaintiff re-allege all prior paragraphs of this complaint and incorporates the same herein

by reference.

67. Pursuant to 42 U.S.C. § 1983, individuals may assert a claim for violations of federal

rights committed by persons acting under the authority of state law. This includes private

individuals who participate in joint action with state officials, as confirmed by the

decisions in West v. Atkins, 487 U.S. 42 (1988) and Dennis v. Sparks, 449 U.S. 24

(1980). Even if state officials, such as judges, are immune from monetary liability, they

can still be subject to declaratory relief.

In the instant matter, Commissioner Ratekin and Alksne acted in concert in perpetrating

the illicit pattern of behavior at issue. Ratekin, under the influence of Schulman, created a

backdated order to remove Emert's children from his custody, then recognizing the issue,

Alksne created new hearing dates to obtain the same custody removal court order as

Ratekin. However, Alksne did not allow "reasonable" modifications that do not impose

an undue burden and do not fundamentally alter the nature or character of the

governmental program for an ADA-disabled Emert into the November 2021 hearings to

COMPLAINT

present his side of the case. In November 2021, at the height of Covid, the normal court practice was to allow any citizen access to the courts via Microsoft Teams.

68. Ratekin and Alksne deprived Emert of his rights under the Fourteenth Amendment to the Constitution when Ratekin and Alksne removed Emert's children, B.E. and S.E from his custody based on Emert's witness (Fidelman) declaration alleging Olague committed perjury (Ratekin) and blocking Emert's right to a defense (Alksne).  Ratekin made the first court order through judicial deception by using the witness's (Fidelman) declaration as a pretext for a reckless disregard for the truth.

69. The constitutionally-protected right to Due Process requires, at a minimum, an impartial adjudicator. Because Commissioner Ratekin was not impartial and because Alksne blocked Emert from attending his own hearings despite his disability, they violated Emert's 5th Amendment Due Process rights.

### THIRD CAUSE OF ACTION:

[42 U.S.C. §1983 Constitutional Violations 14th Amendment: Conspiracy of Defendants and state actors to deprive Plaintiff his Federally Protected Rights]

70. Plaintiff re-allege all prior paragraphs of this complaint and incorporates the same herein by reference.

71. Title 42, United States Code, Section 1983 provides a private right of action for an individual injured by the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of law. Plaintiff asserts that the conspiracy conduct of the Defendants was committed by the Defendants acting under color of state law along with judicial officials; and that the conspiracy conduct deprived the plaintiff of his rights privileges and immunities secured by the Constitution.

72. A §1983 claim is available to vindicate the violation of federal rights by persons acting under color of state law. As explained in West v. Atkins, 487 U.S. 42 (1988) and Dennis v. Sparks, 449 U.S. 24 (1980), a § 1983 claim is also properly brought against private persons who participate in joint action with state officials. This is so even if the state officials (e.g., District Attorneys and judges) are themselves immune. In carrying out the illicit pattern of behavior, Commissioner Ratekin, Olgaue, Cord, and Schulman were acting in concert. Without the participation of Schulman and Cord, there would have been no improper influence, since no business and money would have been funneled to Commissioner Ratekin. Furthermore, without the prospect of more business and more money to follow, Commissioner Ratekin would not have been so powerfully influenced to remain in Schulman's (representing Schuck) good graces.

73. Conspiracy with state actors is another way private persons can be held liable under 42 USC §1983. Although this claim does not rely on an explicit conspiracy, it is also likely Ratekin, Olague, Cord, and Schulman through their repeated dealings with her, entered into an explicit understanding with Commissioner Ratekin. If discovery from Signature Resolution reveals enough information to plead the existence of a conspiracy, Plaintiff may seek an opportunity to amend to add that as an alternate theory.

74. Commissioner Ratekin's judicial behavior included Schuck, Schulman, Olague, and Cord induced and participated in went beyond mere violations of state ethical rules, and rose to the level of a federal Due Process violation.

75. The Constitutionally protected right to due process requires, at a minimum, an impartial adjudicator. Because Commissioner Ratekin was not impartial and because Schulman,

Cord, Olague, and Schuck procured her partiality, they violated Plaintiff's federal Due Process rights.

76. While actual bias violates Due Process, even a sufficient probability of bias is enough to violate the Constitution. Withrow v. Larkin, 421 U.S. 35, 47 (1975). The standard turns on whether circumstances would offer a "possible temptation" to an average person in the judge's position that might lead her or him "not to hold the balance nice, clear and true". Caperton, 556 U.S. at 878. These circumstances include, among other things, situations where the adjudicator has a pecuniary interest in the outcome. The expectation of future employment, income, or other financial benefits, even if relatively small, can satisfy this standard. Id. at 877–79.

77. By offering Commissioner Ratekin financial incentives to favor Schuck or disfavor Plaintiff, which she accepted and which they knew she would not disclose, Schulman and Schuck offered her a temptation "not to hold the balance nice, clear and true." This by itself violated Petitioner's Due Process rights, even without a showing of actual bias. In this case, however, Commissioner Ratekin did exhibit actual bias towards Schuck and against Plaintiff.

78. Not only did Commissioner Ratekin accept a series of lucrative engagements, which inured her to a financial benefit, but just as Schulman and Schuck hoped and expected, she also did not disclose them. Although the probability of bias is enough, the presence of bias a fortiori violates Due Process.

79. Plaintiff's constitutional injury is especially acute here because he was litigating a family law matter, in particular, the dissolution of his marriage. In California, litigation in family

COMPLAINT

court is the only way this is possible. As such, he has a Due Process right to be heard in state court. Boddie v. Connecticut, 401 U.S. 371, 382–83 (1971). Depriving him of a neutral judge blocks him from exercising this right.

80. This cause of action ultimately created the circumstance to arrest Plaintiff from Actions One and Two above depriving Emert of his federally protected rights.

81. At the very least, Plaintiff would be entitled to nominal damages for his Constitutional injury. However, his actual damages were substantial. Plaintiff is now incarcerated without bail based on the order of Commissioner Ratekin and Judge Alksne who endorsed it.

82. Plaintiff is entitled to an award of punitive damages, because Defendants acted oppressively and maliciously, with gross negligence and willful misconduct, and/or in reckless disregard for Plaintiff's civil rights. See Dang v. Cross, 422 F.3d 800, 808 (9th Cir. 2005).

83. The Court can and should award Plaintiff's attorney's fees in this action, as authorized by 42 U.S.C. § 1988(b).


## FOURTH CAUSE OF ACTION:

[42 U.S.C. §1983 Negligence, Schulman, Cord]

84. Plaintiff re-allege all prior paragraphs of this complaint and incorporates the same herein by reference.

85. As a member of the state bar, Schulman and Cord had a duty to refrain from extrajudicial actions that would reasonably foreseeable cause harm to Emert.  Rogozienski v. Allen,

2007 WL 867773, at *7 (Cal. Ct. App. 4 Dist. Mar. 23, 2007)[1]. Schulman shared that duty to Emert when he channeled lucrative business to Ratekin that she never disclosed before, during, and after the Plaintiff's divorce proceeding. The defendants knew it would not be disclosed, and which they knew was not likely to be discovered.

86. Schulman and Cord's breaches of duty directly and proximately caused Plaintiff to suffer injuries as alleged above, financially, personally, and a loss of liberty.

<u>FIFTH CAUSE OF ACTION</u>:

[42 U.S.C. §1983 Willful Misconduct, Schulman, Cord, Olague, Schuck]

87. Plaintiff re-allege all prior paragraphs of this complaint and incorporates the same herein by reference.

88. As a member of the state bar, Schulman and Cord had a duty to refrain from extrajudicial actions that would reasonably foreseeably cause harm to Emert.  Rogozienski v. Allen, 2007 WL 867773, at *7 (Cal. Ct. App. 4 Dist. Mar. 23, 2007). Schulman shared that duty to Emert when he channeled lucrative business to Ratekin that she never disclosed before, during, and after the Plaintiff's divorce proceeding. The defendants knew it would not be disclosed, and which they knew was not likely to be discovered.

---

[1] Although Rogozienski is unpublished and therefore nonprecedential, this Court can consider it. See Employers Ins. v. Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003). Because the facts and many of the claims in Rogozienski are closely analogous to those here, it serves as a guide in this action.

89. Schulman breached his duty to Plaintiff when he channeled lucrative business to Commissioner Ratekin that neither she nor he disclosed, which they knew would not be disclosed, and which they knew was not likely to be discovered promptly, if ever.

90. Schulman also influenced Olague and Cord to work in concert with his litigation strategy and attempt to obtain a favorable outcome for his client Schuck. Schuck endorsed and encouraged this plan.

91. Schulman knew or should have known that his actions would probably cause actual harm to Plaintiff. In particular, he expected and hoped that Commissioner Ratekin would be biased in his client Ms. Schuck's favor, and in fact, she was. They also knew that if Commissioner Ratekin's undisclosed business dealings with Schulman came to light, Commissioner Ratekin would likely be disqualified and her orders vacated as of the date the disqualification arose.

92. Defendants knew it was probable that as a direct and proximate result of their willful misconduct, Emert would suffer injuries as alleged above, both financial and personal.

93. Plaintiff did suffer resulting financial and personal injuries as alleged above, and he is entitled to an award of compensatory damages. Because Schulman acted oppressively, maliciously, and with willful and conscious disregard of Emert's rights, Emert is also entitled to an award of punitive damages.

**ADA CLAIMS**

**[42 U.S.C. § 12132 Title II and § 504 of the Rehabilitation Act of 1973 claims - Declaratory Relief: Denial of Access to Courts and Right to Petition, Judge Lorna Alksne, State of California]**

94. Plaintiff realleges and incorporates herein by reference as though fully set forth each and every allegation contained in Paragraphs 1 - 51 and specifically paragraphs 21 - 24, 31, 32, 49, 60, 67 of this Complaint.

95. Plaintiff was admitted to the Palomar Medical Center hospital on 9/29/2021 with a severe heart attack. His physician Dr. Damian Rasch, stated in a letter on Nov 4, 2021, that Emert required "urgent angioplasty and percutaneous coronary intervention with stenting," from a "significant heart attack".

96. On 10/7/2021 and 10/8/2021 the court held emergency hearings that required Plaintiff to physically attend the court hearings. Plaintiff requested remote hearings by video conference but was denied a reasonable accommodation for both hearings by Lorna Alksne, Presiding Judge of San Diego. Remote access is common in that courtroom and they use Microsoft Teams.

97. On Nov 29, 2021 Plaintiff was again denied access to the courts by Judge Alksne. Plaintiff believes he was discriminated against because of Plaintiff's disability in violation of The Americans With Disabilities Act of 1990, as amended.

98. Had Plaintiff been granted access to the courts, a judgment in Family Court *on the merits* would have been shared custody, instead the court gave Schuck full custody despite B.E. who was 14 at the time, stating that he wanted to live with his father. California law presumes frequent and continuing contact with both parents is in the best interest of the child.

99. The Court should find that (1) a recent heart attack is a "disability" and (2) that a remote hearing is a "reasonable accommodation" under the meaning of the ADA.

COMPLAINT

100.    But for the denial of a remote hearing, the default judgment of full custody to Schuck would not have been entered. This is because Emert was not found to be an unfit father and was the children's primary caregiver from birth.

101.    Absent the default judgment, there was no basis for the warrant.

102.    Plaintiff qualifies for ADA protection under **42 U.S.C.** Sec. 12102 due to his ongoing issues from his heart attack in Oct 2021 and continues to require medication for it.

103.    Access to courts is specifically protected by the Due Process Clause of the Fourteenth Amendment.

104.    As a result, Plaintiff has been deprived of meaningful access to the courts in violation of the First and Fifth Amendments to the United States Constitution.

105.    Emert has been incarcerated since Jan 3, 2023, and any amount of jail time is irreparable harm.

## **RELIEF AND PRAYER**

WHEREFORE Plaintiff Robert Emert demands judgment against the defendants, jointly and severally, as follows:

a. As for the First Cause of Action, Under § 1983, declaratory relief on unreasonable bail

b. As for the Second Cause of Action, declaratory relief on the process used to obtain the court order to remove children from Emert.

c. As for the Third Cause of Action, Conspiracy of Defendants and state actors to deprive Plaintiff of his Federally Protected Rights, compensatory damages in an amount to be established at trial (or, in the alternative, nominal damages), punitive damages, and attorney's fees.

d. As to the Fourth Cause of Action for negligence, compensatory damages in an amount to be established at trial.

e. As to the Fifth Cause of Action for willful misconduct, compensatory damages in an amount to be established at trial, and punitive damages

f. ADA Violations Declaratory Relief and compensatory damages in an amount to be established at trial for ADA and federal civil rights violations.

g. For costs of suit incurred therein;

h. For such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY IS HEREBY DEMANDED·

"The Supreme Court has instructed the federal courts to liberally construe the inartful pleading of pro se litigants. It is settled that the allegations of [a pro se litigant's complaint] however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers." Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) (citation and internal quotations omitted; brackets in original); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); Hamilton v. Brown, 630 F.3d 889, 893 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010); Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010); Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008); Johnson v. California, 207 F.3d 650, 653 (9th Cir. 2000) (per curiam); Frost v. Symington, 197 F.3d 348, 352 (9th Cir. 1999).

Respectfully submitted,

Robert Emert
2351 Vista Lago Terrace
Escondido, Ca 92029

30
COMPLAINT

1

VERIFICATION

2

State of California                          ]

3

County of San Diego                    ] SS.

4

]

5

6

I, Robert Emert in the attached Complaint for damages, does affirm by his signature hereon, the

7

facts and allege therein and further affirm said facts and allegations to be true and correct to the

8

best of my knowledge and belief,

9

10

11

Robert Emert
2351 Vista Lago Terrace
Escondido, Ca 92029

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31

COMPLAINT