1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

ROBERT EMERT,

Plaintiff,

v.

LUIS VENA et al.,

Defendants.

Case No.:  23-cv-230-RSH-AHG

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

[ECF Nos. 4, 5, 8, 22, 51, 52]

18

19

20

21

22

Pending before the Court are numerous motions: (1) four motions to dismiss filed by various defendants, ECF Nos. 4, 5, 8, 22; (2) Plaintiff Robert Emert's motion for removal, ECF No. 51; and (3) a motion to intervene brought on behalf of Plaintiff's minor son, B.E., ECF No. 52. As explained below, the Court grants Defendants' motions to dismiss, and denies the remaining motions.

23

**I.    BACKGROUND**

24

25

26

Plaintiff filed this lawsuit on February 7, 2023. ECF No. 1. His Complaint names nine defendants: (1) Luis Pena;[1] (2) Andrea Schuck; (3) attorney Matthew Cord; (4)

27

28

---

[1]    Luis Pena was named in the Complaint and is listed in the caption as "Luis Vena."

1

1   Commissioner (Ret.) Patti C. Ratekin; (5) psychologist Dr. Jesse Olague; (6) attorney

2   David S. Schulman; (7) Judge (Ret.) Lorna A. Alksne; (8) Judge David J. Danielson; and

3   (9) the law firm of Moore, Schulman & Moore APC. *Id.*

4        Plaintiff's lawsuit arises from two pending cases in San Diego Superior Court, one

5   family proceeding and one criminal proceeding.[2] Additionally, before filing this lawsuit,

6   Plaintiff filed a related lawsuit against Commissioner Ratekin, which this Court dismissed.

7   These three cases are discussed below.

8       **A.**    **The Family Case**

9        The first proceeding, *Emert v. Emert*, No. 19FL010852N (San Diego Cnty. Super.

10   Ct.) (the "Family Case"), is a family dissolution case between Plaintiff and his former

11   spouse, Defendant Schuck, filed on September 6, 2019, in San Diego Superior Court. ECF

12   No. 8-2 at 1-4. Plaintiff proceeded pro se, Defendant Schulman represented Defendant

13   Schuck, and Defendant Cord was appointed counsel for one of the couple's two minor

14   children. *Id.* With the Parties' stipulation, Commissioner Ratekin began presiding over the

15   Family Case on February 4, 2021, until she recused herself on October 4, 2021. *Id.* The

16   case was reassigned to Judge Alksne, who presided over the trial in the case on November

17   29, 2021. *Id.* at 16-17. At the conclusion of trial, Judge Alksne awarded sole legal and

18   physical custody of the two children to their mother. *Id.* at 19.

19       At the time Plaintiff filed his current federal lawsuit in February 2023, the Family

20   Case was still pending, with hearing dates set out months in the future. *Id.* at 57.

21       **B.**    **The Criminal Case**

22        On January 4, 2023, Plaintiff was charged by complaint with one felony count of

23   child abduction for violation of custody/visitation rights pursuant to California Penal Code

24   § 278.5(a), in *People v. Emert*, No. SCD297230 (San Diego Cnty. Super. Ct.) (the

25   "Criminal Case"). *Id.* at 58-59. The criminal complaint alleges that between October 7,

26

27

28   [2]    The Court takes judicial notice of filings Defendants submitted from these cases. ECF Nos. 8-2, 46-1.

2021, and August 17, 2022, Plaintiff unlawfully took and withheld a child and deprived a lawful custodian of that child the right to custody. *Id.*

At Plaintiff's arraignment on January 6, 2023, his motion for release from custody was denied. *Id.* at 61. Following bail review hearings on January 11 and 13, 2023, Judge Danielson denied bail. *Id.* at 62-63. A preliminary hearing was held on February 10, 2023, at which Defendant Pena, an investigator for the San Diego County District Attorney's Office, testified as a witness. *Id.* at 64. At the end of the preliminary hearing, Plaintiff was bound over for trial on the felony count. *Id.*

At the time Plaintiff filed his current federal lawsuit in February 2023, he was awaiting trial in the Criminal Case. *Id.* On April 4, 2023, Plaintiff entered a guilty plea, and his case was set for sentencing. ECF No. 46-1 at 4. In connection with that plea, Plaintiff admitted under penalty of perjury that he "unlawfully withheld and concealed a child and deprived a lawful custodian the right to custody under [California Penal Code §] 278.5(a)." *Id.* at 7. The same day, he was ordered released on his own recognizance with GPS monitoring. ECF No. 46-1 at 11.

In his opposition brief to one of Defendants' motions pending in his current federal lawsuit, Plaintiff asserts that his "coerced guilty plea has been withdrawn." ECF No. 42 at 8.

### C.     The Prior Federal Case

On September 7, 2021, while the Family Case was pending and over a year before the Criminal Case was filed, Plaintiff brought a lawsuit in this Court against Commissioner Ratekin in her official capacity, *Emert v. Comm'r Ratekin*, No. 21-cv-1570-BTM (S.D. Cal.). ECF No. 8-2 at 5-12. The lawsuit asserted one claim against Commissioner Ratekin under 42 U.S.C. § 1983 for violating Plaintiff's Fourteenth Amendment rights, and alleged that Commissioner Ratekin and attorneys in the Family Case committed fraud upon the court. *Id.* Plaintiff's lawsuit asked that the Family Case be reassigned to a different judge and that Commissioner Ratekin's orders be set aside as void. *Id.* at 10.

1    On September 22, 2021, this Court granted Plaintiff's motion to proceed *in forma*

2  *pauperis*, screened his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and dismissed

3  the lawsuit with prejudice. *Id.* at 13-15. The Court determined that it lacked subject matter

4  jurisdiction under the *Rooker-Feldman* doctrine. *Id.* The Court explained:

5
> The *Rooker-Feldman* doctrine bars "state-court losers" from pursuing
> actions in federal courts to void the decision of state courts. *See Exxon*

6
> *Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

7

8
> Here, Plaintiff requests the Court to "set aside" Commissioner
> Ratekin's orders. While Plaintiff casts his claim under 42 U.S.C.

9
> § 1983, he is in essence appealing a state court decision. However, the
> Court does not have jurisdiction to consider appeals of state court

10
> decisions or set aside their orders. *See Doe & Assocs. Law Offices v.*

11
> *Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2000) (district courts must
> decline jurisdiction when called upon to review state court decisions),

12
> *see also Grant v. Unifund* CCR, LLC, 577 Fed. Appx. 693, 696 (9th

13
> Cir. 2014) (unpublished) (explaining the *Rooker-Feldman* doctrine
> prevents federal courts from exercising subject-matter jurisdiction over

14
> claims that require the court to act as a "de facto court of appeals" over
> a state court judgment). Therefore, this Court has no jurisdiction to hear

15
> the Complaint. *See Black v. Haselton*, 663 Fed. Appx. 573, 576 (9th

16
> Cir. 2016) (unpublished). Rather, Plaintiff must appeal the state court's

17
> decision through the proper state court avenue.

18
> Because Plaintiff's Complaint falls squarely within the *Rooker-*

19
> *Feldman* doctrine, and this deficiency cannot be cured by amendment,
> the Complaint is dismissed with prejudice. *See Kendall v. Visa U.S.A.,*

20
> *Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008).

21

22  *Id.* Plaintiff did not appeal the ruling.

23    **D.    This Lawsuit**

24    While the Family Case and Criminal Case were pending, Plaintiff filed the instant

25  lawsuit challenging aspects of both cases. In connection with the Family Case, Plaintiff

26  challenges Judge Alksne's pretrial rulings declining to either move the trial date or allow

27  Plaintiff to appear for hearings remotely, after Plaintiff was hospitalized following a heart

28  attack; as well as Judge Alksne's award of custody to Defendant Schuck after a trial. ECF

No. 1 at 13-16. Plaintiff also claims that earlier in the case, Commissioner Ratekin failed to disclose that she accepted employment as a private judge with an ADR firm, and entered an improper order for supervised visitation before recusing herself in the Family Case. *Id.* at 7-12. In connection with the Criminal Case, Plaintiff asserts that the charges against him are false, based on fabricated evidence and the improper custody order by Judge Alksne. *Id.* at 14-16. Plaintiff specifically challenges bail rulings by Judge Danielson and another judge (not named as a defendant). *Id.*

The Complaint includes six claims, the first five brought pursuant to 42 U.S.C. § 1983, and the last pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973. *Id.* at 17-29.

Claim One seeks declaratory relief that the bail set in Plaintiff's Criminal Case was "unreasonable." ECF No. 1 at 29; *id.* ¶ 65. Plaintiff alleges that the bail was set based on evidence fabricated by Defendant Pena, who conspired with Defendants Schulman, Shuck, and Cord; and that Judge Danielson "deliberately misinterpreted" evidence in ruling on bail. *Id.* ¶¶ 53-63. Plaintiff asks "for declaratory relief to instruct the state court to refrain from violating federal law." *Id.* ¶ 56.

Claim Two seeks declaratory relief "on the process used to obtain the court order to remove children from [Plaintiff]" in his Family Case. *Id.* at 29. Plaintiff alleges that Commissioner Ratekin and Judge Alksne "acted in concert" to make rulings that harmed Plaintiff, including the custody order and rulings preventing Plaintiff from appearing remotely, all in violation of Plaintiff's Fourteenth Amendment rights. *Id.* ¶¶ 67-69.

Claim Three alleges a conspiracy to violate Plaintiff's Fourteenth Amendment rights, and seeks monetary damages. *Id.* ¶¶ 70-83. He alleges that Commissioner Ratekin and Defendants Olague, Cord, and Schulman "acted in concert" to offer Commissioner Ratekin financial incentives, which she allegedly accepted. *Id.* ¶¶ 72-78. Plaintiff alleges that Commissioner Ratekin's rulings were biased for Defendant Schuck and against Plaintiff. *Id.* ¶ 77.

23-cv-230-RSH-AHG

Claim Four seeks damages for negligence against Defendants Schulman and Cord, based on Defendant Schulman channeling business opportunities to Commissioner Ratekin. *Id.* ¶ 85. Claim Five seeks damages for willful misconduct against Defendants Schulman, Cord, Olague, and Schuck, based largely on the same facts. *Id.* ¶¶ 88-91.

Claim Six seeks damages and declaratory relief under the ADA and the Rehabilitation Act against Judge Alksne, based on her decisions refusing remote participation by Plaintiff at several hearings. *Id.* ¶¶ 96-97. Plaintiff alleges that if he had been able to attend these hearings, the outcome of the case would have been different—instead of granting custody to Defendant Schuck, "a judgment in Family Court on the merits would have been shared custody." *Id.* ¶ 98.

Plaintiff alleges that all Defendants acted in concert "with the direct intent and sole purpose of injuring, humiliating, vexing, oppressing, and causing mental anguish to Plaintiff." *Id.* ¶ 51.

There are four pending motions to dismiss, each of which has been fully briefed. On February 28, 2023, Defendant Pena filed his motion to dismiss. ECF No. 4; *see* ECF Nos. 38 (Opposition), 46 (Reply). The same day, Defendant Shuck filed her motion to dismiss. ECF No. 5; *see* ECF Nos. 44 (Opposition), 48 (Reply). On March 3, 2023, Judge Alksne, Judge Danielson, and Commissioner Ratekin (collectively, the "Judicial Defendants") filed their motion to dismiss. ECF No. 8; *see* ECF Nos. 42 (Opposition), 45 (Reply). On April 20, 2023, Defendants Schulman and the law firm of Moore, Schulman & Moore APC (collectively, the "MSM Defendants") filed their motion to dismiss. ECF No. 22; *see* ECF Nos. 39 (Opposition), 47 (Reply).

On August 1, 2023, Plaintiff filed a motion to remove his state criminal case to federal court. ECF Nos. 51 (motion), 58 (supplement). The same day, a motion to intervene was filed on behalf of B.E., Plaintiff's 16-year-old son. ECF No. 52. Neither of these motions provided notice of a hearing date as required, which would determine the due date for a response. *See* CivLR 7.1; Chambers Civ. Proc. § III. No response has been filed to either motion.

1    **II.     MOTIONS TO DISMISS**

2           **A.     Legal Standard**

3           A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

4    sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive

5    a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

6    'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

7    (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

8           A claim is facially plausible "when the plaintiff pleads factual content that allows

9    the court to draw the reasonable inference that the defendant is liable for the misconduct

10   alleged." *Id.* Plausibility requires pleading facts, as opposed to conclusory allegations or

11   the "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

12   The factual allegations must rise above the mere conceivability or possibility of unlawful

13   conduct. *Iqbal*, 556 U.S. at 678-79. "Factual allegations must be enough to raise a right to

14   relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the

15   elements of a cause of action, supported by mere conclusory statements, do not suffice."

16   *Iqbal*, 556 U.S. at 678. "[F]or a complaint to survive a motion to dismiss, the non-

17   conclusory 'factual content,' and reasonable inferences from that content, must be

18   plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*,

19   572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

20          "[P]ro se pleadings . . . are to be liberally construed on a motion to dismiss." *Capp*

21   *v. Cnty. of San Diego*, 940 F.3d 1046, 1052 (9th Cir. 2019).

22          Title 42 U.S.C. § 1983 "creates a private right of action against individuals who,

23   acting under color of state law, violate federal constitutional or statutory rights." *Devereaux*

24   *v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "'is not itself a source of

25   substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere

26   conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*,

27   443 U.S. 137, 144 n.3 (1979)). To state a § 1983 claim, a plaintiff must plausibly allege

28   that (1) the acts of Defendants (2) taken under color of state law (3) deprived him of his

1  federal rights, privileges, or immunities and (4) caused him damage. *Thornton v. City of*

2  *St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005).

3    **B. The *Rooker-Feldman* Doctrine**

4    Plaintiff's Prior Federal Case, brought against Commissioner Ratekin based on her

5  rulings in the Family Case, was dismissed by this Court for lack of subject matter

6  jurisdiction pursuant to the *Rooker-Feldman* doctrine. Relative to the Prior Federal Case,

7  Plaintiff's new Complaint names eight additional defendants, pleads additional facts and

8  legal theories, and adds more recent allegations relating to his Criminal Case. But the

9  *Rooker-Feldman* doctrine applies here too, and requires dismissal of the lawsuit for lack of

10  subject matter jurisdiction.

11    "Under *Rooker-Feldman*, a federal district court is without subject matter

12  jurisdiction to hear an appeal from the judgment of a state court." *Bianchi v. Rylaarsdam*,

13  334 F.3d 895, 896 (9th Cir. 2003). The *Rooker-Feldman* doctrine "is confined to . . . cases

14  brought by state-court losers complaining of injuries caused by state-court judgments

15  rendered before the district court proceedings commenced and inviting district court review

16  and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544

17  U.S. 280, 284 (2005). "At its core, the *Rooker-Feldman* doctrine stands for the

18  unremarkable proposition that federal district courts are courts of original, not appellate,

19  jurisdiction." *In re Gruntz*, 202 F.3d 1074, 1078 (9th Cir. 2000). "[T]he doctrine applies to

20  both final and interlocutory decisions from a state court." *Benavidez v. Cnty. of San Diego*,

21  993 F.3d 1134, 1143 (9th Cir. 2021); *see Doe & Assocs. Law Offices v. Napolitano*, 252

22  F.3d 1026, 1030 (9th Cir. 2001). "'[T]his doctrine applies even where the challenge to the

23  state court decision involves federal constitutional issues,' including section 1983 claims."

24  *Benavidez*, 993 F.3d at 1142-43 (quoting *Doe & Assocs. Law Offices*, 252 F.3d at 1029).

25    To determine whether the *Rooker-Feldman* doctrine applies to bar subject matter

26  jurisdiction, a district court first must determine whether the action contains a forbidden de

27  facto appeal of a state court decision. *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir.

28  2013). "A suit brought in federal district court is a 'de facto appeal' forbidden by *Rooker-*

*Feldman* when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision.'" *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010) (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)). "In contrast, if a plaintiff 'asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.'" *Id.* (quoting *Noel*, 341 F.3d at 1164).

If a lawsuit contains a de facto appeal, a district court is barred from deciding not only the issues decided by the state court, but also any other issues that are "inextricably intertwined" with the state court's decision. *Noel*, 341 F.3d at 1158. "A claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it, or if the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002) (internal quotation marks and citations omitted). The "inextricably intertwined" inquiry is a "second and distinct step in the *Rooker-Feldman* analysis." *Bell*, 709 F.3d at 897.

Here, Plaintiff's lawsuit—similar to his Prior Federal Case—is a de facto appeal of rulings in his Family Case and Criminal Case. These include rulings on child custody and visitation, on whether to permit remote participation in court proceedings, and on bail. Each of Plaintiff's claims is "inextricably intertwined" with the rulings in the Family Case and/or the Criminal Case because Plaintiff's claims succeed only if the state court wrongly decided the issues before it. Additionally, Plaintiff's claimed injuries—losing custody of his children, and being held without bail—all arise from the purportedly erroneous rulings. *See Henricks v. Valley View Dev.*, 474 F.3d 609, 616 (9th Cir. 2007) ("*Rooker-Feldman* applies because the legal injuries [Plaintiff] alleges arise from the state court's purportedly erroneous judgment."). The *Rooker-Feldman* doctrine bars Plaintiff's lawsuit.

Plaintiff's Complaint, in its introduction, cites the Ninth Circuit's opinion in *Benavidez v. County of San Diego*, 993 F.3d 1134 (9th Cir. 2021). *See* ECF No. 1 at 2. That case is instructive. In *Benavidez*, a mother and father brought suit against the County of

San Diego and two social workers, alleging that the two social workers deceived the state court into ordering medical examinations of the parents' two children. 993 F.3d at 1140, 1143. The district court ruled, and the Ninth Circuit agreed, that the *Rooker-Feldman* doctrine did not apply. The Ninth Circuit explained, first, that the plaintiffs were seeking damages against the social workers and the county, but "do not seek relief from or reversal of the juvenile court's Orders." *Id.* at 1143. Second, the Ninth Circuit cited the "extrinsic fraud" exception to the *Rooker-Feldman* doctrine: "[W]here a party alleges extrinsic fraud by an adverse party in procuring a state court judgment, the *Rooker-Feldman* doctrine does not apply, because such a claim does not challenge the state court decision directly." *Id.* (citing *Kougasian v. TSML, Inc.*, 359 F.3d 1136, 1140-41 (9th Cir. 2004)). The Ninth Circuit in *Benavidez* ruled that this exception applied to the case before it, and cited *Kougasian* in distinguishing "an error by [a] court" from "a wrongful act committed by the party or parties who engaged in the fraud." *Id.* (quoting *Kougasian*, 359 F.3d at 1141)).

The allegations here differ from those in *Benavidez*. Here, Plaintiff does indeed seek relief from rulings of the state court. Regarding the Family Case, he alleges that the state court's award of custody to Defendant Schuck "deprived [Plaintiff] of his rights under the Fourteenth Amendment," and seeks "declaratory relief on the process used to obtain the court order to remove children from [Plaintiff]." ECF No. 1 at 29; *id.* ¶ 68. Plaintiff also sues Judge Alksne for damages and declaratory relief based on the theory that her rulings denying him remote access to hearings constituted a denial of a "reasonable accommodation" under the ADA and the Rehabilitation Act. *Id.* at 30; *id.* ¶ 96. With regard to the bail orders in the Criminal Case, Plaintiff writes:

> Injunctive relief is appropriate because the NO BAIL condition set by the court is expected to continue into the future and Plaintiff will be subjected to it repeatedly. Plaintiff is asking for declaratory relief to instruct the state court to refrain from violating federal law.

*Id.* ¶ 56. Plaintiff does not include an injunction in his prayer for relief, and separately writes that he "does not seek to enjoin the criminal proceeding and does not seek in any way to inhibit the prosecution of underlying state criminal action," but he is nonetheless

asking for federal judicial review of his state court bail decision.[3] *Id.* ¶ 64; *see id.* ¶ 65 ("Plaintiff requests the court issue a declaratory relief in regard to the unreasonable bail."). Even if Plaintiff dismissed his claims for declaratory relief and sought only damages, *Rooker-Feldman* would bar those claims based on alleged injuries from the state court's decisions. *McCoy v. Uale*, No. 21-16877, 2022 WL 10382922, at *1 (9th Cir. 2022) ("Although [plaintiff] on appeal has pared back his claims and now seeks only damages, he has not demonstrated how these claims—brought against a state court judge for decisions the judge made in litigation—are anything other than an improper de facto appeal of the state court's judgment. Since [plaintiff] alleges injuries from the state court's decision, *Rooker-Feldman* bars his claims.").

Additionally, the extrinsic fraud exception does not apply here. "A plaintiff alleging extrinsic fraud on a state court is not alleging a legal error by the state court; rather, he or she is alleging a wrongful act by the adverse party." *See Kougasian*, 359 F.3d at 1140-41. Extrinsic fraud "prevents a party from presenting his claim in court." *Id.* at 1140. Although the Complaint invokes "judicial deception," Plaintiff alleges that the judges themselves, rather than being deceived into issuing rulings, conspired to harm Plaintiff through those rulings. ECF No. 1 at 2. These allegations of intentional wrongdoing by the judges are abundant.[4] Plaintiff also alleges that Commissioner Ratekin, as a result of receiving

---

[3]   Indeed, Plaintiff has also asked for his Criminal Case to be removed in its entirety from the Superior Court of California, and to be transferred to this Court. Plaintiff's motion for removal is discussed further below.

[4]   *See* ECF No. 1 at 1 ("Defendants all know that the story they are telling is false"), 2 ("Defendants, and each of them, know perfectly well what [Plaintiff's minor son] wants – [he] wants to live with his dad."), 3 ("[E]ach of the state officials herein has sworn an 'oath of office' in regard to their duties and therefor each of their acts under 'color' of state law is a direct violation of their oath of office and equates to CONSPIRACY under section 1983."); *id.* ¶ 47 ("All actions of Defendants were committed with the intention to restrain and confine Plaintiff under color of law without reasonable bail."), ¶ 49 ("In an attempt to cover for Ms. Ratekin's unconstitutional set of decisions, Judge Alksne, despite the ADA request from [Plaintiff] on Nov 10, 2021, then orders a new hearing but denies [Plaintiff]

financial incentives, was biased against him.[5] Unlike in *Benavidez*, Plaintiff is directly challenging the state court rulings as being the product of judicial misconduct. He is alleging error—deliberate, intentional error—by the state court. This does not fall within the extrinsic fraud exception to the *Rooker-Feldman* doctrine.

Courts have found that *Rooker-Feldman* applies to lawsuits challenging state-court judicial rulings as biased. This includes where the plaintiff has sued a judge as a defendant. *Herships v. Cantil-Sakauye*, No. 17-cv-473, 2017 WL 2311394, at *5 (N.D. Cal. May 26, 2017) ("[P]laintiff essentially claims that the judgment against him is deficient because the judge who rendered the opinion had a financial incentive to find him guilty and was therefore not impartial. Such remains a de facto appeal of the state court's judgment against plaintiff."). It also includes where the plaintiff is suing a private party, based on a claim of judicial bias that amounts to a de facto appeal of a state-court judgment. *See Greene v. Hayward*, No. 06-cv-231, 2006 WL 1376879, at *6 (E.D. Cal. May 17, 2006) ("Plaintiff's claim that the judge's bias against him and in favor of Defendants eventuated in a legally erroneous judgment is a de facto appeal like that rejected by the Supreme Court in the opinion which originated the *Rooker-Feldman* doctrine."). Similarly, the doctrine has been applied to allegations that a judge fraudulently issued a ruling. *See Beck v. Catanzarite Law*

---

and his witnesses remote access into the court (during the height of Covid) which resulted in a default custody decision against Emert."), ¶ 51 ("All of the Defendants, at all times related herein, acted wantonly, recklessly, willfully, maliciously, and 'in concert' . . . with the direct intent and sole purpose of injuring, humiliating, vexing, oppressing, and causing mental anguish to Plaintiff"), ¶ 63 ("At the bail review hearing on Jan 13, 2023, retired Judge David Danielson didn't inquire about [Plaintiff]'s financial situation and deliberately misinterpreted the letters in support of [Plaintiff]."), ¶ 67 ("In the instant matter, Commissioner Ratekin and Alksne acted in concert in perpetrating the illicit pattern of behavior at issue."), ¶ 69 ("Ratekin made the first court order through judicial deception by using the witness's . . . declaration as a pretext for a reckless disregard for the truth."), ¶ 72 ("In carrying out the illicit pattern of behavior, Commissioner Ratekin, Olague, Cord, and Schulman were acting in concert.").

[5]    *See* ECF No. 1 at ¶ 77 ("In this case . . . Commissioner Ratekin did exhibit actual bias towards Schuck and against Plaintiff").

*Corp.*, No. 22-cv-1616, 2023 WL 1999485, at *7 (S.D. Cal. Feb. 14, 2023) ("That [plaintiff] alleges [his case] was not only wrongly decided but also fraudulently decided on the part of Judge Gastelum, whom he is also suing, does not change the fact that this is a de facto appeal of, and inextricably intertwined with, the state court decision and barred by the *Rooker-Feldman* doctrine.").

Most significantly, courts have declined to apply the extrinsic fraud exception to lawsuits alleging that judges conspired with others in taking unlawful judicial action. *See Clark v. California*, No. 21-cv-1565, 2022 WL 986668, at *1 (C.D. Cal. Apr. 1, 2022) (rejecting the plaintiff's argument that the extrinsic fraud exception to *Rooker-Feldman* applied, where "the state-court judge wasn't an adverse party in the underlying state-court action."); *Chodosh v. Saunders*, No. 20-cv-1326, 2020 WL 7020303 at *2 (C.D. Cal. Nov. 5, 2020) ("Plaintiff's allegations do not merely allege a wrongful act by Defendants but a wide-spread conspiracy between Defendants and members of the state judiciary which led to alleged legal errors by the state court. This is not extrinsic fraud."), *aff'd*, No. 20-56252, 2021 WL 5985041, at *1 (9th Cir. 2021) (rejecting plaintiff's argument that the extrinsic fraud exception to *Rooker-Feldman* applied where plaintiff alleged a conspiracy involving judges); *Reiner v. Graiwer*, No. 15-cv-7577, 2015 WL 9999191, at *8-9 (C.D. Cal. Nov. 25, 2015) (applying *Rooker-Feldman* where "[p]laintiff's injuries were allegedly caused by both a wrongful adjudicative decision and private defendants who conspired with state actors to obtain it"), *report and recommendation adopted*, No. 15-cv-7577, 2016 WL 455418 (C.D. Cal. Feb. 4, 2016); *Scannell v. Wash. State Bar Ass'n*, No. 12-cv-683, 2013 WL 12423276, at *8 (W.D. Wash. July 1, 2013) (refusing to apply the extrinsic fraud exception when "Plaintiff here does not allege fraud on the State Court by WSBA Defendants—he alleges that the State Court, in conjunction with the WSBA Defendants, conspired to deprive him of his rights."). This is what Plaintiff alleges here.

Plaintiff argues in opposition briefing that the judicial rulings at issue are invalid, void, or fraudulent, and therefore do not trigger *Rooker-Feldman*. ECF No. 42 at 8-9; ECF

1   No. 43 at 9-10. But this argument reflects the very situation that *Rooker-Feldman*

2   addresses: Plaintiff is bringing this lawsuit to challenge state court rulings.

3          Finally, Plaintiff has not alleged conduct that would prevent him from presenting his

4   claims to the California Court of Appeal, a requirement for the extrinsic fraud exception.

5   *See Brookes v. Wanker*, No. 19-cv-973, 2020 WL 5502157, at *3 (D. Nev. Sept. 11, 2020)

6   ("Although [Plaintiffs] allege [State Court Judge] Wanker excluded some evidence and

7   refused to hold an evidentiary hearing, there are no allegations that Brooks was precluded

8   from presenting his claims to the court of appeals, including his contention that Wanker

9   was biased and conspired with U.S. Bank."); *see also Clark v. California*, No. 22-cv-1390,

10  2023 WL 4275500, at *8 (C.D. Cal. May 9, 2023) ("[N]o one's 'fraud' prevented [plaintiff]

11  from having his claims reviewed by the state court of appeal . . . .").

12         Plaintiff's claims, as in his Prior Federal Case, are therefore barred by the *Rooker-*

13  *Feldman* doctrine.[6] To be clear, the issue is not that a plaintiff's allegations of judicial bias

14  or other wrongdoing in a state court proceeding are not serious; such allegations are indeed

15  serious. But under the *Rooker-Feldman* doctrine, this Court does not have subject matter

16  jurisdiction to address such claims in connection with a civil lawsuit that is a de facto appeal

17  of a state court ruling. If Plaintiff believes the state trial court erred, his recourse is through

18  the state's appellate courts.

19         **C.     Leave to Amend**

20         A court "should not dismiss a pro se complaint without leave to amend unless 'it is

21  absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"

22  *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (quoting *Akhtar v. Mesa*, 698 F.3d

23  1202, 1212 (9th Cir. 2012)). However, where an amendment of a pro se litigant's complaint

24  would be futile, denial of leave to amend is appropriate. *See James v. Giles*, 221 F.3d 1074,

25  1077 (9th Cir. 2000).

26

27

28

---

[6]     Because the *Rooker-Feldman* doctrine is dispositive of the issues in this case, the Court does not address the other arguments raised in the motions to dismiss.

1    Plaintiff has requested leave to amend, and the Court is mindful of the fact that

2   Plaintiff is proceeding pro se and has put extensive efforts into his opposition briefing.

3   However, as set forth above, the Court lacks subject matter jurisdiction over this lawsuit.

4   The Court concludes that providing Plaintiff leave to amend the Complaint would be futile.

5   *See Watkins v. Proulx*, 235 F. App'x 678, 679 (9th Cir. 2007) ("Because [plaintiff's] action

6   is barred by *Rooker-Feldman*, amendment of his complaint would have been futile.");

7   *Steinmeyer v. Lab. Corp. of Am. Holdings*, — F. Supp. 3d. —, 2023 WL 394057, at *8

8   (S.D. Cal. June 8, 2023) ("Because there would be no way for Plaintiff to plead around the

9   fact that his claim . . . is an impermissible de facto appeal of state court decisions in

10  violation of the *Rooker-Feldman* doctrine, the Court dismisses the claim without leave to

11  amend.").

12       Accordingly, the Complaint is dismissed without leave to amend.[7] The action is

13  dismissed, albeit without prejudice. *Watkins*, 235 F. App'x at 679 (affirming district court's

14  dismissal under *Rooker-Feldman* without leave to amend, but noting that dismissal of an

15  action for lack of subject matter jurisdiction should be without prejudice).

16  **III.    MOTION TO REMOVE**

17       Plaintiff has filed a motion to remove his state criminal prosecution to federal court.

18  ECF Nos. 51, 58. Plaintiff invokes 28 U.S.C. § 1443, which provides for removal of state

19  civil or criminal proceedings:

20       (1) Against any person who is denied or cannot enforce in the courts of
21       such State a right under any law providing for the equal civil rights of
         citizens of the United States, or of all persons within the jurisdiction
22       thereof;

23       (2) For any act under color of authority derived from any law providing
24       for equal rights, or for refusing to do any act on the ground that it would
         be inconsistent with such law.
25

26

_____

27  [7]    The MSM Defendants' motion to dismiss also includes a motion to strike Plaintiff's
    claims under California's anti-SLAPP statute. ECF No. 22-1 at 12-17. In dismissing the
28  Complaint, the Court denies that motion as moot and without prejudice.

28 U.S.C. § 1443.

As the Ninth Circuit explained,

> Section 1443 gives a right of removal to, among others, certain petitioners who claim federally secured rights as a defense to a state prosecution. The Supreme Court, however, has given section 1443 a restrictive interpretation. In two related cases in 1966, *Georgia v. Rachel*, 384 U.S. 780, and *Greenwood v. Peacock*, 384 U.S. 808, the Court set out the narrow parameters of this right. All petitions for removal must satisfy two criteria: First, the petitioners must assert, as a defense to the prosecution, rights that are given to them by explicit statutory enactment protecting equal racial civil rights. (*Georgia v. Rachel*, *supra* at 788-792; *Greenwood v. Peacock*, *supra* at 824-827.) Second, petitioners must assert that the state courts will not enforce that right, and that allegation must be supported by reference to a state statute or a constitutional provision that purports to command the state courts to ignore the federal rights. Bad experiences with the particular court in question will not suffice. (*Georgia v. Rachel*, *supra* at 794-804; *Greenwood v. Peacock*, supra at 827-828.)

*California v. Sandoval*, 434 F.2d 635, 636 (9th Cir. 1970); *see Patel v. Del Taco, Inc.*, 446 F.3d 996, 999 (9th Cir. 2006) (reiterating requirements imposed by Supreme Court in *Georgia v. Rachel* and *Greenwood v. Peacock*), *abrogated on other grounds by BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532 (2021).

Plaintiff has not satisfied either requirement. He does not allege that he is defending his state case on grounds of an explicit federal statute enactment protecting equal racial civil rights, or that the state court is refusing to enforce such rights. Section 1443 does not provide a basis for removal of his Criminal Case. The motion to remove is therefore denied.

## IV.   MOTION TO INTERVENE

The motion to intervene is filed on behalf of B.E., Plaintiff's 16-year-old son, by an individual named Glenda Emert, who is Plaintiff's mother and B.E.'s grandmother. ECF No. 52 at 33. The motion requests intervention as of right under Federal Rule of Civil Procedure 24(a)(2), which permits intervention by a person who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that

1 disposing of the action may as a practical matter impair or impede the movant's ability to
2 protect its interest, unless existing parties adequately represent that interest." Because the
3 Court is dismissing the action, the motion to intervene is denied as moot.

4 **V.    CONCLUSION**

5      For the foregoing reasons:

6      1.    The motions to dismiss by Defendant Pena, the Judicial Defendants (Ratekin,
7 Alksne, and Danielson), and Defendant Schuck [ECF Nos. 4, 5, 8] are **GRANTED**;

8      2.    The motion to dismiss by the MSM Defendants (Schulman, and the law firm
9 of Moore, Schulman, and Moore APC) [ECF No. 22] is **GRANTED** and the motion to
10 strike is **DENIED AS MOOT**;

11      3.    Plaintiff's motion to remove [ECF No. 51] is **DENIED**;

12      4.    The motion to intervene [ECF No. 52] is **DENIED AS MOOT**;

13      5.    The Complaint is **DISMISSED** without leave to amend; and

14      6.    The action is **DISMISSED** without prejudice. The Clerk is directed to enter
15 judgment for Defendants and to close the case.

16      **SO ORDERED**.

17 Dated:  August 14, 2023

                                                    _Robert S. Huie_
18                                         _____
19                                         Hon. Robert S. Huie
                                        United States District Judge

20

21

22

23

24

25

26

27

28