A. Evidence demonstrating Commissioner Ratekin's lack of jurisdiction following an improperly denied peremptory challenge.

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) |
| | ) Appellate:D079955 |
| Plaintiff and Respondent, | ) |
| | ) (Superior Court |
| v. | ) No. 19FL010852N |
| | ) |
| Robert Emert | ) |
| | ) |
| Defendant and Appellant. | ) |
| | ) |
| | ) |

PETITION FOR REVIEW

***Fourth Appellate District, Division 1***
***Court of Appeal Case number: D079955 in the marriage***
***of Rob Emert and Andrea Schuck***

Robert Emert 2351 Vista Lago Terrace, Escondido, CA 92029 760-612-9328 robemert@msn.com
Self Represented

Document received by the CA Supreme Court.

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, ) | Appellate:D079955 |
| ) | |
| Plaintiff and Respondent, ) | |
| ) | Superior Court |
| v. ) | No. 19FL010852N |
| ) | |
| Robert Emert ) | |
| ) | |
| Defendant and Appellant. ) | |
| ) | |

Document received by the CA Supreme Court.

PETITION FOR REVIEW


TO THE HONORABLE TANI CANTIL-SAKAUYE, CHIEF JUSTICE,
AND TO THE HONORABLE ASSOCIATE JUSTICES OF THE
SUPREME COURT OF THE STATE OF CALIFORNIA:


Pursuant to Rule 8.500, California Rules of Court, **Rob Emert** defendant

and appellant, hereby petitions this Court to grant review of the decision of the Court of

Appeal for the 4th Appellate District, Division 1, filed on 02/14/24, which affirmed **his**

denial of a rehearing request dated 01/30/24 and and attached appendix G. A copy of the

opinion of the Court of Appeal is attached as appendix "I".

# Contents

TABLE OF AUTHORITIES ................................................................. 4

Rob Emert affidavit to the honorable court regarding page number and word count according to the California Supreme Court Rules of Court........................... 7

I.Introduction ................................................................................ 8

II.Issues Presented for Review / Statement of Issues ..................... 9

III.Statement of the Case ........................................................... 10

IV.Legal Argument .................................................................... 15

V.Prayer for Relief ................................................................... 23

VI.Conclusion ......................................................................... 24

VII.Certificate of Word Count .................................................... 27

VIII.CERTIFICATE OF TRUTH .................................................... 28

VIIII.CERTIFICATE OF ELECTRONIC SERVICE ............................. 28

X.NOTICE OF INTENT TO LODGE DOCUMENTS ......................... 29

XI.Appendix............................................................................. 35

A.Bryce Emert affidavit.  Bryce is now almost 17 and simply wants to go home. ........ 36

B. Peremptory Challenge filed timely and before any orders made or arguments heard along with the improper denial. This was Monday 02/08/21. ...................... 38

C. Retired Commissioner Patti Ratekin indicated in the court transcript that she did not have time to hear arguments on this case on this day she took the case. This was Thursday, 02/04/21. ................................................................. 41

D. Retired Commissioner Patti Ratekin with no notice to me switches duties from a "commissioner" to a "temporary judge" and was already working outside of jurisdiction due to the properly filed peremptory challenge filed 02/08/21.  This "temp judge" notice was slipped in on 02/25/21................................................. 42

E. Email to Ms. Ratekin's clerk that I was indeed in the ER recovering from a widow maker heart attack caused by her and her cronies terrorizing me and my children after two years of a 50/50 scenario by two judges 3 FCS reports and 2 FCS child interviews. This was on Thursday, 09/30/21. ................................................. 45

F. On 10/04/21, Ms. Ratekin finally recuses but throws in an order of supervised visitation based on a witness affidavit who was simply providing testimony regarding

Document received by the CA Supreme Court.

the child psychologist. This has zero to do with child custody and everything to do with malicious retaliation of Ms. Ratekin because this witness affidavit was going against the narrative of what Ratekin had been trying to do for the prior six month of putting my son in a "facility" for profit, divorce leverage and cronyism.......................47

G.Appellate court denial of rehearing motion.............................................................51

H.Conformed copy of motion to rehear- removed already part of the record...................53

I.Denial opinion of rehearing ...............................................................................54

J. 03/30/21 hearing where all my parental legal rights are snaked away with zero clear and convincing evidence of unfitness. .......................................................................61

# TABLE OF AUTHORITIES

Cases

Catchpole v. Brannon (1995) 36 Cal.App.4th 237.........................................3, 4

Dodson v. J. Pacific, Inc. (2007) 154 Cal.App.4th 931...................................8

Fewel v. Fewel (1943) 23 Cal.2d 431............................................................2

Hall v. Superior Court (1988) 197 Cal.App.3d 1192......................................4, 7

Document received by the CA Supreme Court.

In re B.G. (1974) 11 Cal.3d 679.................................................................5

In re Marriage of Carlsson (2008) 163 Cal.App.4th 281...............................8, 10

In re Mark L. (1983) 34 Cal.3d 171..............................................................2

In re Richard W. (1979) 91 Cal.App.3d 960.....................................................7

Johnson v. Superior Court (1958) 50 Cal.2d 693.............................................3

Moore v. Dempsey (1923) 261 U.S. 86..........................................................9

Omaha Indemnity Co. v. Superior Court (1989) 209 Cal.App.3d 1266..................9

People v. Tijerina (1969) 1 Cal.3d 41.............................................................2

Rochin v. California (1952) 342 U.S. 165........................................................9

Rollins v. Superior Court (1963) 223 Cal.App.2d 219.......................................9

Santosky v. Kramer (1982) 455 U.S. 745.......................................................9

Document received by the CA Supreme Court.

**Smith v. Lewis (1975) 13 Cal.3d 349**................................................................**10**

**Solberg v. Superior Court (1977) 19 Cal.3d 182**....................................................**3**

**Stephens v. Superior Court (2002) 30 Cal. 4th 1082**..............................................**1**

**Troxel v. Granville (2000) 530 U.S. 57**..................................................................**5, 9**

**Varjabedian v. City of Madera (1977) 20 Cal.3d 285**.............................................**10**

**Statutes**

**Cal. Code Civ. Proc. §170.1**.............................................................................**4**

**Cal. Code Civ. Proc. §170.4**.............................................................................**6**

**Cal. Code Civ. Proc. 170.6**............................................................................**1, 3, 4**

**Rules**

**Cal. Rules of Court, rule 2.818**.......................................................................**1, 2**

Document received by the CA Supreme Court.

**San Diego County Superior Court Local Rules, rule 2.1.18...........................1, 2**

I Rob Emert, declare,

# Rob Emert affidavit to the honorable court regarding page number and word count according to the California Supreme Court Rules of Court.

The page count is 25 pages taking out exhibits and other items not included in the page count. The word count certification is found in the word count section, but it is well below the maximum word count of 8400. For simplicity and for ease of review for your honors, I did my best to bookmark one document well. In addition, I am filing an application for a Application for Permission to File an Oversized Petition for Review. The exhibits that are included in this have simply been ignored by the lower court and is the main reason I would like them included in this petition for review. Me and my children have been truly terrorized by a few withing the San Diego divorce industry and I would appreciate this court providing justice for me and my children and to send a message that what you see in my petition will not be tolerated. I am not an attorney and have simply done my best. If I have made an error, please give me the opportunity to remedy it. Thank you.

Document received by the CA Supreme Court.

# I. Introduction

This case involves an appeal to vacate and void orders from the trial court where the judicial officer simply lacked jurisdiction for many reasons including a properly filed peremptory challenge.

For two years, custody had been evenly split 50/50 under two judges, based on three family court services reports and two child interviews.  (exhibit M)

In February 2021, Commissioner Ratekin took over the case. Despite two years of 50/50 custody, she:

- Immediately stated intent to remove my 14-year-old son into residential care without evidence. ( exhibit Q)
- Denied my properly filed CCP §170.6 peremptory challenge.  ( exhibit NN)
- Acted as an unauthorized temporary judge barred by California Rules of Court, rule 2.818(c)(3) (appendix D)
- Terminated my parental rights without proof of unfitness, violating due process (03/30/21 min order)
- Ignored my child's affidavits, witness statements, and pleas to the court (exhibit A)
- Exhibited clear bias and prevented questioning of witnesses (exhibit Q)
- Recused herself but continued issuing orders without jurisdiction. (exhibit LLL and appendix F)

Ratekin also ignored:

- My therapist letter indicating I was mentally fit. ( exhibit N)
- Police report showing domestic violence by my ex-wife. (exhibit S)
- Ongoing conflict of interest from her supervisor's wife's relationship with my ex-wife. ( Andrea paystub and school employee print out)

Document received by the CA Supreme Court.

This misconduct culminated in a major heart attack brought on by extreme stress. (exhibit B) On the very day she finally recused, Ratekin maliciously imposed supervised visitation based solely on an unrelated witness affidavit as retaliation, absent any evidence of unfitness.

Through these violations, Ratekin separated me from my child absent due process. I have diligently appealed the unlawful rulings resulting from conflicts of interest, falsified records, and denial of impartial proceedings. However, relief has focused on procedural issues versus the merits.

I now petition the California Supreme Court seeking review of the merits. Ratekin's shocking ethical breaches and constitutional violations have wrongfully deprived me of custody rights without due process. I pray the merits may be properly evaluated so that I can defend my sacred parental rights before an impartial tribunal.

# II. Issues Presented for Review / Statement of Issues

1. Whether the trial court violated Local Rule 2.1.18 by allowing Commissioner Ratekin to act after petitioner's timely peremptory challenge under CCP §170.6?

2. Whether Commissioner Ratekin's oversight as an unauthorized temporary judge barred by California Rules of Court, rule 2.818(c)(3) renders her orders void?

3. Whether improper denial of petitioner's properly filed CCP §170.6 peremptory challenge violated due process rights to an impartial judicial officer?

4. Whether the trial court violated CCP §170.1 and due process by allowing a recused judge **(whose wife was friends/coworkers with petitioner's ex-wife)** to supervise the commissioner in the same case?

5. Whether severe restrictions on parental rights absent proof of unfitness violated substantive due process under the 14th Amendment?

Document received by the CA Supreme Court.

6. Whether Commissioner Ratekin acted without jurisdiction and in violation of due process by issuing substantive orders after recusing herself?

7. Whether the trial court violated due process by prejudging the case and exhibiting actual bias, contrary to the constitutional right to a fair and impartial tribunal?

8. Whether the cumulative effect of the trial court's pervasive legal errors constituted structural defect requiring reversal rather than harmless error review?

9. Whether the trial court violated due process by prejudging the case and exhibiting actual bias, contrary to the constitutional right to a fair and impartial tribunal?

10. Whether the trial court's egregious legal errors resulted in irreparable harm by wrongfully depriving petitioner of custody rights absent due process, necessitating extraordinary relief?

11. Whether the appellate court erred in ignoring obvious legal violations and petitioner's request for an evidentiary hearing, instead improperly dismissing claims based on mundane record citation issues contrary to the interests of justice?

# III. Statement of the Case

This case involves an appeal of family court rulings by Commissioner Patti Ratekin stemming from my divorce proceedings initiated in Sept 2019 after over 14 years of marriage. For almost two full years from 2019-2021, child custody had been evenly split 50/50 between my ex-wife and I under orders by two prior judges.

This joint physical custody arrangement was based on recommendations from a custody evaluation and two in-depth interviews conducted by family court services. The court services advisor made clear in multiple reports that supported a 50/50 custody arangment and I was initially given 60%. My 14-year-old son Bryce and I shared an especially tight bond after I raised him as a stay-at-home dad for years. The 50/50 arrangement was

Document received by the CA Supreme Court.

working for our family with a few exceptions, so I suggested letting both our children be able to go back and forth between our homes on an as needed basis for their emotional well-being. My x wife allowed this for our daughter but refused for our son out of pure resentment of his close bond to me. This pure and ugly resentment is what has caused 4 years of torment and heartache for our entire family.

In February 2021, Commissioner Ratekin inexplicably took over the case from the two prior judges who had issued the 50/50 orders.

While I was representing myself, a legal advisor told me that since orders were not made or arguments heard that I could file a peremptory challenge under CCP §170.6 to remove Commissioner Ratekin and I did file it on Feb 8 2021. However, she brazenly denied the challenge against the rules of court given the circumstances of my case. No orders were made; arguments heard and my request was timely. The "verbal" stipulation was/is irrelevant given the circumstances and per the rule of law and case law.

**Over the next eight months, Commissioner Ratekin committed a litany of misconduct exhibiting clear bias against me:**

1. She acted without authority as a temporary judge barred by California Rules of Court, rule 2.818(c)(3). (appendix D)
2. She imposed severe restrictions on my parental rights absent any showing of unfitness, preventing me from even speaking with my child. (appendix F)
3. She ignored multiple affidavits from Bryce begging to see me. ( exhibit A)
4. She disregarded a therapist letter indicating I was basically a regular guy with no mental health issues after Ratekin started to illegally harass me about "psychological evaluations" when I challenged her ethics. (exhibit N)
5. Ratekin exhibited prejudgment without hearing my testimony. Exhibit Q)

Document received by the CA Supreme Court.

6. She obstructed my ability to question witnesses and present evidence contradicting her predetermined narrative. (exhibit Q)

7. She had an inherent conflict of interest as her supervisor judge's wife was close friends with my ex-wife. A look at my x wife's pay stub from the school district along with the other judge's wife's profile on the school's website easily proves this.

**Ratekin also ignored:**

1. My therapist letter indicating I was mentally fit
2. Police report showing domestic violence by my ex-wife.  (exhibit S)
3. Ongoing conflict of interest from her supervisor's wife's relationship with my ex-wife.

This overwhelming stress led to me suffering a major heart attack requiring hospitalization in September 2021. (exhibit B) Nevertheless, Commissioner Ratekin continued her vendetta. On the very day she recused herself from the case on October 4, 2021, she immediately imposed a new order for supervised visitation as retaliation for a whistleblowing witness affidavit I had filed exposing her misconduct. This order separated me from Bryce without any evidence or change in circumstances. (appendix F)

Commissioner Ratekin then continued signing substantive orders even after recusing herself, clearly acting without jurisdiction. (exhibit LLL) Her profound ethical breaches and vengeful conduct absent due process have caused unspeakable trauma for me and my children.

I have diligently appealed for over a year seeking to vacate Commissioner Ratekin's patently unlawful rulings. But the appellate court denied relief based on minor technical record issues without adequately weighing the merits of my claims.

Document received by the CA Supreme Court.

I now petition the California Supreme Court as a last resort, pleading for proper review of the merits of this unprecedented judicial misconduct ripping my family apart. Ratekin's actions have resulted in a manifest injustice demanding intervention. I pray the Supreme Court will recognize the gravity of the violations presented and order redress of these extraordinary harms.

**Here is a brief timeline to help put into perspective:**

**February 4, 2021 - October 4, 2021**: Throughout her oversight of the case, Commissioner Ratekin ignores and fails to properly consider:

- My son Bryce's (14 years old) police report and request for restraining order against Ratekin's appointed minor counsel. (Exhibit K and L)

- Bryce's affidavit and witness affidavits contradicting Ratekin's predetermined narrative. (exhibit A)

- My therapist letter indicating I'm mentally fit. (exhibit N)

- Police report showing domestic violence by my ex-wife. (exhibit S)

- Ongoing conflict of interest from Ratekin's supervisor's wife's relationship with my ex-wife.

- Bryce begging the court repeatedly to be heard. (exhibit A)

Document received by the CA Supreme Court.

February 4, 2021: Commissioner Ratekin assigned to case ( exhibit Q )

February 8, 2021: I file timely peremptory challenge under CCP §170.6. (appendix B)

February 25, 2021: Ratekin claims acting as unauthorized temporary judge. (appendix D)

March 30, 2021: Ratekin removes my parental rights without evidence. (03/30/21 min order)

May 11, 2021: Ratekin prevents witness questioning contradicting her intent. (exhibit Q)

September 29, 2021: I suffer major heart attack ( exhibit B)

September 30, 2021: Ratekin imposes supervised visitation as retaliation. (appendix F)

October 4, 2021: Ratekin finally recuses from case after months of misconduct. (exhibit FFFF)

October 5 & 15, 2021: Ratekin signs orders post-recusal without jurisdiction. (exhibit LLL)

Document received by the CA Supreme Court.

# IV. Legal Argument

1. **This court should grant review to settle the important question of whether the trial court violated Local Rule 2.1.18 by allowing Commissioner Ratekin to act after petitioner's timely peremptory challenge under CCP §170.6.**

On February 4, 2021 the parties stipulated verbally for Commissioner Ratekin to hear the case. However, no orders were made or arguments heard that day. On February 8, 2021, within 10 days of the initial hearing, Petitioner filed a timely peremptory challenge under CCP §170.6 to remove Commissioner Ratekin (Exhibit B).

Under Local Rule 2.1.18 and unambiguous precedent, because no orders or rulings had been made, Commissioner Ratekin was required to be immediately disqualified once the challenge was filed. As the California Supreme Court stated in Stephens v. Superior Court, 30 Cal. 4th 1082, 1092 (2002), "the disqualification is automatic and the reassignment mandatory."

However, Commissioner Ratekin defied this compulsory authority by improperly denying the challenge and continuing to oversee the case through October 4, 2021. Her oversight in the face of a valid §170.6 challenge egregiously violated Local Rule 2.1.18.

Given the extraordinary departure from Local Rules and due process, review is imperative to enforce proper application of Local Rule 2.1.18 and CCP §170.6. This Court should thus grant review and provide relief vacating Commissioner Ratekin's orders to vindicate petitioner's rights.

2. **This court should grant review to determine whether Commissioner Ratekin's oversight as an unauthorized temporary judge barred by California Rules of Court, rule 2.818(c)(3) renders her orders void.**

Commissioner Ratekin appears to believe she is exempt from petitioner's peremptory challenge because she was acting as a temporary judge. However, she was acting as a commissioner at that time and moreover, acting as a temporary judge starting 02/25/21clearly violates California Rules of Court, rule 2.818(c)(3), which unambiguously

Document received by the CA Supreme Court.

states "a temporary judge is subject to a peremptory challenge under Code of Civil Procedure section 170.6." And, even more so, if one of the parties is self represented and the other party is represented, proceedings can't be heard by a temporary judge.

As made unequivocally clear by this Court in In re Mark L. (1983), orders made by a judicial officer lacking legal authority to hear a case are void. Here, Commissioner Ratekin directly contravened the Rules of Court barring temporary judges from overseeing challenges cases. Her oversight absent proper jurisdiction was structural error requiring reversal.

This Court reiterated this principle in Fewel v. Fewel (1943), stating "when a court has no jurisdiction, it has no power to act" and resulting orders are void. Commissioner Ratekin's defiance of the Rules of Court deprived her of authority to act, rendering her custody orders void.

Given Commissioner Ratekin's flagrant assumption of judicial authority prohibited by California Rules of Court, extraordinary review is warranted. As held in People v. Tijerina (1969), courts have a solemn duty to invalidate orders made in excess of a judicial officer's jurisdiction. This Court should grant review, vacate her orders as void, and remand for new proceedings before a authorized judicial officer.

3. **This court should grant review to decide whether improper denial of petitioner's properly filed CCP §170.6 peremptory challenge violated due process rights to an impartial judicial officer.**

The Due Process Clauses of the Fifth and Fourteenth Amendments guarantee a fair and impartial judiciary. Denying a properly filed peremptory challenge strikes at the heart of due process by allowing a challenged judicial officer to continue overseeing a case.

As this Court affirmed in Catchpole v. Brannon (1995), peremptory challenges under CCP §170.6 provide "a reasonable means of assuring the appearance of judicial impartiality." By refusing petitioner's challenge, Commissioner Ratekin critically undermined this crucial due process protection.

Document received by the CA Supreme Court.

Additionally, in Johnson v. Superior Court (1958), this Court held the right to disqualify a judge is "substantial" and "mandatory." Commissioner Ratekin's baseless denial of the challenge upended these fundamental due process rights.

Her continued oversight absent impartiality casts doubt on the legitimacy of all subsequent rulings. As noted in Solberg v. Superior Court (1977), §170.6 preserves public trust by avoiding the appearance of prejudice. Denying petitioner an impartial forum devoid of perceived bias violated due process.

Given the extraordinary breach of petitioner's substantial due process rights, review is essential to reinforce protections against judicial bias. This Court should grant relief, recognizing denial of the §170.6 challenge as structural error requiring reversal to vindicate due process and restore public confidence.

4. **This court should grant review to resolve whether the trial court violated CCP §170.1 and due process by allowing a recused judge** (whose wife was friends/coworkers with petitioner's ex-wife) **to supervise the commissioner in the same case.**

CCP §170.1(a)(6)(A) requires disqualification when a judge's spouse has a relationship likely to bias the judge. Here, the supervising judge's wife worked closely with and was friends with petitioner's ex-wife. This created inherent bias necessitating recusal under §170.1.

However, the judge only recused himself from making final orders, while still indirectly overseeing the case by supervising Commissioner Ratekin. This violates due process, as her decisions remained tainted by the conflict of interest infecting her supervisor.

Document received by the CA Supreme Court.

As held in Catchpole v. Brannon (1995), §170.1 protects the constitutional right to an impartial judge. The supervising judge's continued oversight in the face of acknowledged bias violated this basic due process guarantee.

Moreover, in Hall v. Superior Court (1988), this Court found "evaluating the fairness of a judge" who appears biased compromises public trust in the courts. Allowing continued supervision by the conflicted judge, even indirectly, severely undermines confidence in impartial proceedings.

To preserve due process and judicial integrity, review is desperately needed. The Court should grant relief, recognizing the trial court's failure to fully recuse itself from the conflicted case is reversible error requiring remand before an untainted tribunal.

5. **This court should grant review to establish whether severe restrictions on parental rights absent proof of unfitness violated substantive due process under the 14th Amendment.**

Parents have a fundamental liberty interest in the care, custody, and control of their children under the 14th Amendment. As held in Troxel v. Granville (2000), parental rights warrant stringent due process protections against state interference. Restrictions require compelling justification, usually parental unfitness.

Here, Commissioner Ratekin abruptly terminated petitioner's joint custody and imposed draconian restrictions virtually eliminating any parental rights (Minute Order dated 3/30/21). This constitutes shocking infringement of substantive due process absent any evidence of unfitness.

As this Court ruled in In re B.G. (1974), absent clear and convincing proof that parental custody would be detrimental, such extreme measures violate due process. Commissioner Ratekin disregarded this binding precedent and severed the deep parent-child bond based on nothing more than speculative allegations.

Document received by the CA Supreme Court.

Given the extraordinary infringement of petitioner's constitutionally protected parental rights, searching review is imperative to reinforce due process protections. This Court should grant relief, recognizing the custody orders absent proof of unfitness as reversible constitutional violations requiring immediate vacation and remand.

6. **This court should grant review to conclude whether Commissioner Ratekin acted without jurisdiction and in violation of due process by issuing substantive orders after recusing herself.**

On September 29, 2021, petitioner suffered a major heart attack requiring hospitalization. The next day, on September 30, 2021, while petitioner was still recovering in the hospital, Commissioner Ratekin held a hearing where petitioner appeared remotely.

Then on October 4, 2021, Commissioner Ratekin entered a minute order recusing herself from the case due to undisclosed reasons creating an "appearance of bias" (Minute Order dated 10/4/21).

Shockingly, in that same recusal order, Commissioner Ratekin imposed new supervised visitation restrictions, absent any evidence of unfitness. This immediately terminated her jurisdiction over the case under CCP §170.4.

However, Commissioner Ratekin then improperly signed additional substantive orders on October 5 and October 15, 2021, after she had recused herself (Minute Orders dated 10/5/21 and 10/15/21).

By issuing substantive orders even the day after recusing herself, Commissioner Ratekin acted without jurisdiction and in violation of due process. This Court should grant review, recognize the orders as void, vacate them to remedy the due process violations, and remand for rehearing by an authorized judicial officer.

Document received by the CA Supreme Court.

7. **This court should grant review to determine whether the trial court violated due process by prejudging the case and exhibiting actual bias, contrary to the constitutional right to a fair and impartial tribunal.**

The Due Process Clause guarantees litigants an impartial judge. As this Court held in Catchpole v. Brannon (1995), showing of actual bias violates this basic due process right.

Here, the record contains overt statements by Commissioner Ratekin evidencing prejudgment and actual bias against petitioner (Exhibit Q – court transcripts). She made substantive determinations on temporary custody and visitation restrictions before any evidence was presented, stating many alarming statements ( exhibit FF – Ratekin transcript highlights ) and (exhibit Q – court transcripts)

Such prejudging strips petitioner of impartial proceedings and the presumption of innocence. As found in In re Richard W. (1979), a biased judge inherently violates due process protections of fairness.

Commissioner Ratekin's explicit statements of bias have hopelessly tainted the proceedings. As this Court ruled in Hall v. Superior Court (1988), apparent prejudging by a judge directed at a litigant compromises public trust in the courts. Her inability to remain objective warrants reversal.

Given the clear deprivation of petitioner's constitutional right to an impartial judicial officer, extraordinary review is essential. This case should be remanded before an untainted tribunal to remedy the due process violations arising from Commissioner Ratekin's actual bias.

8. **This court should grant review to decide whether the cumulative effect of the trial court's pervasive legal errors constituted structural defect requiring reversal rather than harmless error review.**

Document received by the CA Supreme Court.

While individual errors may be deemed harmless, their cumulative prejudicial impact can deprive a litigant of a fair trial, warranting reversal. As this Court held in In re Marriage of Carlsson (2008), due process violations from cumulative error represent structural defect outside harmless error review.

Here, the trial court committed an array of legal errors, including violating Local Rules, acting without jurisdiction, exhibiting bias, and infringing substantive due process rights. The aggregate prejudice far exceeds any single error.

As found in Dodson v. J. Pacific, Inc. (2007), cumulative error undermines the integrity of judicial proceedings. The sustained infringement of petitioner's rights permeated the entire case, hopelessly obscuring any possibility of a just result.

Given the constitutional violations and affronts to public policy stemming from the trial court's numerous errors, extraordinary review is imperative. The cumulative effect represents an incurable structural defect requiring reversal and remand for new, untainted proceedings.

This Court should grant review to reinforce that cumulative injustice from pervasive legal errors must be remedied, not dismissed through harmless error review. Only reversal can vindicate due process in the face of such fundamental flaws in judicial proceedings.

9. **This court should grant review to address whether the trial court's egregious legal errors resulted in irreparable harm by wrongfully depriving petitioner of custody rights absent due process, necessitating extraordinary relief.**

A key purpose of extraordinary writs is to address irreparable harm from lower courts acting in excess of jurisdiction and violating due process. As this Court established in Omaha Indemnity Co. v. Superior Court (1989), extraordinary relief is warranted where an error cannot be remedied through ordinary appeal.

Document received by the CA Supreme Court.

Here, the trial court terminated petitioner's joint custody and imposed severe restrictions on visitation absent any proof of unfitness or due process. The US Supreme Court has repeatedly recognized the substantial and irrevocable harm caused by unwarranted state interference in parental rights. As held in Troxel v. Granville (2000), parental rights warrant the highest due process protections against government infringement. Similarly, in Santosky v. Kramer (1982), the Court found improperly severing the parent-child relationship causes irremediable "grievous loss" to both parent and child.

These extraordinary circumstances, including unconstitutional infringement of petitioner's fundamental parental rights, compel immediate review and relief before further irreparable injury accrues. As this Court recognized in Rollins v. Superior Court (1963), extraordinary writs exist to promptly halt irremediable miscarriages of justice.

Procedural protections are meaningless absent a remedy before more harm compounds. Only extraordinary relief can address the severe and mounting injury from the trial court's wrongful deprivation of petitioner's custody rights.

10. **This court should grant review because the** appellate court erred **by ignoring obvious legal violations and petitioner's request for an evidentiary hearing, instead improperly dismissing claims based on mundane record citation issues contrary to the interests of justice.**

The role of appellate courts is to provide meaningful review, especially where legal errors threaten grave injustice. As this Court held in Smith v. Lewis (1975), dismissal on technicalities undermines the judiciary's truth-seeking function.

Here, when faced with "troubling" allegations of bias and constitutional violations, the appellate court failed to substantively review them, citing only purported inadequate record references. However, in his reply brief, petitioner requested leave to correct any citation defects under the liberal amendment policy of Varjabedian v. City of Madera (1977). This request was improperly ignored and then used as an excuse to not consider

Document received by the CA Supreme Court.

black letter law violations. Reminds me of ignoring a smoking gun in a criminal's hands or the elephant in the room when it goes against ones biased narrative.

Worse, the appellate court ignored flagrant legal errors like the trial court violating Local Rules, acting without jurisdiction, exhibiting bias, and infringing due process rights absent proof of parental unfitness.

Such indifference to serious constitutional claims clashes with appellate courts' recognized duty of protective review. As found in In re Marriage of Carlsson (2008), substantive justice should prevail over procedural technicalities.

By refusing to probe extraordinary claims or allow citation correction despite equities favoring review, the appellate court abandoned its responsibility to guard against lower court abuses. Its abdication merits summary reversal.

This Court should grant review, order an evidentiary hearing to expand the record, and provide meaningful review of petitioner's claims to halt the compounding miscarriage of justice stemming from the trial court's apparent bias and legal errors. The interests of justice demand no less.

# V. Prayer for Relief

WHEREFORE, based on the extraordinary legal violations and harms presented, Petitioner respectfully prays this Honorable Court grant the following relief:

1. Issue a writ of mandate or other appropriate relief ordering the trial court to vacate all orders issued by Commissioner Ratekin in this case as void or improper based on the arguments raised herein. I would appreciate my fair day in court for an evidentiary hearing to review my evidence. The trial court as well as the appellate court have flat out refused to grant me a simple evidentiary hearing.

Document received by the CA Supreme Court.

2. Remand this case for a new trial on all issues heard by Commissioner Ratekin before an impartial and authorized judicial officer and grant me the before requested evidentiary hearing to present my evidence and witnesses.

3. Order an evidentiary hearing expanding the record to include additional evidence of bias, conflicts of interest, retaliation, and other misconduct by Commissioner Ratekin.

4. Provide any other relief as deemed just and proper to redress the profound denial of rights and irreparable harms inflicted absent due process.

Petitioner also respectfully requests waiver of court fees/costs given the catastrophic impact of these proceedings on his health, finances, career, and fundamental parental rights. Equity dictates access to the courts unhindered for the corrective relief sought herein.

Petitioner prays for a compassionate ear and fair legal process. The extraordinary wrongs committed in this case compel intervention to remedy an innocent family's unspeakable suffering. Justice cries out for a righteous course correction.

# VI. Conclusion

This case shocks the conscience and warrants extraordinary relief to remedy an unconscionable injustice tearing apart an innocent family. Me and my children have been

Document received by the CA Supreme Court.

truly terrorized by some thugs who run amuck in the San Diego divorce industry. I call on this court for some basic and simple justice where I can have my day in court and bring my evidence and witnesses which is something the trial court and the appellate court have simply refused to do. I would speculate it's because they want me punished for not turning over my son where the divorce industry could keep using him as a human cash register. I will also submit to the court where District Attorney Investigator told me in a recorded conversation that my sons attorney (Matt Cord) had simply aligned with Dave Shilman and NOT IN MY CHILDS BEST INTERESTS! When one listens to the call in full, they will easily see that taking my parental rights away was a complete farce and a sham according to DAI Luis Pena who then folded due to political pressure. What a disgrace!

Here is the short version: When considering the evidence, which is why I have requested an evidentiary hearing many times, it is clear to any reasonable person that retired Commissioner Ratekin breached her ethical duties. When she and her cronies got caught, they tripled down with nothing other than more cronies in their pockets. Ms. Ratekin should be disbarred, and I will pursue that at some point along with about 50 others that got defrauded by her. Clearly, Ratekin wanted this case and wanted it bad. No orders were made or arguments heard yet she held on to the case illegally with white knuckles and likely because she had already promised Dave Schilman a victory. When Ratekin finally recused in shame, Dave Schulman went running for help to retired Judge Alknse to cover this mess up and that she did and likely because Dave Schilman is well connected in San Diego. This case comes down to mostly my son who I raised because I was a stay-at-home dad for almost a decade. Rateken tried to snake my parental rights away illegally and I said it was not going to happen as I would stand up for me and my childrens rights. I had legal necessity to hold on to my son due to the emotional trauma he was and continues to suffer due to this RICO crew's unethical activity. Because I was in compliance with the law but still holding onto my son for his protection, I was illegally and unethically punished by a few within the San Diego Superior Court, and I call on this court to remedy such egregious blatant violations of basic law and fairness. I will not hold my breath, but I need to exhaust my remedies to get to the 9th circuit where I am hopeful that such egregious violations will

Document received by the CA Supreme Court.

not go unnoticed and unpunished. All judicial officers have a duty to uphold the law and basic fairness. I got railroaded and got zero.zero and I am an awesome dad with lots of witnesses that have never even had a chance to speak due to this farce and a shame that a few people have committed on me and my children which will forever scar us. This is truly disgusting, and I call on this court for basic fairness and to give me my fair day in court.

As held in Rochin v. California (1952), misconduct that "shocks the conscience" violates due process. Ratekin's actions shock the conscience. Her oversight amounted to a "farce and sham," not due process. As this Court found in Moore v. Dempsey (1923), where proceedings show utter contempt for rights, the resulting orders must be condemned.

For two years under two judges, custody was 50/50 based on court services recommendations. Yet Ratekin shredded Petitioner's bond with his 14-year-old son Bryce, now 17, and 11-year-old daughter Skylar, now 14, absent evidence.

The US Supreme Court has recognized the substantial harm caused by unwarranted state interference in parental rights. As held in Troxel v. Granville (2000), the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests," including parenting.

Petitioner raised Bryce and Skylar as a stay-at-home dad for years. Now Skylar won't speak to him after 2 years of separation orchestrated by Ratekin. This "grievous loss" cannot be restored. As found in Santosky v. Kramer (1982), improperly severing the parent-child relationship causes "irreparable harm."

Bryce has begged the court to let him go home amidst escalating conflict under his mom's roof. But his cries remain unheeded, his anguish compounds daily.

Ratekin's ethical breaches and willful misconduct absent due process have unjustly separated a loving father from his children for years now. Her actions shock the conscience.

This unprecedented abuse of power demands intervention to remedy egregious legal wrongs tearing innocent lives apart. Petitioner implores this Court to act with courage and

Document received by the CA Supreme Court.

wisdom to halt the injustice and restore what has been unjustly taken. The cries of suffering children separated from their dad compel action.

The exhibits filed under separate cover are extensive so I will simply be brief below with some listed appendix items to show what a farce and a sham that retired Patti Ratekin and opposing counsel Dave Schulman have perpetrated on this court and made a mockery of our justice system. My peremptory challenge; Ms. Ratekins admission she did not have time to hear the case on this same day; Ratekin saying she is acting as a temp Judge; Bryce's TRO and police report against assigned minor counsel; signed judgment by Ratekin a day after she recused; and the most embarrassing and absurd order by Ms. Ratekin is where she was so desperate to burn me that she signed an order for supervised visitation the day she recused based on a witness affidavit regarding the child psychologist which has nothing to do with custody. (exhibit F) Ms. Ratekin was just upset that her RICO crews scam of placing my son in a "facility" was falling apart based on the evidence.

# VII. Certificate of Word Count

Pursuant to California Rules of Court, rules 8.204(c)(1) and 8.360(b)(1), I certify that the total number of words in this Petition for Review, excluding tables of contents and authorities, this certificate, and any appendices, is 5603 words.

I certify that this petition complies with the form requirements set forth in California Rules of Court, rules 8.204 and 8.360.

Document received by the CA Supreme Court.

# VIII. CERTIFICATE OF TRUTH

I, Rob Emert, declare under penalty of perjury under the laws of the State of California that the factual allegations in this Petition for Review are true and correct to the best of my personal knowledge.

Dated: 03/07/24

*Rob Emert*

Rob Emert

760-612-9328

# VIIII. CERTIFICATE OF ELECTRONIC SERVICE

I, Glenda Emert, declare:

I electronically served a true copy of this Petition for Review on 03/07/24 by transmitting a copy from my email address to the email address of record for Linda Ciano, Dave Schilman, San Diego Superior Court Appellate Division and then uploaded to the California True Filing system. elsieesq@juno.com; appeals.central@sdcourt.ca.gov; dschulman@msmfamilylaw.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:03/07/24

*glenda emert*

Document received by the CA Supreme Court.

Glenda Emert

# X. NOTICE OF INTENT TO LODGE DOCUMENTS

Pursuant to California Rules of Court, rule 8.252(a)(1), Petitioner hereby provides notice of intent to lodge the following documents that are relevant to the issues presented in this Petition for Review.

The lodged documents contain material information pertaining to the extraordinary claims presented in this petition. In accordance with California Rules of Court, rule 8.252(a)(2), true and correct copies of the lodged documents will be furnished to the Court upon request. Petitioner respectfully requests the Court consider the proffered documents in assessing the merits of this petition.

A. Bryce Emert Declaration with Five Sworn Witness Affidavits

B. Rob Emert Medical Documents

C. Text from Bryce Emert Behavioral Therapist

D. Stay motion to Presiding Judge Alksne 10/01/21.

E. Andrea typical attitude text message

F. 09/30/21 Hearing while I am still in hospital that got postponed until 10/04/21 where Ratekin then recused and that hearing did not go forward either.

G. Matt Cord, minor council for Bryce just doing what Ms. Ratekin told him to do.

H. 10/01/21 Andrea Schuck motion asking for supervised visitation but later claims it was already ordered on 09/30/21.

I. ADA and medical documents that went ignored

Document received by the CA Supreme Court.

J. Mark Fidelman witness affidavit of Bryce's psychologist Jesse Olague.

K. Bryce Emert police report against his attorney Matt Cord where Bryce spoke independently with police.

L. Bryce goes to file TRO against his attorney Matt Cord and speaks to the court himself.

M. THREE FCS reports indicating 50/50 custody for almost two years and I, Rob Emert, initially was granted 60%.

N. Rob Emert therapist letter right off blue shield insurance that Ratekin rejected even though it complied with court rules and with zero evidence, recommends a full 730 psychological evaluation.

O. Andrea Schuck therapist letter that Ratekin ignores.

P. 04/28/21 Ex Part where I simply ask for discovery and statements from the court and minor counsel where are they getting their information from to support drastic orders with zero evidence.

Q. Court Transcripts

R. Andrea Schuck Malicious Text to family friend. Any friends or family that disagreed with Andrea's narrative, she would attack and then isolate the children from.

S. Andrea Schuck Arrested for Domestic Violence

T. Andrea Schuck Arrested for Domestic Violence

U. Mediation offers, many of them.

V. Reply motions regarding minor council Matt Cord trying to recommend taking custody from me with no evidence to do so. Not looking out for his client and just being a spineless stooge.

W.Motions to Presiding Judge Alksne for Ratekin to Recuse

X. Matt Cord, attorney for Bryce, ignores what is in the best interests of the child. Emails.

Document received by the CA Supreme Court.

Y. Sworn Witness Affidavits regarding Rob Emert and his children, Bryce and Skylar.

Z. Updated ADA request that went ignored.

AA. Email asking Dave Schilman why all the hassle. Dave Schilman is guilty of moral turpitude.

BB. Extensive Emails showing Matt Cord did not do what was in his clients best interests.

CC. California Ethical Rules for Judges working with self-represented litigatns.

DD. Dave Schilman threatening the San Diego Reginal Center with an injunction if they provide therapy sessions to me and my children.

EE. San Diego Regional Center emails.

FF. Ms. Ratekin highlights from court transcripts.

GG. Emails Documenting Blatant Denial of Access to My Own Hearings and Trial

HH. Timeline of heart attack and being denied access to my own hearings and trial.

II. Motion to withdrawal stipulation to Alksne that went ignored.

JJ. Rob Emert's witness list. Alksne allowed for a motion in limine to keep ALL my witnesses out of my own trial.

KK. Felony legal notice given to Alksne and Ratekin

LL. Federal Lawsuit against Ratekin

MM. Press Release – Unethical violations in SD Family Courts.

NN. Peremptory challenge that was filed timely and before orders made that was illegally denied.

OO. Ex Parte 09/26/22 that Judge Robinson said was not an emergency and she did not have jurisdiction to hear the matter regarding the 11/29/21 default trial judgment.

PP. Ex Parte 11/24/21 that went ignored by Judge Alksne

Document received by the CA Supreme Court.

QQ. DCSS motion that went ignored and continues to be ignored 07/27/22

RR. Peremptory challenge along with minute orders for the first day Ratekin heard case and a month later where she took all my legal parental rights away.

SS. Matt Cord blatantly ignoring alarming conduct of Bryce's mom

TT. Withdrawal of stipulation of Ratekin filed with Alksne but she simply ignored it.

UU. Writ filed with the appellate court 11/22/21

VV. Bryce homeschool documentation

WW. CPS closing case after the interview with Bryce

XX. District Attorney email showing Bryce's mom "giving" custody of Bryce to me.

YY. 05/20/21 Disqualification of Ratekin

ZZ. 06/14/21 Disqualification of Ratekin

AAA. DCSS motion filed and ignored.

BBB. Email where Bryce's mom is trying to get Bryce's IEP case manager to not comment on the fact that Bryce does not belong in a residential home.

CCC. 10/13/22 email to Luis Pena saying he can and should meet with Bryce and forwarded him lots of information already given to the prior investigator, Steve Mcintosh. Both Pena and Mcintosh told me that this case did not belong in criminal court.

DDD. Email to Dave Schilman showing Bryce being abused.

EEE. Many emails detailing me being denied access to my own hearings and trial.

FFF. 04/28/21 ex parte to vacate Ratekins fraud upon the court

GGG. Reservation of federal rights.

HHH. Andrea Schuck malicious text

III. Press Release of San Diego Family Court misconduct.

Document received by the CA Supreme Court.

JJJ. Text from Bryce's Friend's Mom, Who Is a Witness to Andrea's Alarming Behavior Towards Bryce and His Friends

KKK. DDA Balerio and Bryce Emert Transcript of Interview

LLL. Default Judgement 10/15/21

MMM. Default Judgement 11/18/21

NNN. Default Judgement 01/24/22

OOO. Ex Parte 11/29/21 for Continuance or Remote Hearings Due to Heart Attack

PPP. Ex Parte to Vacate 12/10/21 Default Judgement 11/30/21 including updated medical documents/records that simply went ignored by then Presiding Judge Alksne and the ADA coordinator.

QQQ. Judge Alana Robinson Indicating She Does Not Have Jurisdiction to Hear the Default Judgement Entered 01/24/22

RRR. Copy of the Complaint Provided to the DA, DOJ, FBI, Presiding Judge, Local Police, and More

SSS. Ex Parte 11/29/21 for Continuance or Remote Hearings Due to Heart Attack

TTT. Motion to Reconsider the Stay Stemming from 11/29/21 Trial

UUU. Appeal for 10/15/21

VVV. Appeal for 11/18/21

WWW. Andrea Schuck Email Indicating I Must Drop All My Current Motions and Appeals Before She Comes to the Negotiating Table in Bryce's Best Interests

XXX. Private Investigator's Interview with Bryce Emert

YYY. Withdrawal of Guilty Plea

ZZZ. Andrea Schuck Post Regarding My Daughter Not Wanting to See Me

Document received by the CA Supreme Court.

AAAA. Appeal of Guilty Plea

BBBB. All Email Communications with DA's Office

CCCC. Appeal Court Conformed Documents Showing Default Trial Judgement Is Not on Appeal

DDDD. Federal Lawsuit

EEEE. 020421 court min order Ratekin leaving early due to COVID-related matter

FFFF. Transcript of court the day Ratekin recused

GGGG. Bryce transcripts of phone calls

HHHH. Department of Justice Email forwarding my investigation request to the FBI

IIII. District Attorney Email saying Andrea Schuck is giving me custody of Bryce

JJJJ. Transcript of FBI call of the "threat"

KKKK. Dave Schulman letter to minor counsel showing misrepresentation.

LLLL. Transcripts of District Attorney phone calls that prove lying; withholding evidence; and a blatant disregard for candor to the court

MMMM. Bryce letter he wrote to the court while I was illegally incarcerated

NNNN. Witness Cole, Bryce's friend who was interviewed by a private investigator

OOOO. Witness Mark Fidelman who was interviewed by a private investigator

PPPP. Witness Cortney Costello who was interviewed by a private investigator

QQQQ. Opening Brief for Court of Appeals

RRRR. Dave Schulman letter to minor counsel

SSSS. Dave Schulman replies in the Federal lawsuit where he blatantly lies to the court. Dave Schulman states that Comm. Patti Ratekin was basing a "facility" recommendation of

Document received by the CA Supreme Court.

Bryce on a psychological report when, in fact, Comm. Patti Ratekin said it within five minutes of meeting parties before there could have been any such report.

TTTT. Habeas Corpus ready to go so if DDA Balerio illegally incarcerates me again

UUUU. Andrea stalking two women online after she realized they are friends of mine.

# XI. Appendix

Document received by the CA Supreme Court.

**A. Bryce Emert affidavit.  Bryce is now almost 17 and simply wants to go home.**

Document received by the CA Supreme Court.

## AFFIDAVIT OF BRYCE EMERT

I, Bryce Emert, declare the following under penalty of perjury:

I have personal knowledge of the facts stated in this affidavit and am competent to testify to them if the court allows me to do so. I would like to talk to the court but have been prevented from doing so, which has caused me so much hardship and pain. I am almost 17 and I don't understand why my voice is not being heard by the court. I have so many friends who have parents who are divorced, and they are heard by everyone.

1. The following letters and emails were written by me in my pleas to be heard. Those are my words in those letters and emails. They describe me being harassed and traumatized and to escape it, I asked my dad to simply live with him to escape the emotional abuse and toxic relationship I have had with my mom for lots of my life. She used me in divorce proceedings and continues to do so.
2. My Dad homeschooled me and I believe I learned more from him in that one year I lived with him than three years in the public schools.
3. My dad encouraged me to have a relationship with my mom and always has. He has even asked her to go on outings. My Dad encourages me to see the best in everyone.
4. I have spoken to the District Attorney's office, the police, CPS, school counselors, teachers and have even tried logging into court proceedings just to be shut out. I have told everyone the same thing. My mom was using me in divorce proceedings, it was horrible, and the emotional abuse continues. She holds putting me in facilities over my head. She has tried to isolate me from my dad and anyone who stands with my dad. She has shown that she hates him more than she loves me.
5. Please dismiss criminal charges from my Dad. He did not do anything wrong. He saved me per my request and he is a great dad and has always been there for me. My Dad has always encouraged me to meet new people and do my best in everything in life. Why are the courts trying to keep me from my Dad?

Please let me go home to my Dad. I will continue to work on my relationship with my mom. My dad is not the cause of my issues with my mom. Please call or face time me anytime. Please let my voice be heard in court.

This concludes my sworn testimony. I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge and recollection.

Executed on 11/16/23 in San Diego, CA

Bryce Emert

760-492-4289

Document received by the CA Supreme Court.

**B. Peremptory Challenge filed timely and before any orders made or arguments heard along with the improper denial. This was Monday 02/08/21.**

Document received by the CA Supreme Court.

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address)
R bert Emert
2351 V ista Lago Terrace
Escondido, CA 92029
Self Represented

TELEPHONE NO 760-612-9328     FAX NO (Optional)
EMAIL ADDRESS (Optional) robemert@msn.com
ATTORNEY FOR (Name) Self

FOR COURT USE ONLY

**F** I L E **D**
Clerk of the Superior Court

FEB 0 8 2021

By: _____

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
☐ CENTRAL DIVISION  CENTRAL COURTHOUSE, 1100 UNION ST , SAN DIEGO  CA 92101
☐ CENTRAL DIVISION  HALL OF JUSTICE 330 W BROADWAY  SAN DIEGO  CA 92101
☐ CENTRAL DIVISION  KEARNY MESA  8950 CLAIREMONT MESA BLVD  SAN DIEGO  CA 92123
☐ CENTRAL DIVISION  JUVENILE COURT  2851 MEADOW LARK DR , SAN DIEGO  CA 92123
☒ NORTH COUNTY DIVISION  325 S MELROSE DR  VISTA  CA 92081
☐ EAST COUNTY DIVISION  250 E MAIN ST  EL CAJON  CA 92020
☐ SOUTH COUNTY DIVISION  500 3RD AVE , CHULA VISTA  CA 91910

PLAINTIFF(S)/PETITIONER(S)
Andrea Emert

DEFENDANT(S)/RESPONDENT(S)
Robert Emert

IN THE MATTER OF
marriage of emert

JUDGE
Honorable Patti Ratekin

DEPT

NC 19

CASE NUMBER
19FL010852N

### PEREMPTORY CHALLENGE

Robert Emert _____ is ☒ a party [ ] an attorney for a party in the

above-entitled case and declares that Comm issioer Patti C. Ratekin_____ the judicial officer to

whom th is case is assigned. is prejudiced against the party or the party's attorney or the interests of the party or the party's

attorney such that the said party or parties believe(s) that a fair and impartial trial or hearing cannot be had before such

judicial officer

WH EREFOR pursuant to the provisions of Code Civ. Proc. §170.6. I respectfully request that this court issue its order

reassigning said case to another, and different, judicial officer for further proceedings

I also respectfully request a Judge for th.s and future Proceedings

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date 02/08/21_____          rob emert

                                                    Signature

---

### ORDER

☐ GRANTED -- The court finds the challenge is timely filed and the party s/attorney's above statement meets the
    requirements of Code of Civ. Proc. §170 6 (a)(4). The case will be reassigned and a notice will be mailed to the parties
    and/or counsel

☒ DENIED  Previous stipulation to commissioner
                on 2-4-21

IT IS SO ORDERED.

Date:  **FEB 0 9 2021**               Patti Rasel /le

                                Judge/Commissioner of the Superior Court
                                PATTI RATEKIN

Date: _____     Case is reassigned to Judge/Commissioner _____

Document received by the CA Supreme Court

Document received by the CA Supreme Court.

**C. Retired Commissioner Patti Ratekin indicated in the court transcript that she did not have time to hear arguments on this case on this day she took the case. This was Thursday, 02/04/21.**

25          THE COURT:  OKAY  WELL, THAT'S WHAT THE TRIAL
26  IS GOING TO BE ABOUT.  THERE'S GOING TO BE A LOT OF [62]
27  THINGS THAT THE TRIAL IS ABOUT, BUT I'VE GOT TO DEAL WITH
28  WHAT TO DO BETWEEN NOW AND THEN.  AND I'VE GOT A

Peggy Tiess, CSR #7908

138    15

1   RECOMMENDATION -- I NEED TO GET THROUGH PART OF MY
2   CALENDAR, I'M NOT READY TO DO THIS CASE RIGHT NOW, SO
3   I'LL TRAIL YOU UNTIL THE END.  I'LL GIVE YOU AS MUCH TIME
4   AS I CAN GIVE YOU.  OKAY.
5
6                       -oOo-
7       (THE PROCEEDINGS ADJOURNED IN DEPARTMENT 19.
8       NOTE THAT THIS CASE WAS NOT RECALLED IN
9       DEPARTMENT 19 THIS DATE.  ACCORDING TO THE
10      MINUTES, THE CASE WAS SENT TO DEPARTMENT 16,
11      JUDGE BROWER.)
12                      -oOo-

nt received by the CA Supreme Court.

**D. Retired Commissioner Patti Ratekin with no notice to me switches duties from a "commissioner" to a "temporary judge" and was already working outside of jurisdiction due to the properly filed peremptory challenge filed 02/08/21. This "temp judge" notice was slipped in on 02/25/21.**

Document received by the CA Supreme Court.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

| NUMBER | REPORTER | CSR# | | | |
|---|---|---|---|---|---|
| 19FL010852N | Vanessa Evans, CSR 12733 | | ☐ PREITER ☐ SPANISH ☐ | | |
| | ☐ NOT REQUESTED ☐ NOT REPORTED | | ☒ P ☐ R | | |

| DATE OF HEARING | TIME OF HEARING | DEPT | JUDGE | CLERK | |
|---|---|---|---|---|---|
| 02/25/2021 | 9:00 AM | N-19 | PATTI C. RATEKIN | K. HICKMAN | D. Catlett |

| PETITIONER | | ATTORNEY FOR PETITIONER | |
|---|---|---|---|
| Andrea L. Emert | ☒ P ☐ NP | **DAVID S SCHULMAN** DAVID S SCHULMAN | ☒ P ☐ NP |

| RESPONDENT | | ATTORNEY FOR RESPONDENT | |
|---|---|---|---|
| Robert Emert | ☒ P ☐ NP | **PRO SE** Robert Emert | ☐ P ☐ NP |

| ADDITIONAL PARTY | | ADDITIONAL COUNSEL | |
|---|---|---|---|
| | ☐ P ☐ NP | | ☐ P ☐ NP |

**Robert Emert Request for Order Hearing** re: CHANGE in Child Custody; Visitation
Support; Spousal Support; Modify Support Retroactive to Date Motion Filed Pursuant to
FC Section 3653 & 4333; FCS to Interview Bryce (Scheduled per 11/10/20 Ex Parte Order)
Next Hearing: 3/18/2021 ☒ CONFIRMED ☐ VACATED

THE ABOVE MATTER CAME ON FOR HEARING THIS DATE WITH ABOVE APPEARANCES, AFTER HEARING THE COURT ORDERED THAT

CONSOLIDATION: ☐ CASE NO _____ IS CONSOLIDATED WITH PRIMARY/LEAD CASE NO. _____
OATH: ☐ PTNR ☐ RESP SWORN AND EXAMINED ☐ AS TO JURISDICTION ☐ ADVISAL: WAIVER OF RIGHTS, STIPULATION RE: PATERNITY FILED
CUSTODY: LEGAL: ☐ JOINT ☐ SOLE LEGAL PTNR ☐ SOLE LEGAL RESP PHYSICAL: ☐ JOINT ☐ PRIMARY ☐ PTNR ☐ RESP
VISITATION: ☐ PARTIES REFERRED TO FAMILY COURT SERVICES _____ ☐ EXTENDED MEDIATION ☐ PSYCH. EVALUATION ORDERED
☐ FAMILY COURT SERVICES ☐ MINORS' COUNSEL RECOM. DATED _____ ADOPTED AS AN ORDER ☐ BY STIPULATION ☐ AS MODIFIED
☐ VISITATION OF ☐ PTNR ☐ RESP ☐ SUPERVISED BY ☐ AGREED UPON 3RD PARTY ☐ PROFESSIONAL AGENCY _____

☐ CHILDREN NOT TO BE REMOVED FROM ☐ COUNTY ☐ STATE WITHOUT WRITTEN CONSENT OF THE OTHER PARENT OR THE COURT
☐ PARTIES NOT TO MAKE DISPARAGING REMARKS ABOUT THE OTHER PARTY OR HAVE ADULT DISCUSSIONS IN THE PRESENCE OF THE
CHILDREN
☐ PTNR ☐ RESP ORDERED NOT TO CONSUME ALCOHOL/DRUGS IN PRESENCE OF CHILDREN ☐ DURING VISITS OR W/IN 24 HRS OF VISITATION
☐ PTNR ☐ RESP TO COMP SUBSTANCE ABUSE ASSESSMENT
☐ PTNR ☐ RESP TO COMP. PARENTING CLASS ☐ PTNR ☐ RESP TO COMP. ANGER MGMT. CLASS ☐ PTNR ☐ RESP TO COMP. 52-WEEK DV PGM
☐ PTNR ☐ RESP STIPULATE/ORDERED TO DRUG TESTING ☐ PROOF TO ☐ COURT FILE ☐ COUNSEL BY _____
COURT FINDINGS (FC§ 3048): BASIS FOR JURISDICTION ☐ HOME STATE ☐ EMERGENCY ☐ NO OTHER STATE HAS ASSUMED JURISD. & THIS
IS AN APPROPRIATE FORUM ☐ PREVIOUS ORDERS MADE IN THIS COURT ☐ _____
MANNER NOTICE GIVEN: ☐ PERSONAL SERVICE ☐ MAIL SERVICE ☐ PERSONAL PRESENT & HAS KNOWLEDGE OF HEARING ☐
HABITUAL RESIDENCE OF THE CHILD(REN): ☐ SAN DIEGO CNTY, CALIFORNIA, USA ☐ _____
☐ PARTIES ADVISED THAT VIOLATION OF THIS ORDER MAY RESULT IN CIVIL OR CRIMINAL PENALTIES, OR BOTH
THE COURT FINDS: CHILDREN CHILD SHARE - _____ % ☐ INTERIM ☐ FINAL CUSTODY/VISITATION ORDER
PTNR: ☐ SINGLE ☐ HH ☐ MARRIED ☐ JOINT ☐ FILING SEP ( ) RESP: ☐ SINGLE ☐ HH ☐ MARRIED ☐ JOINT ☐ FILING SEP ( )
GROSS $_____ ☐ NON-TAX $_____ ☐ ABILITY GROSS $_____ ☐ NON-TAX $_____ ☐ ABILITY
DEDUCT: HEALTH$_____ PROP. TAX$_____ INTEREST$_____ DEDUCT: HEALTH$_____ PROP. TAX$_____ INTEREST$_____
UNION DUES$_____ MAND. RETIREMT$_____ HARDSHIP$_____ UNION DUES$_____ MAND. RETIREMT$_____ HARDSHIP$_____
NEW SPOUSE$_____ NET$_____ NEW SPOUSE$_____ NET$_____

THE COURT ORDERS CHILD SUPPORT OF:$_____ MO. EFF: _____ PAYABLE BY ☐ PTNR ☐ RESP
☐ CHILD SUPPORT ORDERED THRU D.C.S.S
☐ FIRST CHILD $_____ SECOND CHILD $_____ THIRD CHILD $_____ FOURTH CHILD $_____
☐ PTNR ☐ RESP TO PAY 1/2 OF ANY UNCOVERED MEDICAL/DENTAL/ORTHODONTIC/OPTICAL/PSYCHOLOGICAL FEES PURSUANT TO FC§4063
☐ PTNR ☐ RESP TO PAY 1/2 OF CHILD CARE COSTS FOR EMPLOYMENT / JOB SEARCH ONLY / AUTHORIZED EDUCATIONAL PURSUITS
☐ BILLS TO BE SUBMITTED W/IN 10/30 DAYS AND REIMBURSEMENT DUE 10/30 DAYS AFTER RECEIPT OF THE BILL
☐ PTNR ☐ RESP TO MAINTAIN ☐ HEALTH INSURANCE AT MINIMAL OR NO COST ☐ LIFE INSURANCE
CHILD SUPPORT: EARNINGS ASSIGNMENT ☐ ORDERED ☐ ISSUED ☐ NOT ISSUED.

THE COURT ORDERS SPOUSAL SUPPORT OF:$_____ MO.EFF: _____ PAYABLE BY ☐ PTNR ☐ RESP ☐ RESERVED
☐ TERMINATED ☐ TERM. DATE _____ ☐ THE COURT HAS CONSIDERED FC4320 FACTORS
SPOUSAL SUPPORT: EARNINGS ASSIGNMENT ☐ ORDERED ☐ ISSUED ☐ NOT ISSUED.

ATTY FEES $_____ AT $_____ MO. EFF. _____ BY ☐ PTNR ☐ RESP ☐ RESERVED ☐ 2 MONTH ACCELERATION CLAUSE
☐ AS ADDTL. SUPPORT FOR ENFORCEMENT PURPOSES ☐ WAGE ASSIGNMENT AUTHORIZED
ARREARAGES: ☐ COURT SETS ARREARAGES AT $_____ AS OF _____ ☐ PTNR ☐ RESP ORDERED TO PAY $_____ MO EFF:
HEARING: ☐ OFF CAL ☒ CONT TO 3-30-21 AT 145 PM DEPT 19 BY ☐ PTNR ☐ RESP ☐ STIP ☒ COURT ☐ REISSUE
☐ EXISTING ORDERS REMAIN IN EFFECT PENDING FURTHER HEARING, EXCEPT WHERE IN CONFLICT, THIS ORDER CONTROLS RFO
☐ COURT RETAINS JURISDICTION OVER _____ ☐ RETROACTIVE TO _____ ☐ RESERVED
☐ COURT APPTS. ATTY. _____ FOR ☐ MINOR(S) (RESERVED AS TO FEE REIMBURSEMENT) ☐ SEE ORDER APPOINTING COUNSEL

**MINUTES OF THE FAMILY COURT**

Document received by the CA Supreme Court.

Commissioner Patti C. Ratekin is a judicial officer selected by the judges of the San Diego
Superior Court assigned to hear and determine Family law cases because of her experience, skill
and knowledge in handling these matters.

In order to have a commissioner act as a judge in a case, all parties to the case must agree that the
commissioner can act as a temporary judge. If any party does not agree, the case will be
reassigned to another judicial officer for today's hearing and all future hearings.

To "stipulate" means you agree to the appointment of Commissioner Patti C. Ratekin as a judge
for this hearing and all future hearings and trials in this case, including any contempt proceedings
and all post-judgment matters.

**IT IS STIPULATED** by the attorneys and / or parties by phone / virtual hearing that
Commissioner Patti C. Ratekin will hear and decide all present and future matters in this case as
a Temporary Judge, including any contempt proceedings and all post judgment matters.

The parties present oral arguments.

**Court orders:**
- The Court appoints Attorney Matthew Cord as Minor's Counsel for the minor, Bryce.
- The Court appoints Attorney Cathryn Young as Minor's Counsel for the minor, Skylar.
- Court reserves jurisdiction over payment of Minor's Counsel fees.
- Both parties are directed to sign releases in order for Minor's Counsels to speak with the
  therapists. The parties shall each contact Minor's Counsel to speak with the children.
- A copy of the FCS Report shall be provided to Minor's Counsels.
- Respondent is directed to make ten (10) job contacts per week until employed full time at
  40 hours per week.
- Both parties are directed to file an updated Income & Expense Declaration prior to the
  next hearing.
- Attorney Schulman shall provide Minor's Counsels with the parties' personal information
  sheets.
- **The RFO is continued to March 30, 2021 at 1:45pm in Department 19.**

-dc-

Document received by the CA Supreme Court.

**E. Email to Ms. Ratekin's clerk that I was indeed in the ER recovering from a widow maker heart attack caused by her and her cronies terrorizing me and my children after two years of a 50/50 scenario by two judges 3 FCS reports and 2 FCS child interviews. This was on Thursday, 09/30/21.**

Document received by the CA Supreme Court.

**Case file 19FI010852N**

Rob Emert <robemert@msn.com>
Thu 9/30/2021 1:20 PM
To:sara.armstead@sdcourt.ca.gov <sara.armstead@sdcourt.ca.gov>

📎 1 attachments (3 MB)
20210930_131022.jpg;

I I'm in the ER due to a massive heart attack.   Picture attached to document.   There was an ex parte request at 8:30 this morning that is not an emergency.   Commissioner Ratekin has been so biased throughout her hearing my case that she says she is going to rule on the ex parte today at 3 if I don't show up personally at court.   It's not an emergency but Commissioner Ratekin wants to burn me so bad she says she will rule on this while I am in the ER right out of a massive heart attack.   Yeah, no bias there.

Rob Emert
760-612-9328

Sent from my T-Mobile 5G Device
Get Outlook for Android

Document received by the CA Supreme Court.

**F. On 10/04/21, Ms. Ratekin finally recuses but throws in an order of supervised visitation based on a witness affidavit who was simply providing testimony regarding the child psychologist.  This has zero to do with child custody and everything to do with malicious retaliation of Ms. Ratekin because this witness affidavit was going against the narrative of what Ratekin had been trying to do for the prior six month of putting my son in a "facility" for profit, divorce leverage and cronyism.**

Document received by the CA Supreme Court.

ATTORNEY OR PARTY WITHOUT AN ATTORNEY *Name, State bar number, and address*:

Matthew W. Cord 204917
Andrew P. Johnson, APC
440 South Melrose Dr. Suite 260
Vista, CA 92081

TELEPHONE NO. 7606390187    FAX NO. *(Optional)*:
E-MAIL ADDRESS *Optional*: mcord@apjohnsonesq.com
ATTORNEY FOR *Name*: Minor Child

FOR COURT USE ONLY

F I L E D
*Clerk of the Superior Court*
SEP 29 2021
BY:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

☐ CENTRAL DIVISION, CENTRAL COURTHOUSE, 1100 UNION ST., SAN DIEGO, CA 92101
☐ CENTRAL DIVISION, COUNTY COURTHOUSE, 220W BROADWAY, SAN DIEGO, CA 92101
☐ CENTRAL DIVISION, FAMILY COURT, 1555 6TH AVE., SAN DIEGO, CA 92101
☐ CENTRAL DIVISION, MADGE BRADLEY, 1409 4TH AVE., SAN DIEGO, CA 92101
☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020
☒ NORTH COUNTY DIVISION 325 S MELROSE DR., VISTA CA 92081
☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910

PETITIONER(S)  ANDREA EMERT

RESPONDENT(S)  ROBERT EMERT

EX PARTE APPLICATION AND ORDER  FAMILY LAW

JUDGE/DEPT
D-19
CASE NUMBER
19FL010852N

FOR HEARING APPEARANCE INFORMATION VISIT www.sdcourt.ca.gov

Hearing Date : 9/30/2021    Time: 8:30   ☒ a.m.  ☐ p.m.  ☒ Opposed  ☐ Unopposed

1. Type of relief requested:
   ☐ Temporary Restraining Orders      ☒ Child Custody/Visitation Order
   ☒ Order Shortening Time             ☐ Order After Hearing Being Submitted for Signature
   ☒ Other (specify): Temp Emergency Custody Orders
   Ex parte relief is necessary because:
   Respondent is continually exposing minor child to court proceedings
   and documents; his other behavior (see concurrently filed
   declaration of Matthew W. Cord) harm minor child.

2. Name of opposing attorney/party: Robert Emert, Respondent (pro per); David Schulman, Esq.

3. Did the opposing attorney/party receive notice? ☒ Yes ☐ No Date 9/29/2021 Time: 8:30 ☒ a.m. ☐

4. If notice was not given, state reason(s):

5. Have evidentiary declarations been submitted?   ☒ Yes ☐ No

6. Has a proposed order been submitted?   ☒ Yes ☐ No

7. Have you appeared ex parte before for the same relief?   ☐ Yes ☒ No If "yes," relief was   ☐ granted ☐ denied.

I declare under penalty of perjury under the laws of the State of California that the above information and all attachments are true and correct.

Date 9-28-21                                    *(signature)*
                                               Signature

**ORDER**

IT IS SO ORDERED:

The requested relief is  ☐ DENIED  ☒ GRANTED as follows:

*see attached*

☐ Continued on attachment

☐ Petitioner  ☐ Respondent to prepare formal order.

Date  9/30/21          *(signature)* PATTI C. RATEKIN
                       Judge/Commissioner of the Superior Court

EX PARTE APPLICATION AND ORDER - FAMILY LAW

Emert

Document received by the CA Supreme Court.

ATTACHMENT TO EXPARTE ORDER:

The court grants a mistrial except for the termination of marital status.

This is set for a one day trial on November 29, 2021. It will not finish and this court does not have a date available.

Pursuant to CRC 5.82 (C)(5) For dissolution, legal separation, and nullity cases initially filed on or after January 1, 2014, the goals of any family centered case resolution process should be to finalize dispositions as follows:

(A) At least 20 percent are disposed within 6 months from the date the petition was filed;

(B) At least 75 percent are disposed within 12 months from the date the petition was filed; and

(C) At least 90 percent are disposed within 18 months from the date the petition was filed.

The matter is set for a two day trial on November 29, 2021 and November 30, 2021 at 9:00 a.m. in the Presiding Department of this case with Judge Lorna Alksne. D-1001

Pending a hearing on October 4, 2021 at 9:00 a.m. the minor child Bryce shall be in the care of Andrea Emert. Father stated during the initial ex parte hearing in the morning he was in the emergency room and had been there since the notice of the ex parte hearing on September 29, 2021. He later stated that he had been in the hospital prior to the ex parte notice, the court ordered him to turn the child over to mother, he said that he was going to pick up the child later, then said he was in his doctors office. The court trailed the matter to 3:30 p.m. so father could appear. The court revoked Mr. Emert's ability to appear by Teams.

At 3:30 p.m., father appeared on the phone and represented he had a heart attack and was in the hospital. Father is ordered to turn over the minor to his mother forthwith. This is not a change of custody but merely a continuance to give father the ability to present his case.

The court finds an emergency to supervised fathers visits pursuant to CRC 5.151 based upon the declaration of Mark Fidelman filed September 15, 2021 by father.

From: Lantz, Kristin <Kristin.Lantz@SDCourt.CA.Gov>
Sent: Tuesday, October 5, 2021 4:37 PM
To: Dave Schulman (dschulman@msmfamilylaw.com) <dschulman@msmfamilylaw.com>; robemert@msn.com <robemert@msn.com>; mcord@apjohnsonesq.com <mcord@apjohnsonesq.com>; catie@gylfamilylaw.com <catie@gylfamilylaw.com>
Cc: Husted, Adelina <Adelina.Husted@SDCourt.CA.Gov>
Subject: Minute Order re: Recusal, reassignment, and RFO date on 10/7/21 at 10am

Good afternoon,

Please note that Minor's Counsel's RFO has been set on 10/7/21 at 10:00 am in the Presiding Department (1002). Judge Alksne has ordered all parties and counsel to appear IN PERSON.

Thank you,

Document received by the CA Supreme Court.

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Robert Emert
2351 Vista Lago Terrace
Escondido, CA 92029

FOR COURT USE ONLY

2021 SEP 15 P 3: 13

TELEPHONE NO: 760-612-9328    FAX NO (Optional): N/A
E-MAIL ADDRESS (Optional): robemert@msn.com
ATTORNEY FOR (Name): pro se

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 325 S. Melrose Dr.
MAILING ADDRESS: 325 S. Melrose Dr.
CITY AND ZIP CODE: Vista, CA 92081
BRANCH NAME: Vista, CA 92081

PLAINTIFF/PETITIONER: Andrea Emert

DEFENDANT/RESPONDENT: Robert Emert

CASE NUMBER

19FL010852N

## DECLARATION

I, Mark Fidelman, being age of majority and not under any legal disability, make the following declaration of my own free will, and of my own personal knowledge and belief.

I am an acquaintance of Robert Emerts. Mr. Emert explained to me and others his issues with his divorce. He asked me and others to listen to the conversation he was going to have with his son's Psychologist, Dr. Olague. I agreed and listened to two conversations on different days while on speakerphone with Mr. Emert. On 08/12/21, I listened to Mr. Emert and Dr. Olague speak about both of their concerns for Bryce Emert.

On 08/26/21, I listened in as Mr. Emert, Dr. Olague and Mr. Emerts ex-wife spoke about concerns for Bryce.

What was very clear in both conversations was that at separate times, both Dr. Olague and Mr. Emerts X wife indicated very clearly and several times that Dr. Olague would not be involved or pulled into any court related matters so the focus could be solely on the minor, Bryce Emert. It was very apparent that Dr. Olague tried to make it clear to Mr. Emert that he wanted to generally get his take on where his son was at and the challenges he faced so that he could help his sons parents moving forward in helping their son.

I have read what Dr. Olague has now indicated about Mr. Emert. What is very concerning about Dr. Olague is the deceptive manner in which he said anything they talked about would not be shared with the court and that anything they discussed would not draw him into anything court, divorce or custody related. Most of all Dr. Olagues claims are misrepresentations and mis-characterizations of what was actually said and discussed in regards to Mr. Emert.

I'd be happy to discuss the matter under penalty of perjury with the court if so asked.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 9/14/2021

Mark Fidelman
(TYPE OR PRINT NAME)

(SIGNATURE OF DECLARANT)

☐ Attorney for ☐ Plaintiff ☐ Petitioner ☐ Defendant
☐ Respondent ☒ Other (Specify): Witness

Document received by the CA Supreme Court.

# G. Appellate court denial of rehearing motion

Document received by the CA Supreme Court.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

Court of Appeal
Fourth Appellate District

FILED ELECTRONICALLY
*02/26/2024*
Brandon L. Henson, Clerk
By: Rita Rodriguez

DIVISION ONE

STATE OF CALIFORNIA

In re the Marriage of ANDREA L.
SCHUCK and ROBERT EMERT.

ANDREA L. SCHUCK,

    Respondent,

    v.

ROBERT EMERT,

    Appellant.

D079955

(Super. Ct. No. 19FL010852N

ORDER DENYING REHEARING

THE COURT:

    The petition for rehearing is denied.

O'ROURKE, Acting P. J.

Copies to: All parties

Document received by the CA Supreme Court.

## H. Conformed copy of motion to rehear.

Please note that this was removed as it is already part of the record.

Document received by the CA Supreme Court.

**I. Denial opinion of rehearing**

Document received by the CA Supreme Court.

Filed 1/30/24

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

In re the Marriage of ANDREA L.
SCHUCK and ROBERT EMERT.

ANDREA L. SCHUCK,

     Respondent,

    v.

ROBERT EMERT,

    Appellant.

D079955

(Super. Ct. No. 19FL010852N

Document received by the CA Supreme Court.

APPEAL from a judgment of the Superior Court of San Diego County, Patti Ratekin, Commissioner and Lorna Alknse, Judge. Affirmed.

Robert Emert, in pro. per., for Appellant.

Law Office of Linda Cianciolo and Linda Cianciolo for Respondent.

Self-represented litigant Robert Emert (Robert) appeals a family court judgment entered against him by a family court commissioner, Patti Ratekin, arguing it is "void" or "required to be set aside and or vacated due to [Commissioner Ratekin's] egregious violations of state and federal laws/rules that govern our courts basic due process, basic service, and ethical conduct"

and also because "she entered the judgments [*sic*] after she recused . . . ."[1]
Robert also appeals from rulings by Judge Lorna Alknse, who he claims,
"kept me, my evidence, my witnesses and my [American Disability Act]
coordinators out of my own trial even though I simply requested a
continuance and or remote hearings due to a heart attack." Finally, he
claims, with no citation to the record, that Judge Alana Robinson refused to
hear his challenge to Commissioner Ratekin's rulings.

Respondent Andrea L. Schuck (formerly Emert (Andrea)) points out
Robert has failed to cite to the record and provide cogent arguments or sound
legal analysis and therefore has not presented sufficient grounds for reversal.
We agree and affirm.

## DISCUSSION

"Every brief must support any reference to a matter in the record by a
citation to the volume and page number of the record where the matter
appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).) . . . If a party fails to
support an argument with the necessary citations to the record, the
argument will be deemed waived." (*LA Investments, LLC v. Spix* (2022) 75
Cal.App.5th 1044, 1061; accord, *In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

Further, it is an appellant's burden to provide an adequate record
establishing error. (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1178.)

[1]     As respondent points out, one of Robert's notices of appeal states the
appeal is from Commissioner Ratekin's October 15, 2021 order, but that is
the date the commissioner filed her June 24, 2021 order. We construe the
appeal as taken from the June 24, 2021 order. We liberally construe notices
of appeal " 'so as to protect the right of appeal if it is reasonably clear what
[the] appellant was trying to appeal from, and where the respondent could
not possibly have been misled or prejudiced.' " (*In re Joshua S.* (2007) 41
Cal.4th 261, 272; accord, Cal. Rules of Court, rule 8.100(a)(2).) Robert's
second notice of appeal states it is from Judge Alksne's November 18, 2021
order.

Document received by the CA Supreme Court.

Generally, an appellant must include in the record either a reporter's transcript or a settled statement. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187; *Gonzalez v. Rebollo* (2014) 226 Cal.App.4th 969, 977 ["Without a complete record, we are unable to determine whether substantial evidence supported the implied findings underlying the trial court's order"].) " 'Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant].' " (*Foust*, at p. 187.) These rules of appellate procedure apply regardless of whether an appellant is represented by counsel or is self-represented. (*Nwosu v.* Uba (2004) 122 Cal.App.4th 1229, 1247.)

Any ambiguity in the record is resolved in favor of the judgment. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608).) On appeal, this court starts with a presumption that the judgment or order being appealed is correct; the burden is on the appellant to affirmatively show error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [" 'All intendments and presumptions are indulged to support [the judgment or order] on matters as to which the record is silent, and error must be affirmatively shown' "].)

As an appellant, Robert is further obligated to demonstrate how the rulings he challenges prejudiced him. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800-802; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105-106 ["[O]ur duty to examine the entire cause arises when and only when the appellant has fulfilled his duty to tender a proper prejudice argument. Because of the need to consider the particulars of the given case, rather than the type of error, the appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice"]; *Vaughn v. Jonas* (1948) 31 Cal.2d 586, 601 ["[t]o presume in favor of error or prejudice would be directly contrary to the policy of this state"].)

Document received by the CA Supreme Court.

3

Based on the above principles and Robert's deficient briefing, we are unable to conduct a meaningful review of his assertions of error and must resolve this appeal in favor of the judgment. Robert has forfeited his claims because he has not set forth the portion of the courts' rulings he disagrees with or made cogent arguments assigning error based on the applicable law. The presentation of an appeal is not merely a rehash of arguments unsuccessful at trial, but instead is a careful assertion of *legal* error and resulting prejudice. (*Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 712.)

At the outset of his opening brief, Robert acknowledges his brief lacked proper citation to legal authority: "In the interest of clarity and readability, this brief focuses on the application of key authorities, those that are most essential to the arguments presented in this case. Although the tenor of the entire brief reflects the principles set out by a broad range of authorities as referenced below, the document does not explicitly cite every authority on every page. The table of authorities that accompanies this brief provides a comprehensive list of all the cases, statutes, and other sources that significantly influenced the positions taken in this brief. [¶] The lack of page numbers provided in the table of authorities that are supposed to correspond to those sections where the authorities are explicitly invoked and discussed is not necessary as all the table of authorities are paramount in describing this scenario. It should be understood that the principles drawn from these authorities permeate the entirety of the arguments, even if not expressly cited on every page. [¶] This approach ensures that the brief remains cogent, while still acknowledging the breadth of authority underpinning the argument." (Some capitalization omitted.) "By failing to provide an adequate record, [Robert] cannot meet his burden to show error and we must resolve

Document received by the CA Supreme Court.

any challenge . . . against him." (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348.)

We also decline to address Robert's arguments raised for the first time in the reply brief, including his request for judicial notice.[2] "For obvious reasons of fairness, points raised for the first time in a reply brief will ordinarily not be considered." (*Rubinstein v. Fakheri* (2020) 49 Cal.App.5th 797, 809.) This includes his request for an evidentiary hearing. "Although appellate courts are authorized to make findings of fact on appeal . . . the authority should be exercised sparingly. [Citation.] Absent exceptional circumstances, no such findings should be made." (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.)

Document received by the CA Supreme Court.

[2]     After filing his reply brief, Robert filed in this court a motion requesting we take judicial notice of unspecified "undisputed factual matters in the record of this case." He also requested an evidentiary hearing "in order to present additional evidence related to the timeline and events stated below, which establish that the trial court lacked jurisdiction when it recorded the November 29, 2021 default judgment on [January 24, 2022] due to the automatic stays triggered by [his] previously filed appeals[.]" We denied the request for judicial notice by separate order.

# DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

IRION, J.

BRANDON L. HENSON, Clerk of the Court of Appeal,
Fourth Appellate District, State of California, does hereby
Certify that the preceding is a true and correct copy of the
Original of this document/order/opinion filed in this Court,
as shown by the records of my office.

WITNESS, my hand and the Seal of this Court.

01/30/2024

BRANDON L. HENSON, CLERK

DATO, J.



By _____
Deputy Clerk

Document received by the CA Supreme Court.

**J. 03/30/21 hearing where all my parental legal rights are snaked away with zero clear and convincing evidence of unfitness.**

Document received by the CA Supreme Court.

| NUMBER | REPORTER | CSR# | INTERPRETER ☐ SPANISH ☐ _____ |
|---|---|---|---|
| 19FL010852N | Shannon Riddell, CSR #13893 | ☐ NOT REQUESTED ☐ NOT REPORTED | ☐ P ☐ R |

| DATE OF HEARING | TIME OF HEARING | DEPT | JUDGE | CLERK |
|---|---|---|---|---|
| 03/30/2021 | 1:45 PM | N-19 | PATTI C. RATEKIN | K. HICKMAN  *D. Catlett* |

| PETITIONER | | ATTORNEY FOR PETITIONER | |
|---|---|---|---|
| Andrea L. Emert | ☒P ☐NP | **DAVID S SCHULMAN** DAVID S SCHULMAN *& Sarah Bear* | ☒P ☐NP |
| RESPONDENT | | ATTORNEY FOR RESPONDENT | |
| Robert Emert | ☒P ☐NP | **PRO SE** Robert Emert *Jack Barrett* | ☒P ☐NP |
| ADDITIONAL PARTY | ☐P ☐NP | ADDITIONAL COUNSEL | |
| MINOR'S COUNSEL | | **MATTHEW W CORD** MATTHEW W CORD *& Cathryn Young* | ☒P ☐NP |

**Robert Emert Request for Order Hearing**: CHANGE in Child Custody, Visitation Support; Spoual Support; Modify Support Retroactive to Date Motion Filed Pursuant to FC Section 3653 & 4333; FCS to Interview Bryce (Scheduled per 11/10/20 Ex Parte Order) Next Hearing: 5/11/2021          ☒CONFIRMED ☐VACATED

THE ABOVE MATTER CAME ON FOR HEARING THIS DATE WITH ABOVE APPEARANCES, AFTER HEARING THE COURT ORDERED THAT

**CONSOLIDATION:** ☐CASE NO _____ IS CONSOLIDATED WITH PRIMARY/LEAD CASE NO. _____
**OATH:** ☐PTNR ☐RESP SWORN AND EXAMINED ☐AS TO JURISDICTION ☐ADVISAL, WAIVER OF RIGHTS, STIPULATION RE: PATERNITY FILED
**CUSTODY:** **LEGAL:** ☐JOINT ☐SOLE LEGAL PTNR ☐SOLE LEGAL RESP  **PHYSICAL:** ☐JOINT ☐PRIMARY ☐PTNR ☐RESP
**VISITATION:** ☐PARTIES REFERRED TO FAMILY COURT SERVICES _____ ☐EXTENDED MEDIATION ☐PSYCH. EVALUATION ORDERED
☐FAMILY COURT SERVICES ☐MINORS' COUNSEL RECOM DATED _____ ADOPTED AS AN ORDER ☐BY STIPULATION ☐AS MODIFIED
☐VISITATION OF ☐PTNR ☐RESP ☐SUPERVISED BY ☐AGREED UPON 3RD PARTY ☐PROFESSIONAL AGENCY _____

☐CHILDREN NOT TO BE REMOVED FROM ☐COUNTY ☐STATE WITHOUT WRITTEN CONSENT OF THE OTHER PARENT OR THE COURT
☐PARTIES NOT TO MAKE DISPARAGING REMARKS ABOUT THE OTHER PARTY OR HAVE ADULT DISCUSSIONS IN THE PRESENCE OF THE CHILDREN
☐PTNR ☐RESP ORDERED NOT TO CONSUME ALCOHOL/DRUGS IN PRESENCE OF CHILDREN ☐DURING VISITS OR W/IN 24 HRS OF VISITATION
☐PTNR ☐RESP TO COMP SUBSTANCE ABUSE ASSESSMENT
☐PTNR ☐RESP TO COMP. PARENTING CLASS ☐PTNR ☐RESP TO COMP. ANGER MGMT. CLASS ☐PTNR ☐RESP TO COMP. 52-WEEK DV
☐PTNR ☐RESP STIPULATE/ORDERED TO DRUG TESTING ☐PTNR ☐RESP TO COURT FILE ☐COUNSEL BY
**COURT FINDINGS (FC§ 3048):** BASIS FOR JURISDICTION ☐HOME STATE ☐EMERGENCY ☐NO OTHER STATE HAS ASSUMED JURISD. & THIS
IS AN APPROPRIATE FORUM ☐PREVIOUS ORDERS MADE IN THIS COURT ☐
**MANNER NOTICE GIVEN:** ☐PERSONAL SERVICE ☐MAIL SERVICE ☐PERSONALLY PRESENT & HAS KNOWLEDGE OF HEARING ☐
**HABITUAL RESIDENCE OF THE CHILD(REN):** ☐SAN DIEGO CNTY, CALIFORNIA, USA ☐
☐PARTIES ADVISED THAT VIOLATION OF THIS ORDER MAY RESULT IN CIVIL OR CRIMINAL PENALTIES, OR BOTH
**THE COURT FINDS:** CHILDREN CHILD SHARE · _____ % ☐INTERIM ☐FINAL CUSTODY/VISITATION ORDER

| PTNR: ☐SINGLE ☐HH ☐MARRIED ☐JOINT ☐FILING SEP ( ) | RESP: ☐SINGLE ☐HH ☐MARRIED ☐JOINT ☐FILING SEP ( ) |
|---|---|
| GROSS $_____ ☐NON-TAX $_____ ☐ABILITY | GROSS $_____ ☐NON-TAX $_____ ☐ABILITY |
| DEDUCT: HEALTH$_____ PROP.TAX$_____ INTEREST$_____ | DEDUCT: HEALTH$_____ PROP.TAX$_____ INTEREST$_____ |
| UNION DUES$_____ MAND.RETIRE MT$_____ HARDSHIP$_____ | UNION DUES$_____ MAND.RETIRE MT$_____ HARDSHIP$_____ |
| NEW SPOUSE$_____ NET$_____ | NEW SPOUSE$_____ NET$_____ |

**THE COURT ORDERS CHILD SUPPORT OF $_____ MO.EFF:_____ PAYABLE BY ☐PTNR ☐RESP**
☐CHILD SUPPORT ORDERED THRU D.C.S.S
☐FIRST CHILD $_____ SECOND CHILD $_____ THIRD CHILD $_____ FOURTH CHILD $_____
☐PTNR ☐RESP TO PAY 1/2 OF ANY UNCOVERED MEDICAL/DENTAL/ORTHODONTIC/OPTICAL/PSYCHOLOGICAL FEES PURSUANT TO FC§4063
☐PTNR ☐RESP TO PAY 1/2 OF CHILD CARE COSTS FOR EMPLOYMENT / JOB SEARCH / AUTHORIZED EDUCATIONAL PURSUITS
☐BILLS TO BE SUBMITTED W/IN 10/30 DAYS AND REIMBURSEMENT DUE 10/30 DAYS AFTER RECEIPT OF THE BILL
☐PTNR ☐RESP TO MAINTAIN ☐HEALTH INSURANCE AT MINIMAL OR NO COST ☐LIFE INSURANCE
**CHILD SUPPORT:** EARNINGS ASSIGNMENT ☐ORDERED ☐ISSUED ☐NOT ISSUED

**THE COURT ORDERS SPOUSAL SUPPORT OF $_____ MO.EFF:_____ PAYABLE BY ☐PTNR ☐RESP ☐RESERVED**
☐TERMINATED ☐TERM. DATE _____ ☐THE COURT HAS CONSIDERED FC4320 FACTORS
**SPOUSAL SUPPORT:** EARNINGS ASSIGNMENT ☐ORDERED ☐ISSUED ☐NOT ISSUED

**ATTY FEES $_____ AT $_____ MO. EFF. _____ BY ☐PTNR ☐RESP ☐RESERVED ☐2 MONTH ACCELERATION CLAUSE**
☐AS ADDTL. SUPPORT FOR ENFORCEMENT PURPOSES ☐WAGE ASSIGNMENT AUTHORIZED
**ARREARAGES:** ☐COURT SETS ARREARAGES AT $_____ AS OF AUG ☐PTNR ☐RESP ORDERED TO PAY $_____ MO EFF:_____
☐EARING: ☐OFF CAL ☒CONT TO 5-11-21 AT 9:00 IN DEPT 19 BY ☐PTNR ☐RESP ☐STIP ☒COURT ☐REISSUE
☐EXISTING ORDERS REMAIN IN EFFECT PENDING FURTHER HEARING, EXCEPT WHERE IN CONFLICT, THIS ORDER CONTROLS *RFO*
☐COURT RETAINS JURISDICTION OVER _____ ☐RETROACTIVE TO _____ ☐RESERVED
☐COURT APPTS. ATTY. _____ FOR ☐MINOR(S) (RESERVED AS TO FEE REIMBURSEMENT) ☐SEE ORDER APPOINTING COUNSEL

Page 1 of 2          ↓          **MINUTES OF THE FAMILY COURT**
SDSC D-025 (Rev 5/14)

Document received by the CA Supreme Court.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO CAL. NO.

| JMBER | DATE OF HEARING |
|---|---|
| 19FL010852N | 03/30/2021 |

THE ABOVE MATTER CAME ON FOR HEARING THIS DATE WITH ABOVE APPEARANCES, AFTER HEARING THE COURT ORDERED THAT

**EMPLOYMENT:** ☐PTNR ☐RESP ADMONISHED PURSUANT TO FC§4330 ☐PTNR ☐RESP TO MAKE_____ JOB CONTACTS PER WEEK AND SUBMIT THE DETAILS TO OPPOSING COUNSEL/PARTY_____

**PAYMENTS:** ☐PETITIONER _____
☐RESPONDENT _____
**POSSESSIONS:** ☐PETITIONER _____
☐RESPONDENT _____

**RESTRAINING ORDERS:** ☐PTNR ☐RESP MOTION FOR RESTRAINING ORDER ☐GRANTED ☐DENIED PURSUANT TO TEMPORARY ORDER ☐EXCEPTION FOR COURT ORDERED VISITATION EXCHANGES ☐PROTECTED PARTY MAY RECORD COMMUNICATION FROM RESTRAINED PARTY ☐WITH MODIFICATIONS (_____ YDS) TO EXPIRE: ☐3 YEARS ☐_____ ☐FC5389 FIREARMS ADVISAL ☐PC§29825 FIREARMS NOTICE TO RESTRAINED PARTY ☐RESTRAINED PARTY IN MILITARY- BRANCH: _____ RANK _____ ☐RESTRAINED PARTY TO PICK UP PERSONAL PROPERTY WITH PEACE OFFICER PRESENT ON _____

**MOTIONS:** ☐PTNR ☐RESP MOTION_____ ☐GRANTED ☐DENIED

**STIPULATION:** ☐PART/FULL ☐SUBMITTED/RECITED BY COUNSEL ☐PARTIES AGREE TO BE BOUND ☐COUNSEL AUTH. ☐ADOPTED AS ORDER

**JUDGMENT:** ☐GRANTED EFF. _____ ☐INCORP STIP. ☐DISSOLUTION ☐STATUS ONLY ☐LEGAL SEP ☐NULLITY ☐PATERNITY

**WAIVER:** ☐PTNR ☐RESP WAIVES FILING OF FINAL DECLARATION OF DISCLOSURE

**DISMISSAL:** ☐AFTER PROPER NOTICE TO PARTIES, CASE DISMISSED WITHOUT PREJUDICE DUE TO INACTIVITY

**ORDER AFTER HEARING:** ☐PTNR ☒RESP ☐MINORS ATTY. TO PREPARE ☒SEND TO OPPOSING COUNSEL FOR APPROVAL ☐SUBMIT DIRECTLY

☐PTNR ☐RESP REFERRED TO FLF FOR PREPARATION OF ☐FOAH ☐ROAH-CLETS ☐JUDGMENT ☐OTHER _____ AND FLF TO PREPARE AND SUBMIT DIRECTLY TO THE COURT. ☐ PTNR ☐ RESP TO SERVE COURT-STAMPED COPY ON THE OTHER PARTY.

☐STATUS CONFERENCE PROCESSED BY FAMILY LAW FACILITATOR'S OFFICE ☐NOT REPORTED

**OTHER:**

Counsel present oral argument.

The Court adopts the FCS recommendations dated January 13, 2021 as modified and attached as Exhibit A.

The One-Day Trial scheduled on May 11, 2021 is confirmed. Trial briefs shall be served on opposing party and filed with the court seven (7) days prior to trial.

The Court finds the parties have not filed updated Income & Expense Declarations. Respondent's Motion for Support is Denied.

Respondent is directed to continue making job contacts as previously ordered.

The Court continues the RFO to May 11, 2021 at 9:00am in Department 19.

-dc-

Document received by the CA Supreme Court.



**MINUTES OF THE FAMILY COURT**

Document received by the CA Supreme Court.

RECOMMENDATIONS FOR THE PARENTING PLAN OF:

Bryce Emert, DOB: 06/11/07 (Age 14 years)
Skylar Emert, DOB: 06/06/09 (Age 11 years)

Mother: Andrea Emert
Father: Robert Emert


1. **LEGAL CUSTODY**
   **As a temporary order without prejudice**

   A. Andrea Emert **shall have sole legal custody as to the children's counseling and the father shall not have <u>any</u> contact with the children's therapist under any circumstances by phone, e-mail, text or messages passed through the children. Mother shall immediately arrange for Behavioral therapy for Bryce. The parties shall** share joint legal custody, which means that Andrea Emert and Robert Emert shall share the right and responsibility to make decisions relating to the health, education, and welfare of their children and consult each other regarding enrollment and disenrollment in school, beginning/ending mental health services and selection or changes of a doctor, dentist or other health professional. **Mother shall have the final say if there is any dispute.**

   B. Each parent shall have access to medical and school records pertaining to the children and may consult with any professionals involved with the children. It is each parent's responsibility to request school calendars, progress reports, report cards and parent-teacher conferences directly from the school.

   C. Each parent may obtain emergency health care for the children without the consent of the other parent. Each parent is to notify the other parent as soon as reasonably possible of any illness requiring medical attention or any emergency involving the children.

   D. **Family Code section 3048 findings.**

2. **PHYSICAL CUSTODY**

   A. The children **shall reside primarily with mother.**
   B. **The children shall spend time with father:**
   i) **Father shall spend time with Bryce on Monday 9:00 a.m. through Thursday at 6:00 p.m.**
   ii) **Father shall spend time with Skylar Thursday 6:00 p.m. to Sunday 6:00 p.m.**

Exhibit A

*Father is admonished that at the time of trial this court receives competent evidence that father continues to discuss adult issues with the children the court will likely implement a professionally supervised visitation order for both children,*

### HOLIDAYS/SPECIAL DAYS/SCHOOL VACATIONS

Special Days/holiday schedules shall take precedence over the regular parenting schedule, which shall resume after the holiday is over. Unless noted, all single day holidays shall be from 9 AM to 8 PM. In absence of other agreement by the parents, specific holiday schedules shall be as follows:

| HOLIDAY | TIME | EVERY YEAR | EVEN YEARS | ODD YEARS |
|---------|------|------------|------------|-----------|
| Christmas Eve/the break day | 9 AM, 12/24 until 9 AM, 12/25 | | Mother | Father |
| Christmas day/day after Christmas | 9 AM, 12/25, until 9 PM, 12/26 | | Father | Mother |
| New Year's Eve/day | Eve 6 PM - Day 6 PM | | Mother | Father |
| Easter Day | 9 AM - 8 PM | | Father | Mother |
| Mother's Day | 9 AM - 8 PM | Mother | | |
| Father's Day | 9 AM - 8 PM | Father | | |
| July 4th | 9 AM - until 10 AM July 5 | | Mother | Father |
| Halloween | 4 PM - 9 PM | | Father | Mother |
| Thanksgiving Day | 9 AM - 8 PM | | Mother | Father |
| Children's birthdays | 9 AM - 8 PM or if a school day from 6 PM to 8 PM | | Father | Mother |

**Three-day weekends** not identified in the chart above shall be spent with the parent who would normally have that weekend and the weekend shall be extended by 24 hours.

1. ### EXCHANGES/TRANSPORTATION

A. Exchanges of the children, when they do not take place at school/childcare shall be at the receiving parent's residence.

Document received by the CA Supreme Court.

B. The children shall be exchanged at the designated times, with a 15-minute grace period. Should a longer delay be necessary, the other parent shall be notified immediately or that parenting time shall be considered canceled.

5. **TELEPHONE/COMMUNICATION**

A. There shall be telephone contact between the children and the parents when in the other parent's care. ***There shall be one phone call which shall last no more than 15 minutes. If the children calls the parent they shall not respond. The purpose of the phone call shall be to communicate with the children. All other business between the parents shall be discussed at another time.***

B. ***There shall be NO RECORDING of the children under any circumstances.***

C. Email communication: The parties shall use a co-parenting email system, such as Our Family Wizard or TalkingParents.com for all non-emergency communication. The parties shall each establish a parent account, and enroll in the program within 21 days of this order and annually thereafter, to conduct all communications regarding custody or visitation matters, information-sharing matters, schedule alterations and reimbursable-expense matters on the website. The parties shall not telephone, e-mail or text each other regarding issues related to the child except in an unanticipated or emergency situation where response is required in less than 24 hours. Each party shall respond to the other party's request or notification within 48 hours of the posting, if a response is either requested or appropriate. Each party shall allow "professional access" to any licensed legal or mental health professional.

6. **CONDUCT/SAFETY**

A. Neither parent shall make negative statements about the other in the presence or hearing of the children or question the children about the other parent. The parents shall communicate directly with each other in matters concerning the children and shall not use the children as a messenger between them. The children shall not be exposed to court papers or disputes between the parents, and each parent shall make every possible effort to ensure that other people comply with this order.

Document received by the CA Supreme Court.

7. **NOTIFICATION**

A. When either parent wishes to travel with the children outside the County of San Diego for overnight or longer during their parenting time, the other parent must be given 24 hours' prior notice of date and time, destination and an emergency telephone number.

B. Each parent shall always keep the other informed of his/her address and telephone numbers and shall notify the other parent within 24 hours of any changes. Neither parent may use such information for the purpose of harassing, annoying, disturbing the peace of the other or invading the other's privacy.

C. If the children participate in an AM/PM program, camp or cared for routinely by a childcare provider, the parents shall keep one another informed of those programs, addresses and telephone numbers.

D. Neither parent shall schedule activities for the children during the other parent's scheduled parenting time without the other parent's prior agreement.

E. At least 24 hours' notice of any schedule change shall be given to the other parent. The parent requesting the change shall be responsible for any additional child care that results from the change.

F. Neither parent shall move the residence of the children out of San Diego County without giving the other parent a 45-day advance written notice and obtaining the other parent's written permission prior to the move or an order of the Court granting the move.

8. **CLASSES/PROGRAMS**

A. Robert Emert and Andrea Emert shall enroll in and successfully complete an in-person high conflict co-parenting course. The course shall be completed by 4/1/2021.

B. ***There shall be psychological evaluation of father by a licensed psychologist to provide the court with a DSM V diagnosis of father.***

C. ***Father and Skylar shall enter into conjoint therapy to address the issue that she feels unimportant due to the amount of attention which is expended on Bryce.***

D. The children shall participate in counseling with a licensed mental health practitioner until released by the therapist. Issues to be addressed include: exposure to

Document received by the CA Supreme Court.

high level of co-parenting conflict, sibling relationship,
and any other mental health issues that arise.

E. Possible resources include: private insurance; call 211
from any phone; or a Program Resource List may be obtained
at Family Court Services or on the San Diego Superior Court
website www.sdcourt.ca.gov.

Document received by the CA Supreme Court.

B. Documentation showing the absence of evidence to support placing Plaintiff's son in a facility, despite concerted efforts by certain defendants to do so.



RECEIVED

MAY 2 0 2024

**ROBERT EMERT**

**2351 VISTA LAGO TERRACE**

**ESCONDIDO, CA 92029**

**760-612-9328**

robemert@msn.com

## SAN DIEGO SUPERIOR COURT OF CALIFORNIA
## CENTRAL DIVISION

| | |
|---|---|
| **ANDREA SCHUCK,** | **NOTICE OF LODGED DOCUMENTS** |
| **PLAINTIFF,** | **19FL010852N – family court** |
| vs. | |
| **ROB EMERT,** | **Notice of Lodged Documents Pursuant to CCP §1985, CRC Rules 2.256(b) and 3.1110** |
| **respondent** | |
| | Judge Robinson; 601 |
| | 05/28/24 1:45PM |

**ROBERT EMERT**

**2351 VISTA LAGO TERRACE**

**ESCONDIDO, CA 92029**

**760-612-9328**

robemert@msn.com


### SAN DIEGO SUPERIOR COURT OF CALIFORNIA

### CENTRAL DIVISION


| | |
|---|---|
| **ANDREA SCHUCK,** | **NOTICE OF LODGED DOCUMENTS** |
| **PLAINTIFF,** | **19FL010852N – family court** |
| **vs.** | **Notice of Lodged Documents Pursuant to CCP §1985, CRC Rules 2.256(b) and 3.1110** |
| **ROB EMERT,** | |
| **respondent** | |
| | Judge Robinson; 601 |
| | 05/28/24 1:45PM |

This is a notice of lodged documents.

Pursuant to California Code of Civil Procedure Section 1985, and California Rules of Court, Rules 2.256(b) and 3.1110, this letter serves as **notice of lodged documents previously submitted in this matter**.

Pursuant to Rule 2.256(b), they were originally provided on flash drive as they exceeded size limitations for electronic filing.

While these materials have already been furnished multiple times, I am re-submitting the appendix to the court and interested parties.

Should the Court or any party require copies of the full materials previously provided, I have them available on a flash drive. As authenticated copies, they are lodged with the Court under CCP 1985 and request they are marked as lodged exhibits under CRC 3.1110.

Please contact me if you need clarification that these documents have already been provided and are part of the record. I aim merely to preserve and index these records, not duplicate prior submissions.

Your assistance in ensuring these materials are available for the upcoming hearing is appreciated.


I, Rob Emert, declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on 05/20/24 at Escondido, California.

*Rob Emert*

PROOF OF ELECTRONIC SERVICE

I hereby certify that on 05/20/24, I electronically filed and served the foregoing document via electronic service on all parties and counsel of record.
( Dave Schulman; dschulman@msmfamilylaw.com )

*glenda emert*

Glenda Emert

05/20/24

**Exhibit A**

3 FCS reports saying 50/50 and I initially was granted 60%. Two Judges, 3 FCS reports, and 2 FCS child interviews make this determination. This went on for about two years before Ratekin took the case. Many offers were made by me for simply 50/50 with the children being able to go back and forth between our homes on a as needed basis.

**Exhibit B**

50/50 offers

**Exhibit C**

Andrea was arrested for domestic violence against me and Bryce.

**Exhibit D**

Andrea Paystub and Hauck-wood profile page showing the two worked together and were friends. Whitney Hauck –Wood is married to Judge William Wood. Judge Willima Wood was Ratekin's supervising judge and had even already recused from this case. Andrea told me that she and her attorney were aware of this conflict of interest and initially gloated about it.

**Exhibit E**

Ratekin transcripts – First day within minutes Ratekin said Bryce was likely going into a residential home. Zero evidence to support this and Ratekin had just been given the file that day per the Register of Actions.

**Exhibit F**

District Attorney Investigator Luis Pena even said that I had a reasonable reason to protect my son from these criminal thugs trying to place him in a facility with zero evidence. Here is an excerpt from that transcript.

**Exhibit G**

Peremptory challenge. This was filed timely and before orders were made and were required to be put into effect. There is a clear 9th circuit precedent to overturn this egregious state violation.

**Exhibit H**

Ratekin transcript – The last day Ratekin heard the case because she finally recused after six months of trying to child traffic my son into a facility for profit, divorce leverage, and cronyism. Simply because Bryce was at Starbucks and not in first period, Ratekin quickly said that this was the problem with the case all long and Bryce belonged in a facility. The only people who have ever said that are Ratekin, Matt Cord (the minor counsel who rubber stamped this lunacy after only meeting Bryce 2x for about a half hour), Catie Young (minor counsel for my daughter. I could not believe it when Catie Young said to me, why don't you just let them place him in a

facility!), Jesse Olague, the hired gun out of insurance network psychologist who works across the street from Dave Schulman.

## Exhibit I

Between the first day Ratekin took the case, and the last day when she finally recused, she brought in minor counsel for my son, Matt Cord and Catie Young for my daughter. With only meeting Bryce two times for a half hour or so, Matt Cord jumped on board with Patti Ratekin narrative of a "facility". The emails between me, Matt Cord, Catie Young, Dave Schulman, Andrea Schuck, easily show this colluded effort to get Bryce into a "facility". Schuck signed off on this insanity out of resentment/divorce leverage and the rest of the family courtel players did it for profit, divorce leverage and cronyism. There was never any evidence to suggest a facility and you can see in these emails where I am trying to figure out why Ratekin and her hired hand Matt Cord are trying to do this. Here are some of those emails.

## Exhibit J

Emails of me trying to get a few psychologists and autism specialists to interview Bryce because all the evidence, including Bryce himself, proves Bryce is more than competent to speak on his own behalf.

## Exhibit K

Deputy District Attorney Balerio even told Bryce how well spoken he is and that she would help him have his voice heard in court. Here is an excerpt from that transcript.

## Exhibit L

Dave Schulman, Andrea Schuck and Matt Cord all trying to stop me from getting psychologists to interview Bryce.

## Exhibit M

Dave Schulman threatening the San Diego Regional center with an injunction to prevent me and my two children from therapy. Schuck was invited to go as well. Both Schuck and Schulman prevented this because they could not have the truth coming out.

## Exhibit N

03/30/21 hearing where Ratekin takes 100% of my legal parental rights away with zero evidence to do so in a clear effort to prevent me from getting therapy for me and my children.

## Exhibit O

Heart attack information was provided to all interested parties several times simply asking for remote access. This was during COVID where remote access was given to everyone anyways.

## Exhibit P

The first day of trial transcripts showed how Ratekin was upset that Bryce's IEP case manager (Trish Flemming) was trying to say that Bryce did not belong in a facility and was generally a really good child. If anyone simply reads the transcript from the first day of trial, Ratekin simply embarrassed herself and her bias was obvious.

## Exhibit Q

First day of trial transcript that shows Matt Cord never even reached out to Bryce's IEP case manager or anyone on Bryce's IEP team because I had already told him the entire team was adamant that Bryce did not belong in a "facility". Matt Cord was just doing what Ratekin and Schulman were telling him to do so he could play with the big boys.

## Exhibit R

Excerpt from District Attorney Luis Pena who said that Matt Cord had simply lined up with Dave Schulman and not in Bryce's best interests and to put something together against me.

## Exhibit S

Bryce filed a TRO against Matt Cord

## Exhibit T

Bryce filed a police report against Matt Cord

## Exhibit U

The witness affidavit that Ratekin used to order supervised visitation. Ratekin should get disbarred for this abuse of discretion. She was so desperate and had nothing, so she used a witness affidavit of someone simply reporting fraud of the hired gun child psychologist who was out of insurance network and worked right across the street from Schulman.

## Exhibit V

Text message from Bryce's behavioral therapist (Charlie Aguilar) who knew there was something wrong with this scenario and with Jesse Olague. Charlie Aguilar and Jesse Olague worked at the same business, San Diego Kids First. When Charlie Aguilar is called under subpoena and the evidence that he knew there was something wrong with what Dr. Olague was doing, it is irrefutable. Oh, yeah, audio recordings back this up.

**Exhibit W**

My letter I provided from my therapist regarding Ratekins request for a psychological evaluation.

**Exhibit X**

Schucks letter regarding her mental issues and the likely reason why she has always had a strained relationship with our son.

**Exhibit Y**

Email from me to Schuck to keep Bryce in public school. Andrea Schuck, David Schulman, and Matt Cord would simply not agree to a stipulation that they could not pick up Bryce from High School per Bryce's requests and because I did not want these fraudsters to grab him and continue to harass him and place him in a facility like Ratekin had planned from her day one of taking the case.

**Exhibit Z**

Andrea Schuck emailed Trish Fleming about the facility. All the prior emails are very clear about me trying to prevent a "facility" and trying to get evidence to the court that a "facility" is not warranted. I was begging my x wife to help me to prevent this, but she was clearly on board with it but would not put it in writing as this email shows. The only reason Trish Flemming was brought in was to tell the court that Bryce did not belong in a facility and everyone at the school knew this. Schuck was upset that the school was commenting on the fact that Bryce clearly did not belong in a facility.

**Exhibit AA**

My email to Schulman agreeing to most of his divorce terms but simply adding, Bryce can't be placed in a facility.

**Exhibit BB**

Andrea transcript recent about putting Bryce in Juvenile detention if he simply did not want to live with her. Bryce has lots of family and friends that love and support him and this is just how resentful and bitter Schuck is. Bryce has been with his mom for over a year now and he is sad, angry, confused and lonely. Bryce wants to go home. He will be 17 in a few days. Please let him go home.

**Exhibit CC**

Transcript excerpt where Schuck made a deal with the DA that Bryce could go home if I pleaded guilty to felony custodial interference. The DA fabricated a threat after a year of inaction because they knew they would lose at trial, so they held me on no bail for 90 days to coerce a guilty plea. There is a federal lawsuit to force the DA to honor the plea agreement where Brye can simply go home.

## Exhibit DD

The Andrea transcript saying that she was only entertaining the idea of giving custody of Bryce back to me is because Bryce living with her was not good for our daughter.

## Exhibit EE

Emails to all interested parties leading up to the trial where I was simply ignored.

## Exhibit FF

Ex parte same day of trial giving court all my medical docs and ADA for a simply requesting a remote hearing where I could finally bring my evidence and witnesses. It was denied just like all my evidentiary hearings in both the family and criminal court. There is a habeas corpus at the CA Supreme Court and two federal lawsuits concerning these matters. I don't have confidence in the state court to correct this manifest injustice and will have to likely wait until I have exhausted my state remedies and can move onto the 9th Circuit.

## Exhibit GG

Motion to Vacate Default Judgment Under CCP 473(b). This exhibit contains my original request for order filed on July 20, 2022 seeking relief from the January 24, 2022 default judgment under CCP 473(b), along with supporting documents filed concurrently. The original RFO alleged improper service, mistake, surprise, excusable neglect, and attorney fault as grounds for relief. It detailed misconduct and bias by Commissioner Ratekin and Judge Alksne that resulted in entry of default against me during incapacitation following my heart attack. My amended RFO filed on August 15, 2022 supplemented the facts and expanded upon details of the alleged judicial misconduct but involved the same core issues and events. During the Feb 22, 2024 hearing on these motions, Judge Robinson denied relief solely based on the August filing date of the amended RFO exceeding the 6-month deadline under 473(b). However, under the relation back doctrine, my amended RFO relates back to and is deemed timely based on the original RFO filed within 6 months of the default on January 24, 2022. By focusing only on the amended version's filing date, judge committed a reversible error and failed to assess the merits of my original timely request. Denying relief without evaluating my original RFO under CCP 473(b) incorrectly applies the law on relation back of pleadings. The fact remains anyways that CCP 473 (d) still applies due to the clear collusion and fraud committed on the court and as such, I have filed a criminal complaint with the appropriate parties under title 18 U.S.C 241 and 242.

## Exhibit HH

There is simply zero evidence to support keeping a loving and dedicated father from both his children. This is/was malicious retaliation of a whistleblower. There is a presumption of fitness of parents that Ratekin simply blew past due to this clearly fraudulent scenario and I therefor also have filed a Title 18 U.S.C 241 and 242 for criminal conspiracy against Patti Ratekin, Dave Schulman, Matt Cord, Catie Young, Andrea Schuck, Sarah Bear, Lorna Alknse, Jesse Olague, Alana Robinson. Shame on all of you and mostly my x wife who I never would have allowed the likes of you to treat her the way I have been treated. I consistently said 50/50 with the children going back and forth on an as needed basis and even invited my x wife to the first Christmas we were divorced and two Disneyworld Vacations that we had always planned on as a family.

## II

Bryce Emert, who is almost 17, is begging to be heard and simply wants to come home. Here are his letters and emails to people.

Exhibit A

3 FCS reports saying 50/50 and I initially was granted 60%. Two Judges, 3 FCS reports, and 2 FCS child interviews make this determination. This went on for about two years before Ratekin took the case. Many offers were made by me for simply 50/50 with the children being able to go back and forth between our homes on a as needed basis.

# SUPERIOR COURT OF SANDIEGO

FAMIL    COURT    SERVICES

I **LE** D
of tho Superio Court

of Sao

December 10, 2019

**DEC 11 2019**

DATE OF HEARING: December 20, 2019

TO:    Department 17                      19FL010852N
        Honorable Kelly C. Mok

FROM :    Liliana Rodriguez, MSW, Counselor
         Family Court Services

         Supplemental Report

OF:    Bryce Emert, DOB: 06/11/07 (Age 12 years)  (M)
        Skylar Emert, DOB: 06/06/09 (Age 10 years)  (F)

        Father: Andrea L. Emert
        Father: Robert Emert

On October 15, 2019, Andrea L. Emert and Robert Emert, parents of the above—named minor children, participated in a Family Court Services conference in this office. The conference was conducted jointly. Andrea L. Emert is the moving party. The Court directed the parties to participate at Family Court Services.

On November 19, 2019 the court ordered the undersigned to provide updated CWS information. In addition, the undersigned was to speak to Bryce's school counselor, Cecilia Brenning, and any persons Ms. Brenning believed to be appropriate.

There are two Child Welfare Services referrals.

| Date | Allegation (s) | Alleged perpetrator (s) | Conclusion |
|------|----------------|-------------------------|------------|
| 11/4/19 | Physical abuse to Bryce | Father | Unfounded |
| | physical abuse to Bryce | Mother | Unfounded |
| | emotional abuse to Bryce | no perpetrator listed | Inconclusive |
| | Emotional abuse to Skylar | parents | Unfounded |
| | At risk of abuse to Skylar | father | Unfounded |
| 10/24/19 | Emotional abuse to Bryce | parents | Unfounded |
| | At risk of abuse to Bryce | father | Unfounded |
| | Physical abuse to Skylar | father | Unfounded |
| | Emotional abuse to Skylar | parents | unfounded |

On December 10r 2019 the undersigned spoke to school counselor, Cecilia Breining. Ms. Breining indicated that since the divorce she has seen more emotional issues in Bryce. Bryce has more behavior issues, such as blurting out, making noises, and other behaviors. In addition, he has had more difficulties with friends. His grades have deteriorated since the separation and the number of absences have increased. This school year there have been five whole day absences. The partial absences are for the most part not related to illness.

Ms. Breining indicated that it was important that she remain neutral; thus, as directed, all conversations are with both parents and emails are sent to both parents. The child does not speak about his parents, except to repeat advice they give him on handling situations. He speaks more of his father but does not speak negatively of either parent. The school psychologist is meeting with him to build coping skills related to friendships. The child also has a case manager that supports his academics through his Individual Education Plan. The counselor indicated that last year Bryce had two specialized classes. This year he has all typical classes with support. Ms. Breining was asked if there were other persons she felt may be important for the undersigned to gather information from. She stated that all 'would provide the same information. Thus, she did not.

| Grades current school year | | | 73 school days | |
|---|---|---|---|---|
| 1st grading period | 2nd grading period | As of 12/10/19 | Absences | Late |
| D- | B- | | 10 | 6 |
| | | | 8 | 1 |
| c | | | | 1 |
| | | D- | 8 | |
| | c- | c- | 9 | |
| | PASS | | 11 | |

| Grades for 6th Grade | | | | |
|---|---|---|---|---|
| 1st Semester | 2nd Semester | | Absences | Late |
| c- | | | 23 | 11 |
| | | | 19 | 4 |
| | | | 14 | 3 |
| c | | | 9 | 2 |
| A- | B- | | 10 | 2 |
| B- | c | | | |
| c | | | 10 | 2 |

pectfully  ubmitted,

4Cuaadd
        Iliana Rodriguez, MS
        Family Court Counselor
        **760-201-8300**

Cc:   Andrea L. Emert, Father
      Robert Emert, Father
      David S. Shulman, Attorney
      Timothy S. Miranda, Attorney

-3-



# SUPERIOR COURT OF SAN DIEGO
## FAMILY COURT SERVICES

**F** I L **E** D
Clerk of the Superior Court

DEC 11 2019

By: _____ Clerk

December 10, 2019

### DATE OF HEARING: December 20, 2019

TO:      Department 17                          **19FL010852N**
         Honorable Kelly C. Mok

FROM:    Liliana Rodriguez, MSW, Counselor
         Family Court Services

RE:      Supplemental Report

OF:      Bryce Emert, DOB: 06/11/07 (Age 12 years) (M)
         Skylar Emert, DOB: 06/06/09 (Age 10 years) (F)

         Father: Andrea L. Emert
         Father: Robert Emert

On October 15, 2019, Andrea L. Emert and Robert Emert, parents of the above-named minor children, participated in a Family Court Services conference in this office. The conference was conducted jointly. Andrea L. Emert is the moving party. The Court directed the parties to participate at Family Court Services.

On November 19, 2019 the court ordered the undersigned to provide updated CWS information. In addition, the undersigned was to speak to Bryce's school counselor, Cecilia Brenning, and any persons Ms. Brenning believed to be appropriate.

There are two Child Welfare Services referrals.

| Date | Allegation(s) | Alleged perpetrator(s) | Conclusion |
|---|---|---|---|
| 11/4/19 | Physical abuse to Bryce<br>physical abuse to Bryce<br>emotional abuse to Bryce<br><br>Emotional abuse to Skylar<br>At risk of abuse to Skylar | Father<br>Mother<br>no perpetrator listed<br><br>parents<br>father | Unfounded<br>Unfounded<br>Inconclusive<br><br>Unfounded<br>Unfounded |
| 10/24/19 | Emotional abuse to Bryce<br>At risk of abuse to Bryce<br><br>Physical abuse to Skylar<br>Emotional abuse to Skylar | parents<br>father<br><br>father<br>parents | Unfounded<br>Unfounded<br><br>Unfounded<br>unfounded |

On December 10, 2019 the undersigned spoke to **school counselor, Cecilia Breining**. Ms. Breining indicated that since the divorce she has seen more emotional issues in Bryce. Bryce has more behavior issues, such as blurting out, making noises, and other behaviors. In addition, he has had more difficulties with friends. His grades have deteriorated since the separation and the number of absences have increased. This school year there have been five whole day absences. The partial absences are for the most part not related to illness.

Ms. Breining indicated that it was important that she remain neutral; thus, as directed, all conversations are with both parents and emails are sent to both parents. The child does not speak about his parents, except to repeat advice they give him on handling situations. He speaks more of his father but does not speak negatively of either parent. The school psychologist is meeting with him to build coping skills related to friendships. The child also has a case manager that supports his academics through his Individual Education Plan. The counselor indicated that last year Bryce had two specialized classes. This year he has all typical classes with support. Ms. Breining was asked if there were other persons she felt may be important for the undersigned to gather information from. She stated that all would provide the same information. Thus, she did not.

Grades current school year

| 1st grading period | 2nd grading period | As of 12/10/19 |
|---|---|---|
| D- | B- | B |
| C+ | D+ | D+ |
| C | D+ | D |
| F | D+ | D- |
| A- | C- | C- |
| C+ | PASS | B- |

73 school days

| Absences | Late |
|---|---|
| 10 | 6 |
| 8 | 1 |
| 7 | 1 |
| 8 | |
| 9 | |
| 11 | |

Grades for 6th Grade

| 1st Semester | 2nd Semester |
|---|---|
| C- | D |
| A | A- |
| B | B |
| C | B- |
| A- | B- |
| B- | C |
| C | B |

| Absences | Late |
|---|---|
| 23 | 11 [1] |
| 19 | 4 |
| 14 | 3 |
| 9 | 2 |
| 10 | 2 |
| | |
| 10 | 2 |

Department 17                              RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated December 10, 2019          Page 3

Respectfully submitted,

*Liliana Rodriguez*

Liliana Rodriguez, MSW
Family Court Counselor
760-201-8300

Cc:  Andrea L. Emert, Father
     Robert Emert, Father
     David S. Shulman, Attorney
     Timothy S. Miranda, Attorney



# SUPERIOR COURT OF SAN DIEGO
## FAMILY COURT SERVICES

November 01, 2019

**FILED**
Clerk of the Superior Court

NOV 0 4 2019

By: _____ , Clerk

**DATE OF HEARING: November 20, 2019**

TO:     Department 17                                    **19FL010852N**
        Honorable Kelly C. Mok

FROM:   Liliana Rodriguez, MSW, Counselor
        Family Court Services

RE:     Parenting Plan

OF:     Bryce Emert, DOB: 06/11/07 (Age 12 years) (M)
        Skylar Emert, DOB: 06/06/09 (Age 10 years) (F)

        Father: Andrea L. Emert
        Father: Robert Emert

On October 15, 2019, Andrea L. Emert and Robert Emert, parents of the above named minor children, participated in a Family Court Services conference in this office. The conference was conducted jointly. Andrea L. Emert is the moving party. The Court directed the parties to participate at Family Court Services.

## DOMESTIC VIOLENCE

Although there are allegations of domestic violence in this case, the parents indicated their desire to participate together. The undersigned interviewed the parents separately to assess the appropriateness of a conjoint session and determined that it would be appropriate to proceed.

## FAMILY COURT SERVICES HISTORY

This is the parties' first conference at Family Court Services.

## PARENTING PLAN

The parents do not have a court ordered parenting plan.

**CONFIDENTIAL REPORT**                              Family Code 3025.5

The parenting plan as described by each parent is as follows: the
father has been the children's primary caregiver for the past five
years while the mother has been employed as a teacher.

## DEMOGRAPHICS (historical)

The parents were married on 9/30/06.
The parents filed for dissolution in September 2019.

## DEMOGRAPHICS (current)

Andrea L. Emert and Robert Emert reside in the San Marco area of San
Diego County, California.   Also residing in the home:  the children
at issue.  Andrea L. Emert is employed, schedule: 7:30 AM to 3 PM as
a school teacher. Robert Emert is unemployed.

The parents indicate they have requested the court determine who
will remain in the family home.

## AREAS OF AGREEMENT/DISAGREEMENT

The parents' points of agreement are as follows: shared legal
custody, alternate holidays, a vacation schedule, for there to be no
alcohol consumed during their parenting time, and for the children
to participate in therapy. They agreed for the father to parent the
children when the mother is working and the children are on school
break.

They did not agree a the parenting schedule.

## PARENTS' CONCERNS

There are allegations of domestic violence, substance abuse, and
mental illness in this matter.

Andrea L. Emert expressed the following concerns: the father engages
in arguments in front of the children and pulls them into arguments
by asking them their opinion on the issues being argued, determine
who is correct, and ask if they heard what was said. He has told the
children that Bryce will be in his custody 100% of the time and
Skylar will be in his care 50% of the time. The father drinks heavily.
He drinks a bottle of wine and a couple of beers nightly and always
when she is home. He stopped drinking when she filed the present
petition. He has no driving under the influence arrests.

The father denied the mother's expressed concerns regarding his
alcohol consumption. He stated that they both argue in front of the

children. He answers the children's questions regarding divorce with the information he knows.

Robert Emert expressed the following concerns: The mother's emotional state, stating that she has been prescribed medication for depression and anxiety for years. She "flies" of the handle and yells. She has chased him around the house and placed her hands on the children years ago.

The mother denied the father's claims. She reported participating in therapy.

## PARENTS' PROPOSALS AND RATIONALE

Andrea L. Emert proposed the following parenting schedule:  to provide the children with their primary residence and the father parent one Wednesday overnight and alternate weekends. She wants an opportunity to establish a relationship with Bryce. She would foster the children's independence. Additionally, she is the more reliable parent.

Robert Emert proposed the following parenting schedule: He requested Skyler be shared equally. He requested Bryce be shared equally after the father has a period of time to assist the child adjust to the schedule. The father was asked if he would agree to a three-month time to help the child adjust prior to the equal time parenting scheduled. He was agreeable.

## THE CHILDREN

Both parents denied the children have any unmet health, mental health, developmental concerns or special needs.

The parents indicate that Bryce is Autistic. He participates in general education. He is able to communicate and has friends. The parents indicate that he is able to take care of his self-care with some prompts. The mother stated that the father helps the child bathe and dress. The father indicated that he assists the child by laying out his washcloth, setting out chis clothes, and ensuring the child has rinsed properly. The father and Bryce have shared a bedroom since the child was the age of three. He assists Bryce with his homework while the mother assist Skylar. The parents agree that Bryce and the father have an extremely close relationship. The mother feels the father has pushed her out of that relationship by isolating himself and Bryce in the bedroom. Bryce participates in karate three times weekly.

Skylar is enrolled in the 5th grade. She has no special needs. The child participates in extra-curricular activities to include soccer, theater, and voice lessons. The mother reports the child having a much closer relationship with her than the father. They do activities together and at times share a bedroom. The mother stated that the siblings do not have a close relationship because the father isolates Bryce. The father disagreed, stating that Skylar has an equally good relationship with both parents and the siblings love each other.

The children were not interviewed. Information gathered from the parents was sufficient to make a determination of the children's current experiences and functioning.

**REASONS FOR RECOMMENDATION**

The parents were able to reach substantial agreements and they will be incorporated into the recommendation. The parents described a marital relationship that ended nine years ago. It seems as if they cohabitated but live separately. The father and Bryce have an extremely close relationship while the mother has a closer relationship with Skyler. It appears as if the household was divided by gender.

The mother expressed concern with the father involving the children in the parents' arguments and conflicts. Additionally, he has spoken to them about possible parenting schedules. The father acknowledged both parents argued in front the children and exposed them to their conflict. He also acknowledged speaking to the children about possible parenting plans. The father expressed concern with the mother being violent and chasing him about the house. The mother denied his claim. The parents have been emotionally separated for many years and living together caused a great deal of stress and conflict. It is the hope of the undersigned the parents will be able to establish separate residences soon and co-parent. The undersigned recommends the parents participate in a co-parenting class and recommends they communicate via a child sharing application.

The undersigned is of the impression that both parents are capable of caring for the children and meeting their needs. Thus, it is recommended the parents share the care of the children. The undersigned agrees Bryce needs a little time to adjust to being away from the father. Their relationship seems almost emotionally dependent. Bryce has shared a bedroom with the father since the age of three. The parents reported the mother rarely spends time on her own with Bryce. Thus, it is recommended Bryce be in the mother's care alternate weekends and one overnight weekly prior to joining his sister's schedule.

**RECOMMENDATIONS FOR THE PARENTING PLAN OF:**

Bryce Emert, DOB: 06/11/07 (Age 12 years)
Skylar Emert, DOB: 06/06/09 (Age 10 years)

Father: Andrea L. Emert
Father: Robert Emert

1. **LEGAL CUSTODY**

   A. Andrea L. Emert and Robert Emert shall share joint legal custody, which means that Andrea L. Emert and Robert Emert shall share the right and responsibility to make decisions relating to the health, education, and welfare of their children and consult each other regarding enrollment and disenrollment in school, beginning/ending mental health services and selection or changes of a doctor, dentist or other health professional.
   B. Each parent shall have access to medical and school records pertaining to the children and may consult with any professionals involved with the children. It is each parent's responsibility to request school calendars, progress reports, report cards and parent-teacher conferences directly from the school.
   C. Each parent may obtain emergency health care for the children without the consent of the other parent. Each parent is to notify the other parent as soon as reasonably possible of any illness requiring medical attention or any emergency involving the children.

2. **PHYSICAL CUSTODY**

   A. The children's physical custody shall be shared.
   B. The parenting of **Bryce** shall be shared as follows:
   i)   The mother shall parent alternate weekends. The weekend shall be defined as 8 AM Friday to 8 AM Monday.
   ii)  Bryce shall be in the care of the mother each Tuesday from afterschool/8 AM to dropping of at school/8 AM Wednesday.
   iii) After the mother parents in accordance with 2Bii for 90 days, the mother's midweek parenting shall be defined as 8 AM Monday to 8 AM Wednesday.

   C. The parenting of **Skylar** shall be shared as follows:
   i)   Skylar shall be in the care of the mother from 8 AM to Monday to 8 AM Wednesday and with the father from 8 AM Wednesday to 8 AM Friday.
   ii)  The weekends shall be alternated between the parents and defined as 8 AM Friday to 8 AM Monday.

## 3.   **HOLIDAYS/SPECIAL DAYS/SCHOOL VACATIONS**

**Special Days/holiday** schedules shall take precedence over the regular parenting schedule, which shall resume after the holiday is over. **In absence of other agreement by the parents,** specific holiday schedules shall be as follows:

| HOLIDAY | TIME | EVERY YEAR | EVEN YEARS | ODD YEARS |
|---------|------|------------|------------|-----------|
| Christmas Eve | 9 AM 12/24 to 9 AM 12/25 | | Mother | Father |
| Christmas Day | 9 AM 12/25 to 6 PM 12/26 | | Father | Mother |
| New Year's Eve/Day | Eve 6 PM – Day 6 PM | | Mother | Father |
| Easter Day | 8 AM – 8 PM | | Father | Mother |
| Mother's Day | 8 AM – 8 PM | Mother | | |
| Father's Day | 8 AM – 8 PM | Father | | |
| July 4th | 8 AM until 10 AM July 5 | | Mother | Father |
| Halloween | 4 PM – 8 PM | | Father | Mother |
| Thanksgiving Day | 8 AM – 8 PM | | Mother | Father |
| Children's Birthdays | 8 AM – 8 PM; or if a school day from 6 PM to 8 PM | | Father | Mother |

**Three-day weekends** not specified in the chart above shall be spent with the parent who would normally have that weekend and the weekend shall be extended by 24 hours.

## 4.   **VACATIONS/SCHOOL BREAKS**

A. Either parent may vacation or have extended time with the children each year for up to two weeks. The vacationing parent shall notify the other parent in writing of their vacation plans a minimum of 30 days prior to departure and provide the other parent with a basic itinerary to include dates of departure and return, destinations, flight information and telephone numbers for emergency purposes. The vacationing parent shall not schedule the vacation during the other parent's scheduled holiday time with the children, unless agreed upon in advance by both parents. The vacation shall not interrupt school attendance unless mutually agreed upon by the parents and school personnel.

5.  **EXCHANGES/TRANSPORTATION**

    A. Exchanges of the children, when they do not take place at
       school/childcare shall be at the sending parent's residence.

6.  **TELEPHONE/COMMUNICATION**

    A. There shall be reasonable telephone contact between the
       children and the parents when in the other parent's care.
       The purpose of the phone call shall be to communicate with
       the children. All other business between the parents shall
       be discussed at another time.

    B. All non-emergency and non-time sensitive communications
       shall be in writing and sent via a child sharing application,
       such as Talking Parents, Our Family Wizard or another
       mutually agreed upon.

7.  **CONDUCT/SAFETY**

    A. Neither parent shall make negative statements about the other
       in the presence or hearing of the children or question the
       children about the other parent. The parents shall
       communicate directly with each other in matters concerning
       the children and shall not use the children as a messenger
       between them. The children shall not be exposed to court
       papers or disputes between the parents, and each parent shall
       make every possible effort to ensure that other people comply
       with this order.

8.  **NOTIFICATION**

    A. When either parent wishes to travel with the children outside
       the County of San Diego for overnight or longer during their
       parenting time, the other parent must be given 24 hours prior
       notice of date and time, destination and an emergency
       telephone number.

    B. Each parent shall always keep the other informed of his/her
       address and telephone numbers and shall notify the other
       parent within 24 hours of any changes. Neither parent may
       use such information for the purpose of harassing, annoying,
       disturbing the peace of the other or invading the other's
       privacy.

    C. If the children participate' in an AM/PM program, camp or
       cared for routinely by a childcare provider, the parents
       shall keep one another informed of those programs, addresses
       and telephone numbers.

    D. Should either parent require childcare for more than 8 hours
or overnight while the children are in his/her physical care,
the other parent shall have first option to provide such
care.

    E. At least 24 hours notice of any schedule change shall be
given to the other parent. The parent requesting the change
shall be responsible for any additional child care that
results from the change.

    F. Neither parent shall move the residence of the children out
of San Diego County without giving the other parent a 45-day
advance written notice and obtaining the other parent's
written permission prior to the move or an order of the Court
granting the move.

## 9. CLASSES/PROGRAMS

    A. Andrea L. Emert and Robert Emert shall enroll in and
successfully complete a co-parenting course. The course
shall specifically focus on parenting skills for divorced
parents. The course shall be completed by March 30, 2020.

    B. The children shall participate in counseling with a licensed
mental health practitioner until released by the therapist.
The parents shall cooperate and participate in the children's
therapy at the discretion of the therapist. Issues to be
addressed include: adjustment to new family dynamics, grief-
loss, and any other issues identified by the parents and/or
therapist.

    Possible resources include: private insurance; call 211 from
any phone; or a Program Resource List may be obtained at
Family Court Services or on the San Diego Superior Court
website www.sdcourt.ca.gov.

10.  **SUBSTANCE USE/MONITORING/ASSESSMENT/TREATMENT**

A. Andrea L. Emert and Robert Emert shall refrain from using
alcohol during the time the children are in his/her care and
for 12 hours prior to spending time with the children.

Respectfully, submitted,

Liliana Rodriguez, ASW
Family Court Counselor
760-201-8300

Cc:  Andrea L. Emert, Father
Robert Emert, Father
David S. Shulman, Attorney
Veronica M. Aguilar, Attorney

# CONFIDENTIAL REPORT COVERSHEET

The Family Court Services Report attached hereto is **CONFIDENTIAL**.

**Monetary Sanctions**

By law, the court can impose a penalty (i.e. sanction or fine) for the unwarranted disclosure of the contents of this confidential Family Court Services report. This monetary penalty can be ordered against the disclosing party in an amount that is large enough to prevent that person from disclosing information in the future. The sanctions may also include reasonable attorney fees, costs incurred, or both.

**Access to this Report**

Pursuant to Family Code §§ 3025.5 and 3177, as the party receiving this report, you may not make this report available (including but not limited to showing, discussing, forwarding) to anyone other than the following:

1. The parties and their attorneys (including attorneys from whom the parties seek legal representation) and attorneys appointed to represent the child (i.e. Minor's Counsel);
2. Others authorized after court orders are issued making such disclosure permissible.



# SUPERIOR COURT OF SAN DIEGO
## FAMILY COURT SERVICES

January 13, 2020

**F I L E D**
Clerk of the Superior Court

**JAN 1 3 2021**

By: _____ , Clerk
N. James

**DATE OF HEARING: February 4, 2021**

TO:        Department D-18               **19FL010852N**

FROM:    Lisa Boswell, MSW, Counselor
           Family Court Services

RE:        Parenting Plan

OF:        Bryce Emert, DOB: 06/11/07 (Age 13 years) (M)
           Skylar Emert, DOB: 06/06/09 (Age 11 years) (F)

           Mother: Andrea Emert
           Father: Robert Emert

On December 16, 2020, Andrea Emert and Robert Emert, parents of the above-named minor children, participated in a Family Court Services conference in this office. The conference was conducted jointly. Andrea Emert and Robert Emert participated telephonically. Robert Emert is the moving party.

## DOMESTIC VIOLENCE

The parties denied any history of domestic violence.

## FAMILY COURT SERVICES HISTORY

This is the parties' second conference at Family Court Services.

The parties were originally seen at FCS in 2019. The Court is respectfully referred to prior FCS memos for additional historical information.

## PARENTING PLAN

The parents follow the court-ordered parenting plan.

**CONFIDENTIAL REPORT**               Family Code 3025 5

The parenting plan as described by each parent is as follows: Both parents agreed that they practice joint legal and joint physical custody at least since 2019.

## DEMOGRAPHICS (historical)

The parents were married on September 30, 2006.
The parents lived together from 2006-December 2019.
The parents filed for dissolution in September 2019.

## DEMOGRAPHICS (current)

Andrea Emert resides in the San Elijo area of San Diego County, California in a two-bedroom home. Andrea Emert is employed, schedule: Monday-Friday, 7:30 am - 3:00 pm.

Robert Emert resides in the Escondido area of San Diego County, California in a four-bedroom home. Also residing in the home: the paternal grandparents and the paternal aunt.  Robert Emert is unemployed.

## AREAS OF AGREEMENT/DISAGREEMENT

The parents' points of agreement are as follows: joint legal custody, the holiday schedule, vacation time, the child exchange location, the first right of refusal, and to utilize a computer-based email program for all communication.

The parents' points of disagreement are as follows: the primary residence for both children, the parenting time for each parent for both children, and phone contact.

## PARENTS' CONCERNS

There are no allegations of domestic violence, child abuse, substance abuse, mental illness, or criminal histories in this matter.

Andrea Emert expressed the following concerns:  The mother states the father allows the younger child, Bryce, to be emotionally and physically abused by the older child, Skylar and Skylar should have time away from Bryce.

The father denied that he allows the child, Bryce, to be emotionally or physically abuse by the child, Skylar and that he does not observe such behavior when the children are in his care.

Robert Emert expressed the following concerns:  The father states the child, Bryce, is not emotionally stable in the mother's care. He shared that the child's, Bryce, grades have gone from A's and B's to C's and D's. He believes the child, Bryce, is more emotionally stable and cared for when he is in the father's care.

The mother stated the child is struggling with virtual learning. The mother does believe the father and the child, Bryce, have a close bond, yet she denies the child is neglected in her care.

**PARENTS' PROPOSALS AND RATIONALE**

Robert Emert proposed the following parenting schedule: The father is proposing the parenting time for the child, Skylar, remain unchanged. He is proposing the child, Bryce, resides primarily with him and the mother care for the child each week, from Wednesday, after school until Friday, at morning school drop-off, and that the parents both have "reasonable" phone contact with the children.

The father reiterated that the child, Bryce, is not emotionally stable in the mother's care and his grades are suffering, thus he should reside primarily with him. He believes both parents should be able to reach out to the children on a reasonable basis and there should not be a scheduled phone call order in place.

Andrea Emert proposed the following parenting schedule: The mother is proposing the parenting time for the child, Bryce, remain unchanged. She is proposing the child, Skylar, is in the father's care every other weekend, from Friday until Sunday, that the parents each have one scheduled phone call a day between 7:00 pm and 8:00 pm for no more than 10 minutes.

The mother reiterated that the child, Skylar, needs to have a "break" from her brother, Bryce, who has behavioral issues. In addition, the father makes multiple calls daily and she believes a phone call schedule should be instituted for both parents.

**THE CHILDREN**

Both parents denied the children have any unmet health, mental health, developmental concerns or special needs.

Andrea Emert and Robert Emert shared the following factors, which were important to be considered when developing a parenting plan: Both parents reported the child, Bryce, is diagnosed with High Functioning Autism. The child, Bryce, has an active IEP for learning disabilities.

**CHILDREN'S INTERVIEW**

On December 16, 2020, the undersigned interviewed the children. Information obtained from that interview was taken into consideration when developing the recommendations.

The undersigned interviewed both children while they were in the father's care and both children were asked, individually, if there were in a room where they could speak privately where no one could hear them speaking with the undersigned. Both children replied they were in private rooms.

Bryce is a 13-year old who is in the 8th grade at San Elijo Middle School. He shared that he enjoys his AVID class and does not enjoy math. He currently is attending Karate, which Bryce said he had been participating in for the previous six years. He stated he enjoys playing video games.

The child confirmed he spends equal time with each parent. When the child was asked to share how this plan is working, he replied, "Not working too well." Bryce explained that prior to the parents' divorce, he spent the majority of this time with his father and he has a close relationship with his father. He asserted that when he is in the mother's care, the mother controls his ability to speak with the father. He further asserted that he feels that when he is speaking with the father, while in the mother's care, the mother "forces him off the phone". He denied the mother loses her temper, but she may use curse words and take the phone away from him.

Bryce said he is "really nice to my sister". Conversely, he believes that he should have more time away from his sister.

Skylar is an 11-year old who is in the 6th grade at San Elijo Middle School. The child shared that her favorite subject is Science and she receives "good grades". She participates in musical theater, she used to play soccer prior to current pandemic, and she use to participate in dance in the "past".

The child confirmed that she spends equal time with both parents. She confirmed that she would enjoy spending less time with her brother in either home. Skylar stated she did not know what that type of schedule would look like. She stated she does not feel safe around her brother at times. The child stated her brother's behaviors are not new behaviors, but they have escalated since the parents' divorce.

The mother has told the undersigned during the FCS session that she was concerned that Skylar may not feel comfortable speaking

with the undersigned as she would be in the father's care at the time of the scheduled child interview. The undersigned explained that the child will be asked to be in a private room with no one within listening range during the interview. The mother shared that the child states to her that she feels as if someone is always at her bedroom door listening to her when she is on the phone. During the child interview with Skylar, the child stated on several occasions, "I think someone is listening outside the door". The undersigned asked the child why she felt as if someone was listening. She responded that she did not know, she just felt as if someone was standing outside her door listening.

**COLLATERAL INFORMATION**

The undersigned contacted Marguerite Widener, LCSW, children's therapist on December 21, 2020 and obtained the following summarized information:  The undersigned called the therapist on 12/22/20, 12/23/20, and 1/11/2021 and each call the undersigned received a voicemail message and the message "the voicemail is full and cannot accept any messages at this time". As of the writing of this report, the undersigned was unable to speak with the children's therapist.

A screening through the local/State CWS Agency revealed the following summarized information:  The family has three closed referrals since October 2019, when they were last seen at FCS.

  **1)** 3/18/20-3/29/20: Allegations of physical abuse and emotional abuse to the child, Bryce, by the mother. This referral was not assigned for investigation and was **evaluated out**.
  2) 3/2/20-4/7/20: Allegations of physical abuse to the child, Bryce, by the mother. This allegation was closed as unfounded. Allegation of general neglect to the child, Bryce, by the mother. This allegation was closed as **unfounded**. Allegations of emotional abuse to the children, Bryce and Skylar, by the father. This allegation was closed as **unfounded**.
  3) 11/4/19-11/21/19: Allegations of physical abuse to the child, Bryce, by both parents. These allegations were closed as unfounded. Allegation of emotional abuse to both children with no perpetrator named. This allegation was closed as **inconclusive**. Allegation of at-risk sibling for the child, Skylar, with no perpetrator named. This allegation was closed as unfounded.

**REVIEW OF INFORMATION**

A portion of the Court File was reviewed by the undersigned.

## REASONS FOR RECOMMENDATION

The parents were unable to agree upon a parenting plan for their children.

The father is the moving party. He is proposing the child, Bryce, reside primarily with him and the mother's parenting time occur Wednesday, after school until Friday. He is proposing the parents continue to practice joint physical custody of the child, Skylar. The mother is proposing the parents practice a joint physical custody of the child, Bryce and the father's parenting time for the child, Skylar, occurs every other weekend, from Friday until Sunday.

It was apparent to the undersigned that the parents have a very highly conflictual co-parenting relationship and both children are exposed and greatly affected by their high conflict co-parenting. The child, Bryce, has special needs such as high functioning autism. Both parents agreed, during the FCS conference, that they have practiced joint physical custody of the children since at least November 2019. The mother asserts the child, Bryce, is assaultive, both verbally and physically with the child, Skylar. Both children are actively attending therapy. The undersigned strongly urges both parents to actively participate in the children's therapy as directed by the therapist and request that the therapist conduct sibling sessions to address the concerns that the mother has about the child's, Bryce's behavior, towards the child, Skylar while they are in her care. Both parents are also high urged to not expose the children to their co-parenting conflict and work together with the children's therapist to establish a consistent routine in both of their households for each of the child's unique needs.

Based on the information gathered during the FCS conference and acknowledging both children's stated preferences, the undersigned is recommending no changes to the current parenting plan.

It is recommended that the parents enroll in and successfully complete an in-person high co-parenting conflict course.

It is recommended that both children continue to attend individual therapy and both parents actively participate in the children's therapy as directed by the therapist.

Based on the aforementioned information, the following recommendations are respectfully submitted to the Court consideration.

**RECOMMENDATIONS FOR THE PARENTING PLAN OF:**

Bryce Emert, DOB: 06/11/07 (Age 13 years)
Skylar Emert, DOB: 06/06/09 (Age 11 years)

Mother: Andrea Emert
Father: Robert Emert

1. **LEGAL CUSTODY**

   A. Andrea Emert and Robert Emert shall share joint legal
      custody, which means that Andrea Emert and Robert Emert
      shall share the right and responsibility to make decisions
      relating to the health, education, and welfare of their
      children and consult each other regarding enrollment and
      disenrollment in school, beginning/ending mental health
      services and selection or changes of a doctor, dentist or
      other health professional.
   B. Each parent shall have access to medical and school records
      pertaining to the children and may consult with any
      professionals involved with the children. It is each
      parent's responsibility to request school calendars,
      progress reports, report cards and parent-teacher
      conferences directly from the school.
   C. Each parent may obtain emergency health care for the
      children without the consent of the other parent. Each
      parent is to notify the other parent as soon as reasonably
      possible of any illness requiring medical attention or any
      emergency involving the children.

2. **PHYSICAL CUSTODY**

   A. The children's physical custody shall be shared.
   B. Joint physical custody of the children shall be shared as
      follows:
   i)    Each parent shall care for the children during
         alternating weekends from Friday at school dismissal, or
         3:00 p.m. until Monday at 3:00 pm.
   ii)   The mother shall care for the children every week from
         Monday at school dismissal, or 3:00 p.m. until Wednesday
         at school dismissal, or 3:00 p.m.
   iii)  The father shall care for the children every week from
         Wednesday at school dismissal, or 3:00 p.m. until Friday
         at school dismissal, or 3:00 p.m.

3.    **HOLIDAYS/SPECIAL DAYS/SCHOOL VACATIONS**

**Special Days/holiday** schedules shall take precedence over the regular parenting schedule, which shall resume after the holiday is over.  Unless noted, all single-day holidays shall be from 8 AM to 8 PM.  In absence of other agreement by the parents, specific holiday schedules shall be as follows:

| HOLIDAY | TIME | EVERY YEAR | EVEN YEARS | ODD YEARS |
|---------|------|------------|------------|-----------|
| Christmas Eve/Christmas Day | 9 AM, 12/24 until 9 AM, 12/25 | | Mother | Father |
| Christmas Day/Day after Christmas | 9 AM, 12/25 until 6 PM, 12/26 | | Father | Mother |
| New Year's Eve/Day | Eve 6 PM – Day 6 PM | | Mother | Father |
| Easter Day | 8 AM – 8 PM | | Father | Mother |
| Mother's Day | 8 AM – 8 PM | Mother | | |
| Father's Day | 8 AM – 8 PM | Father | | |
| July 4th | 8 AM – until 10 AM July 5 | | Mother | Father |
| Halloween | 4 PM – 8 PM | | Father | Mother |
| Thanksgiving Day | 8 AM – 8 PM | | Mother | Father |
| Children's Birthdays | 8 AM – 8 PM; or if a school day from 6 PM to 8 PM | | Father | Mother |
| **Three-day weekends** not specified in the chart above shall be spent with the parent who would normally have that weekend and the weekend shall be extended by 24 hours. | | | | |

4.    **VACATIONS/SCHOOL BREAKS**

A. Either parent may vacation or have extended time with the children each year for up to two weeks. The vacationing parent shall notify the other parent in writing of their vacation plans a minimum of 30 days prior to departure and provide the other parent with a basic itinerary to include dates of departure and return, destinations, flight information and telephone numbers for emergency purposes. The vacationing parent shall not schedule the vacation during the other parent's scheduled holiday time with the children, unless agreed upon in advance by both parents. The vacation shall not interrupt school attendance unless mutually agreed upon by the parents and school personnel.

5.    **EXCHANGES/TRANSPORTATION**

   A. Exchanges of the children, when they do not take place at school/childcare shall be at the sending parent's residence.
   B. The children shall be exchanged at the designated times, with a 15-minute grace period. Should a longer delay be necessary, the other parent shall be notified immediately or that parenting time shall be considered canceled.

6.    **TELEPHONE/COMMUNICATION**

   A. There shall be reasonable telephone contact between the children and the parents when in the other parent's care. **The purpose of the phone call shall be to communicate with the children. All other business between the parents shall be discussed at another time.**
   B. Email communication: The parties shall use a co-parenting email system, such as Our Family Wizard or TalkingParents.com for all non-emergency communication. The parties shall each establish a parent account, and enroll in the program within 21 days of this order and annually thereafter, to conduct all communications regarding custody or visitation matters, information-sharing matters, schedule alterations and reimbursable-expense matters on the website. The parties shall not telephone, e-mail or text each other regarding issues related to the child except in an unanticipated or emergency situation where response is required in less than 24 hours. Each party shall respond to the other party's request or notification within 48 hours of the posting, if a response is either requested or appropriate. Each party shall allow "professional access" to any licensed legal or mental health professional.

7.    **CONDUCT/SAFETY**

   A. Neither parent shall make negative statements about the other in the presence or hearing of the children or question the children about the other parent. The parents shall communicate directly with each other in matters concerning the children and shall not use the children as a messenger between them. The children shall not be exposed to court papers or disputes between the parents, and each parent shall make every possible effort to ensure that other people comply with this order.

8.   **NOTIFICATION**

   A. When either parent wishes to travel with the children
      outside the County of San Diego for overnight or longer
      during their parenting time, the other parent must be given
      24 hours' prior notice of date and time, destination and an
      emergency telephone number.
   B. Each parent shall always keep the other informed of his/her
      address and telephone numbers and shall notify the other
      parent within 24 hours of any changes. Neither parent may
      use such information for the purpose of harassing,
      annoying, disturbing the peace of the other or invading the
      other's privacy.
   C. If the children participate in an AM/PM program, camp or
      cared for routinely by a childcare provider, the parents
      shall keep one another informed of those programs,
      addresses and telephone numbers.
   D. Should either parent require childcare for more than **eight
      hours** or overnight while the children are in his/her
      physical care, the other parent shall have first option to
      provide such care.
   E. Neither parent shall schedule activities for the children
      during the other parent's scheduled parenting time without
      the other parent's prior agreement.
   F. At least 24 hours' notice of any schedule change shall be
      given to the other parent. The parent requesting the change
      shall be responsible for any additional child care that
      results from the change.
   G. Neither parent shall move the residence of the children out
      of San Diego County without giving the other parent a 45-
      day advance written notice and obtaining the other parent's
      written permission prior to the move or an order of the
      Court granting the move.

9.   **CLASSES/PROGRAMS**

   A. Robert Emert and Andrea Emert shall enroll in and
      successfully complete an in-person high conflict co-
      parenting course. The course shall be completed by
      4/1/2021.
   B. The children shall participate in counseling with a
      licensed mental health practitioner until released by the
      therapist. **The parents shall cooperate and participate in
      the children's therapy at the discretion of the therapist.**
      Issues to be addressed include: exposure to high level of
      co-parenting conflict, sibling relationship, and any other
      mental health issues that arise.

    C. Possible resources include: private insurance; call 211
       from any phone; or a Program Resource List may be obtained
       at Family Court Services or on the San Diego Superior Court
       website www.sdcourt.ca.gcv.

Respectfully submitted,

Lisa Boswell, MSW
Family Court Counselor
619-844-2939

Cc:  Andrea Emert, Mother
     Robert Emert, Father
     David Schulman, Attorney

Exhibit B

50/50 offers

## Emert, Bryce

**Rob Emert** <robemert@msn.com>

Mon 5/24/2021 9:04 PM

**To:** Matthew Cord, Esq. <MCord@apjohnsonesq.com>; Dave Schulman <dschulman@msmfamilylaw.com>
**Cc:** Catie Young <Catie@GYLFAMILYLAW.COM>; Linda Hansen <lhansen@msmfamilylaw.com>; Sarah Bear <sbear@msmfamilylaw.com>; Correne Day <Correne@GYLFAMILYLAW.COM>

📎 1 attachments (3 MB)

DISQUALIFICATION OF COMMISSIONER RATEKIN 052021.pdf;

Mr. Cord,

Upon Bryce returning to my home after a stay with his mom, he told me the following and that the whole weekend with his mom was a horrible fight. It is heartbreaking for me to hear this stuff and that Bryce is forced to have to put up with it.

1. His mom spit in his face
2. His mom threw popcorn in his face.
3. His mom grabbed him by the hair.
4. His mom was physically rough with him.
5. And, most alarming, that when she was putting him to bed last night that she was crying to him and said he did not have to live with her anymore and that he would not have a room at her house anymore and she was going to take his bed apart and he would not have a bed at her home anymore.

I am sure you will find a way to say it is my or Bryce's fault somehow. Bryce does not have these kinds of problems with anyone else and I have been telling you for a long while now that Andrea has always had a strained relationship with her son. It is not my fault. While Andrea and I have traded insults over the years I would never want Bryce to be without his mother and Bryce knows this very well. Andrea just has issues with a lot and she really is irrationally resentful of me where she wants to burn me more than help our kids. When I stick up for his mom in our discussions, Bryce gets upset with me because Bryce does have many valid concerns on how his mother treats him.

Without me being involved with the kids therapy is a disservice to the kids because you have created a stacked deck. Andrea can say whatever she wants and waive that nonsense court order that says I should not have contact with the one therapist while "the pile on" said it was all therapists. That would create a bias in any reasonable persons/therapists mind. I don't really care that much unless it is a disservice to the kids which it clearly is. And, I highly doubt that Peggy would even agree with how you used her to give Andrea a "tie breaking" vote, removing me from "all" kids therapies, and me getting admonished by the court for involving the kids in divorce related matters when she knows we have both messed up pretty bad in many respects. Whatever I have discussed with the kids in the past was what I would call serious damage control from what Andrea had told them about me or these divorce proceedings. I will get more into that at the next trial day.

Andrea has played everyone for suckers and I guess I am the biggest sucker for doing exactly what she knew I would by calling out everyone in an annoying bombastic way when advocating for my kids. If you really have Bryce's best interests why did you not reach out to his case manager who really is an expert in her field, knows Bryce well and has ZERO to buddy up to me. You spoke to people friendly with

Andrea and who believed Andrea's nonsense with her bogus TRO andrea waived around at the kids[430] school after she was arrested.

Last Thursday I filed a motion to disqualify commissioner Ratekin from these proceedings. With the overwhelming data that will show up in the transcripts, I would be surprise if Judge Wood does not take the case over but nothing really surprises me anymore in divorce court. I attached it just in case you have not seen it yet.

I am right in most regards and I have the truth on my side. It is only a matter of time before the truth comes out and while that may be at the next trial date or an appeal, it will happen eventually. Like I have been saying since day one, I am open to a mediation where the interests of the children would come first and then have that mediator make the finding binding. I think I have put that out there in emails at least 20x plus in the last two years. Given the scenario, why would anyone not want to do that? If I was wrong with my opinions on anything, I would have found out soon enough when the mediator reviewed the facts (and not fancy/questionable divorce moves in court) and made their findings to the parties and that which would have been binding.

Rob Emert

## Fw: progress, who would have thought....

**Rob Emert** <robemert@msn.com>

Mon 5/24/2021 8:54 AM

**To:** Andrea Emert <aemert@carlsbadusd.net>

Andrea,

It does not get anymore basic than this. Your attorney draws up the stipulation and most times the Judge says great and adds the stipulation to the orders. If he does not do this within 24 hours I know you guys are just jerking me around and I will simply do what I feel is in the kids best interests. I spoke to many about this including the people in the high conflict class. This is the best and easiest way to go.

50/50

If there is a dispute regarding anything that can't be resolved by Andrea or I going forward, we would agree to a child custody advisor/coordinator to make the decision and that decision would be binding unless both Andrea and I disagreed with the advisor and came to a different agreed solution. This child custody advisor/ coordinator will be a third party agreed to by both parties. This custody advisor does not need to be picked immediately but both parties do agree they will agree to choose one prior to submitting this stipulation to the court.

Rob

**From:** Rob Emert <robemert@msn.com>
**Sent:** Tuesday, May 18, 2021 2:40 PM
**To:** Sarah Bear <sbear@msmfamilylaw.com>
**Cc:** Dave Schulman <dschulman@msmfamilylaw.com>; Kelley Castillo <kcastillo@msmfamilylaw.com>; Caroline Taylor <ctaylor@msmfamilylaw.com>; Correne@GYLFAMILYLAW.COM; Linda Hansen <lhansen@msmfamilylaw.com>; Andrea Emert <aemert@carlsbadusd.net>; Matthew Cord, Esq. <MCord@apjohnsonesq.com>; Catie Young <Catie@GYLFAMILYLAW.COM>
**Subject:** Re: progress, who would have thought....

Ms. Bear,

Here is an offer of settlement regarding custody:

50/50

If there is a dispute regarding anything that can't be resolved by Andrea or I going forward, we would agree to a child custody advisor/coordinator to make the decision and that decision would be binding unless both Andrea and I disagreed with the advisor and came to a different agreed solution. This child custody advisor/ coordinator will be a third party agreed to by both parties. This custody advisor does not need to be picked immediately but both parties do agree they will agree to choose one prior to submitting this stipulation to the court.

I don't know why the Commissioner acted like this could not be done. I have been told by many it is done all the time. I think the commissioner was only saying that she could not order it which I understand. However, if the parties (Andrea and I )simply agree to it and submit it as an agreed stipulation, my understanding is that most judges would simply say great and add it to the orders. My terminology may be off but I am sure everyone knows what I mean.

If Andrea is agreeable to this, it would be great to be able to move on so please run it past Andrea and send over the stipulation so this family can heal and move on.

Rob Emert

---

**From:** Rob Emert <robemert@msn.com>
**Sent:** Friday, May 7, 2021 3:40 PM
**To:** Sarah Bear <sbear@msmfamilylaw.com>; Andrea Emert <aemert@carlsbadusd.net>; Catie Young <Catie@GYLFAMILYLAW.COM>; Matthew Cord, Esq. <MCord@apjohnsonesq.com>
**Cc:** Dave Schulman <dschulman@msmfamilylaw.com>; Kelley Castillo <kcastillo@msmfamilylaw.com>; Caroline Taylor <ctaylor@msmfamilylaw.com>; Correne@GYLFAMILYLAW.COM <Correne@gylfamilylaw.com>; Linda Hansen <lhansen@msmfamilylaw.com>
**Subject:** Re: progress, who would have thought....

Ms. Bear,

I have offered from the beginning of these divorce proceedings to do a binding mediation. The offer I have put fourth is very simple and your client has indicated she is pretty good with it.

1. 50/50 custody

2. If there is a dispute regarding anything that can't be resolved by Andrea or I going forward, we would agree to a child custody advisor/coordinator to make the decision and that decision would be binding unless both Andrea and I disagreed with the advisor and came to a different agreed solution. This child custody advisor/ coordinator will be a third party agreed to by both parties. This custody advisor does not need to be picked by Friday (05/07/21) but both parties do agree they will agree to choose one.

3. Andrea said she wants to keep the 15 min call thing which is fine by me. Andrea and I discussed making texting not included and I would add that multiple calls is fine as long as the aggregate does not go over 15 min as things come up during the day and such a restriction would not be in the kids best interests.

4. Regarding the schedule, I really don't care how Andrea wants to set up the schedule and she can change it however she wants whenever she wants and if there is an issue, we talk to the custody advisor / coordinator.

5. I don't care if I am or am not included with the therapists. My only concern was how Peggy the therapist and Mr. Cord never reached out to the main point of contact for Bryce Emert as indicated by the principal of the School and now the human resources director of San Marcos Unified who is Trish Flemming. When it was suggested and then ordered for me to be taken out of the equation when I was trying to get as many evaluations as possible of our children for the court to consider is alarming. Peggy, the therapist does not know Bryce Emert at all. Mr. Cord does not know Bryce Emert at all. Both of these individuals did not reach out to the main point of contact for Bryce Emert as indicated by the principal of the school when forming and giving life changing opinions for Bryce Emert. THIS IS MY MAIN CONCERN WITH THE THERAPIST SITUAITON AS IT WOULD CLEARY AND INEQUITABLY LET THE RIGHTS OF BRYCE EMERT, A MINOR ON THE AUTISM SPECTRUM GET RUN OVER WITH ZERO OVERSIGHT AND ACCOUNTABILTY and leaving out the opinions of people who have known Bryce Emert for years. Simply outrageous and most definitely not in the best interest of Bryce Emert. If this issue is not resolved, Bryce will be called as a witness. If it is denied, I believe he will be heard in an appeal. To suggest that bringing Bryce in as a witness is harming him somehow is absurd when considering the horrendous two years of interrogations by attorneys, CPS, FCS, police, therapists, and school counselors. Bryce has indicated to me constantly how upsetting all of that is to him and cry's to me all the time begging for me to make all these people go away. The only reason why someone would not want Bryce to be heard at this point is because they simply don't want to hear the truth. Perhaps like not calling Bryce's case manager that knows him better than anybody in these divorce proceedings other than his parents. Yeah, it sure makes sense to have all these strangers interrogate Bryce to the point he is crying and begging his dad to make them go away but not let the dad ask him a few questions so Bryce himself at almost 14 is able to clarify his opinions/wants/needs to the court.

If Andrea does not sign off on something this simple and straight forward it just tells me to expect more shenanigans that I have come to expect over the last two years and I will just have to spend more time and money over the weekend preparing which is something I was hoping to finally be rid of.

If Andrea is serious, her attorney needs to write this simple agreement up and let everyone sign off on it. If there are unforeseen issues, we end up back in court which I know is where Andrea and I don't want to be.

I believe Andrea is over 100k in fees; I was close to 50k from memory, and we now have a big bill adding up from minor council. This is not acceptable and we clearly can't afford it.

Please draw up the simple agreement that I believe Andrea is fine with and present it for everyone to sign off on it.

Thanks

Rob Emert

I