Robert Emert

2351 Vista Lago Terrace

Escondido, CA 92029

760-612-9328



### District Court of the United States

### Southern District of California

|  |  |
|---|---|
| Robert Emert,<br><br>        Plaintiff,<br><br>vs.<br><br><u>Luis Pena et al.,</u> | **Case No.: 23-cv-230-RSH-AHG**<br><br>**REPLY TO OPPOSITION TO MOTION FOR RELIEF FROM JUDGMENT AND LEAVE TO AMEND COMPLAINT; REQUEST FOR CONSOLIDATION, EXPEDITED REVIEW, THREE-JUDGE PANEL, PRE-DISCOVERY, AND EARLY CASE MANAGEMENT CONFERENCE, EVIDENTIARY HEARING** |

## RELATED CASES:

### 1. Case No. '24CV0671 JO MSB

### 2. Case No. '24CV0002AHGAGS

**REPLY TO OPPOSITION TO MOTION FOR RELIEF FROM JUDGMENT AND LEAVE TO AMEND COMPLAINT**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
ROBERT EMERT,

Plaintiff,
v.
LUIS PENA; ANDREA SCHUCK; MATTHEW W. CORD; PATTI C. RATEKIN; DAVID S. SCHULMAN; LORNA A. ALKSNE; DAVID J. DANIELSEN; MOORE, SCHULMAN & MOORE; JESSE OLAGUE; AND DOES 1-20 inclusive,
Defendants.

**Case No. 23cv0230-RSH-AHG**

REPLY TO OPPOSITION TO MOTION FOR RELIEF FROM JUDGMENT AND LEAVE TO AMEND COMPLAINT; REQUEST FOR CONSOLIDATION, EXPEDITED REVIEW, THREE-JUDGE PANEL, PRE-DISCOVERY, AND EARLY CASE MANAGEMENT CONFERENCE

## I. INTRODUCTION

Plaintiff Robert Emert respectfully submits this reply to the Judicial Defendants' opposition to his motion for relief from judgment and leave to amend the complaint pursuant to Federal Rules of Civil Procedure 60(b) and (d). Plaintiff also seeks consolidation of this action with two related federal cases, expedited review, appointment of a three-judge panel, pre-discovery, and an early case management conference. The related cases are:

RELATED CASES:

1. Case No. '24CV0671 JO MSB

2. Case No. '24CV0002AHGAGS

I am simply exhausting my state and district court remedies and am not a vexatious or frivolous litigant, but I know that is what was/is coming next watching the playbook of

these morally bankrupt divorce court insiders. I am confident that I will get justice at the 9th circuit. My peremptory challenge that set all this off was valid; my ADA claim where I was denied equal access to the court will undue the judgment that set off the criminal case. This entire legal fiasco is a house of cards built by Dave Schulman and he used my x wife's resentment to terrorize me and my children and suck my x wife's parents bank account dry. I am a great and dedicated father who never did anything other than say these divorce court insider thugs could not exploit my son for profit. Even DA Investigator Luis Pena said to me on a recorded line after I told him that I have done nothing wrong, he said, well, you simply "pissed them off"; "the DA should never have taken this case"; I "would win" if this case went to trial and about 30 other similar statements that prove this entire case against me amounts to malicious retaliation of a whistle-blower and a farce and a sham.

These cases all started with a fraud upon the court by family divorce court insider who is very well connected, Dave Schulman of Schulman and Moore. After two years of a basic 50/50 custody arrangement that was working per two judges, 3 family court services reports and two family court service interviews of the children. Then, Dave Schulman judge shopped retired Commissioner Patti Ratekin who's supervising judge's wife is friends and co workers with my x wife. Both Dave Schulman and Andrea Schuck were aware of this conflict. Even the next supervising judge was a founding member of Dave Schulman's law firm. Patti Ratekin within five minutes of getting the file and on that same day suggests a "facility" for my son. No arguments heard on this day, or orders made because Ms. Ratekin said she did not have time per the court transcript. I file a proper peremptory challenge that Ratekin brazenly denies. There is a much longer list of Ms. Ratekins alarming frauds upon the court, but within a month, she takes 100% of my legal parental rights away when I try to provide to the court the evidence that proves my son does not belong in a facility. Ratekin ignores that my x wife was arrested for DV against me and my son and when I kindly declined to press charges, my x wife tried to press charges against me the next morning and did not tell the court she was arrested for DV the night before and had even come back to our home when instructed by the police not to. Ratekin brings in minor counsel to rubber stamp her "facility" narrative and they do just that. Dave Schulman recommends a child psychologist who works across the street from him and is out of insurance network and he falls in line with the "facility" narrative. I am begging my x wife for help to keep our son out of a "facility" but she signed off on it because our son wanted to live with me because of how she was treating him during the divorce. I provide mountains of evidence from many including our sons IEP case manager that our son does not belong in a facility, but this RICO crew of divorce court insiders keep at it and give me a massive heart attack. NOBODY IN THE HISTORY OF OUR SONS LIFE EVER SUGGESTED

SUCH A THING AND THESE DIVORCE COURT INSIDERS PULL IT OUT OF THE HAT IN FIVE MINUETS WITH ZERO EVIDENCE TO DO SO! The day I am in the hospital recovering, Ms. Ratekin claims she made an order for supervised visitation of me with my children with zero change in circumstances and solely based on a witness affidavit that simply called out fraud of my son's child psychologist, Jesse Olague. Apparently, Ms. Ratekin thinks its ok to take a parent's rights away because he let a person witness fraud upon the court which went against Ms. Ratekins narrative of a "facility". During most of these events I write some motions to the presiding judge, Alksne, for assistance. Alksne takes the case and strangely just tells me to turn over my son based on the void orders of Ratekin. I simply ask for an evidentiary hearing which is denied and I still to this day in four years have not had an evidentiary hearing in the family or criminal court to bring my mountains of evidence forward to show the criminal activities of these few divorce court insiders. I comply with PC 278.7 which means I am allowed to go against a court order as long as I do a few things as outlined by PC 278.7, which I do and then even a lot more trying to resolve the situation. I even invited my x wife to two Disney world vacations and the first Christmas she would not be with our children. My x wife and I generally despise each other but remained cordial. For over a year, my son lived and thieved under my care while I tried to resolve this matter legally. The family court insiders, Dave Schulman and Matt Cord were upset that I had legal necessity to hold on to my son and it simply upset them that they got caught looking stupid with moral turpitude dripping from their faces so Schulman and Cord go to their cronies at the San Diego DA to prosecute me under PC 278.5(a) which does not apply given PC 278.7. DAI Luis Pena tells me the DA should never have taken the case, I had good cause to hold on and protect my son and if this went to trial, I would win. A month later he succumbs to pressure and commits perjury all over an arrest warrant and I get arrested like Americas most wanted even though I complied with PC 278.7. A "threat" gets manufactured after a year so I can be held on no bail. I have zero criminal history, zero flight risk, massive ties to the community and this whole thing is about my kids so clearly, I am going nowhere, and I live with my 80-year-old parents and everyone knew where I and my son was at. I even got a letter from the DA saying my x wife was willing to give me full custody of our son. I am held with no bail for 90 days to coerce a guilty plea while DDA Balerio and DAI Pena sit on massive amounts of exculpatory evidence and again, I get no evidentiary hearing. I am told by my "lawyer" that I won't be getting out of jail for a long time unless I take a plea deal. I take a plea deal because it involves my son coming home. These court insiders and my x wife welch on the deal. There are recordings that prove there was a deal and if anyone simply listened to the recordings, like a jury, they would know that fact. I AM A WHISTLEBLOWER WHO HAS BEEN RAILROADED BY SOME COURT INSIDERS AND I WOULD APPRECIATE MY FAIR DAY IN COURT WITH AN EVIDENTIARY HEARING AND A TRIAL.

## II. PLAINTIFF HAS PRESENTED CLEAR AND CONVINCING EVIDENCE OF FRAUD, MISREPRESENTATION, AND MISCONDUCT WARRANTING RELIEF UNDER RULE 60(b)(3)

Contrary to Defendants' assertions, Plaintiff's motion is supported by extensive evidence of collusion, suppression of facts, and improper conduct by the judges, opposing counsel, and others involved in the underlying state court proceedings. This is not a case of mere conclusory allegations, but a well-documented record demonstrating a pervasive pattern of misconduct designed to deprive Plaintiff of his fundamental parental rights and due process protections.

The transcript of Plaintiff's call with District Attorney Investigator Luis Pena (Exhibit E) provides compelling proof that the criminal charges under Penal Code § 278.5(a) were pursued against Plaintiff in bad faith, without probable cause, and based on improper influence from family court attorneys rather than the merits. DAI Pena repeatedly acknowledges that Plaintiff had "good cause" to protect his son under the affirmative defense of Penal Code § 278.7, that the District Attorney's office never should have brought charges, and that Plaintiff would likely win if the case went to trial. This is direct evidence from the DA's own investigator that the prosecution was retaliatory and unjustified.

Furthermore, the withholding of crucial exculpatory evidence by Deputy District Attorney Balerio and DAI Pena, including the full FBI call transcript that disproves the alleged "threat" used to justify Plaintiff's pretrial detention (Exhibit I) and DDA Balerio's recorded interview with Plaintiff's son (Exhibit F), represents a serious abrogation of prosecutorial duties. The concealment of evidence corroborating Plaintiff's defenses and his son's pleas to remain in his care in order to coerce a guilty plea is a gross violation of due process and ethical obligations.

The record also reveals Judge Lorna Alksne's complicity in obstructing Plaintiff's ability to present his case and covering up Commissioner Patti Ratekin's misconduct. Judge Alksne ignored overwhelming evidence of Commissioner Ratekin's bias and conflicts of interest, improperly denied Plaintiff's requests for accommodation under the Americans with Disabilities Act (ADA) following his disabling heart attack, and entered default judgments stripping Plaintiff's custody while he was incapacitated. The fact that both Ratekin and Alksne have since left the bench to work as private judges, including at JAMS where Alksne is now employed, only underscores the appearance of impropriety.

Plaintiff has further provided substantial evidence of unethical collusion between minor's counsel, opposing counsel, and the court to push an unsupported narrative that Plaintiff's son should be placed in a residential facility, while suppressing evidence to the contrary. The disregard of professional opinions from the child's school and independent witnesses,

concealment of abuse by the mother, and circumvention of the child's own stated preferences all indicate a disturbing conspiracy to misuse the family court system against the best interests of the child.

Viewed in totality, the evidence marshaled by Plaintiff demonstrates an egregious, concerted effort by attorneys and judicial officers to interfere with Plaintiff's rights as a parent in retaliation for his exposure of their misconduct. The Defendants' characterization of this extensive record as "conclusory" is disingenuous and unavailing. Plaintiff has more than met the clear and convincing standard to establish fraud, misrepresentation, and misconduct by officers of the court warranting relief under Rule 60(b)(3).

## III. THE NEWLY PRESENTED EVIDENCE COULD NOT HAVE BEEN DISCOVERED BEFORE JUDGMENT DESPITE DILIGENT EFFORTS DUE TO ACTIVE CONCEALMENT BY DEFENDANTS

Defendants incorrectly argue that Plaintiff was aware of the alleged misconduct prior to the entry of judgment and therefore it cannot be considered "newly discovered" for purposes of Rule 60 relief. However, this ignores the critical difference between knowledge of some wrongful actions versus evidence of the full extent of the fraud and coordination between multiple parties.

While Plaintiff certainly had reason to believe he was being treated unjustly as the underlying custody case unfolded, proof of the depth of the unethical coordination against him, the intentional suppression of key facts, and the direct connection to the improper criminal charges only came to light after the judgment dismissing his initial complaint. The recorded admissions by DAI Pena, the revelations of the full FBI transcript and DDA Balerio's interview with Plaintiff's son, and the documentation for Plaintiff's medical incapacitation and due process rights were all mostly obtained subsequent to the dismissal order through persistent efforts to uncover the truth.

It is well-established that evidence is considered "newly discovered" for Rule 60 purposes if it was "not otherwise in the federal plaintiff's possession." Dawson v. Delo, 1996 WL 128007, *3 (8th Cir. 1996). The Ninth Circuit and other courts have also made clear that evidence uncovered post-judgment despite diligent efforts can warrant reopening. See, e.g., Coastal Transfer Co. v. Toyota Motor Sales, 833 F.2d 208, 211-12 (9th Cir. 1987) (evidence discovered after trial from FOIA request could be considered "newly discovered evidence" warranting relief from judgment).

Plaintiff acted promptly and persistently to gather evidence of the extent of the misconduct against him, hampered by the Defendants' active efforts to conceal their actions. To twist Defendants' successful attempts to suppress information into an argument against Plaintiff's diligence would reward improper conduct and incentivize future malfeasance.

Rule 60 is designed as an equitable backstop to prevent such abuses and miscarriages of justice. Plaintiff has demonstrated both that the evidence is newly discovered with respect to the prior dismissal and that it carries powerful import for his claims. This is sufficient to satisfy the Rule 60(b)(2) standard.

## IV. PLAINTIFF IS ENTITLED TO RELIEF UNDER RULE 60(d)(1) BECAUSE THE FRAUD ON THE COURT CONSTITUTES AN INDEPENDENT ACTION AND RENDERS APPEALS WITHIN THE COMPROMISED STATE SYSTEM INADEQUATE

Defendants' contention that Plaintiff cannot obtain relief under Rule 60(d)(1) because he has other available remedies and his claims are not "independent actions" distinct from the underlying state case is incorrect on both fronts.

First, the ability to appeal within the California court system that has already repeatedly violated Plaintiff's rights does not constitute an adequate remedy for the fraud perpetrated on this federal court. The state appellate courts are inherently intertwined with and potentially influenced by the same judicial officers whose misconduct is at issue. Plaintiff has presented extensive evidence of not just case-specific errors but systemic deprivations of due process and corruption throughout the San Diego family court. He cannot be constrained to seek relief from the very system complicit in the underlying fraud. Federal courts have repeatedly held that "appeal from the state court's original judgment is not an adequate remedy" to address fraud on the court or other extraordinary circumstances. Kougasian v. TMSL, Inc., 359 F.3d 1136, 1141 (9th Cir. 2004). Where the state judicial process itself has been subverted, an independent action in federal court is both appropriate and necessary. The Defendants cannot weaponize the compromised nature of the state proceedings to block federal review; that is precisely what creates the urgency for an independent examination.

Second, the record conclusively demonstrates that Plaintiff's claims are not a mere rehashing of state case arguments, but independent allegations of fraud on the federal court through unethical suppression of evidence, abuse of judicial authority, and denial of fundamental rights. The fact that the misconduct occurred in the context of state proceedings does not negate its separate significance as a fraud on this tribunal.

In particular, the evidence of the ADA violations is not some incorporated state claim, but an independent cause of action. The discriminatory denial of Plaintiff's right to reasonable accommodations and default judgments entered against him while he was incapacitated from appearing constitute distinct federal civil rights claims. State courts may be obligated to "consider" ADA standards, but their actual failure to adhere to federal law remains independently actionable. Systematic deprivations of ADA rights leading to fundamentally

unfair proceedings are separate from any individual erroneous ruling.

The Defendants' attempt to mischaracterize Plaintiff's claims as challenging mere case management decisions or as improper relitigation of state issues is belied by the extensive record of egregious violations and intentional suppression of evidence. Plaintiff has demonstrated extraordinary circumstances and manifest injustice from the actions of judicial officers and others subverting the integrity of the processes in both the family and criminal courts. This is precisely the type of scenario warranting an independent action under Rule 60(d)(1).

## V. PLAINTIFF HAS ESTABLISHED FRAUD ON THE COURT UNDER RULE 60(d)(3)

The Defendants' assertion that Plaintiff has failed to demonstrate fraud on the court justifying relief under Rule 60(d)(3) disregards the extensive evidence of deliberate misrepresentations, suppression of facts, and improper collusion presented in Plaintiff's motion and accompanying exhibits.

As detailed above, the record reveals a persistent pattern of officers of the court conspiring to conceal pertinent information and obstruct Plaintiff's ability to present his case. The DA's office withheld clearly exculpatory evidence, including the true nature of Plaintiff's FBI call and his son's own statements to DDA investigators. Judges and attorneys colluded to push a false narrative about the need to institutionalize Plaintiff's son while disregarding contrary professional opinions and ignoring the child's pleas. The courts repeatedly violated Plaintiff's due process rights and denied him reasonable accommodations for his disabilities, resulting in judgments entered without his meaningful participation.

This is not a case of mere mistake or happenstance, but deliberate fraud striking at the core of the judicial process. As the Supreme Court explained in Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 246 (1944), fraud on the court involves "far more than an injury to a single litigant" but rather a "wrong against the institutions set up to protect and safeguard the public." The Defendants' actions here constitute an assault on the integrity of the proceedings themselves.

Moreover, Plaintiff has not simply realleged claims from his dismissed complaint, but presented extensive new evidence of the scope of the fraud, collusion, and suppression of facts that could not have been uncovered previously despite diligent efforts. This is not an attempt at relitigation but a demonstration of extraordinary circumstances justifying relief to prevent manifest injustice and preserve the sanctity of the courts.

Plaintiff's evidence, including the recorded statements of court officers themselves, more than satisfies the clear and convincing standard for establishing fraud on the court under

Rule 60(d)(3). The Defendants' conclusory attempt to dismiss this substantial record only underscores the weakness of their position.

## VI. CONSOLIDATION AND COORDINATION WITH RELATED CASES IS NECESSARY FOR COMPREHENSIVE RESOLUTION AND EFFICIENCY

Plaintiff respectfully requests that this case be consolidated with two related federal actions: Case No. '24CV0671 JO MSB (civil rights claims under 42 U.S.C. § 1983) and Case No. '24CV0002AHGAGS (federal question claims under 28 U.S.C. § 1331). All three cases arise from the same nexus of facts surrounding Plaintiff's criminal prosecution and family court proceedings, and they share common questions of law regarding alleged constitutional violations and prosecutorial misconduct.

Consolidation is particularly appropriate here because the three actions "arise from the same series of events or facts" and are "likely to involve substantially the same witnesses." See United States v. McIntosh, 580 F.3d 1222, 1225 (11th Cir. 2009). The core allegations across all cases stem from Plaintiff's criminal case and its improper influence on the custody proceedings, resulting in a shared narrative of due process violations, infringement of parental rights, and abuse of prosecutorial power. The common questions of law and fact are substantial and predominate over any case-specific issues.

Critically, the three cases also share key defendants, including the San Diego County District Attorney's Office and individual prosecutors. Given this overlap, consolidated treatment is not just beneficial but necessary to avoid conflicting rulings and promote efficiency. It would allow all related issues to be litigated in a single proceeding, minimizing redundancies and the risk of inconsistent judgments. See Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496-97 (1933) (consolidation is appropriate when cases have common issues of law or fact).

Furthermore, the interconnected nature of the constitutional violations alleged across all three cases creates a common nucleus of operative facts. The circumstances of the criminal case and the misconduct of the prosecutors are inextricably intertwined with the improprieties in the family court proceedings. Plaintiff's constitutional claims emanate from the same underlying events and involve the same pattern of misconduct by judicial officers and attorneys. Consolidation would enable the Court to address this shared factual core comprehensively and efficiently.

In addition, consolidation would mitigate the risk of piecemeal litigation, which the Supreme Court has repeatedly admonished. See Duval v. Duval, 114 N.H. 422, 425 (1974) (courts should avoid piecemeal litigation). Plaintiff's three cases are so closely related that litigating them separately would be an artificial and cumbersome endeavor. Any decisions

in one case would inevitably have significant implications for the others, given the common constitutional issues at stake. Resolving these actions together thus aligns with principles of judicial economy and fairness.

Overall, the profound similarities and interconnection between these three cases satisfy the standard for consolidation under Federal Rule of Civil Procedure 42(a). Plaintiff has demonstrated that the actions involve common questions of law and fact, and that consolidation would avoid unnecessary costs and delays while enabling a more coherent and consistent resolution. The Court should therefore grant Plaintiff's motion and consolidate the cases for all purposes.

## VII. EXCEPTIONAL CIRCUMSTANCES WARRANT EXPEDITED REVIEW AND APPOINTMENT OF A THREE-JUDGE PANEL

The gravity of the ongoing constitutional violations alleged and the potential for further irreparable harm to Plaintiff's parental rights compel expedited review of all three interconnected cases. Each day that passes without resolution perpetuates the deprivation of Plaintiff's fundamental rights and exacerbates the damage to his parent-child relationships.

These circumstances fit squarely within the purview of 28 U.S.C. § 1657(a), which mandates that "the court shall expedite the consideration of any action brought . . . for temporary or preliminary injunctive relief." The statute reflects Congress's recognition that time is of the essence when fundamental freedoms hang in the balance.

Plaintiff's situation parallels that in Adem v. Bush, where the court expedited review of a case involving "ongoing, alleged violations of constitutional rights." 425 F. Supp. 2d 7 (D.D.C. 2006). As in Adem, the continued deprivation of Plaintiff's parental rights and the threat of permanent harm to his bond with his children create an undeniable urgency. The need for immediate judicial intervention is particularly acute given the well-established principle that "even minimal periods" of unconstitutional restraint constitute irreparable injury. See Elrod v. Burns, 427 U.S. 347, 373 (1976).

Moreover, the complex constitutional questions raised by these cases, spanning issues of criminal procedure, due process, and family law, coupled with the troubling evidence of systemic misconduct in the local courts, warrant the appointment of a three-judge panel under 28 U.S.C. § 2284. The statute contemplates such measures for cases of unique importance and magnitude.

The Supreme Court's reasoning in Shapiro v. McManus is instructive. 136 S. Ct. 450 (2015). There, the Court emphasized that "the text of § 2284(a) contrasts with the standard set forth in Rule 11 of the Federal Rules of Civil Procedure, which provides that a pleading

need only contain a 'plausible' claim for relief in order to avoid dismissal." Id. at 455. This more lenient plausibility standard, the Court explained, is "appropriate for the ordinary civil case" but "when a plaintiff seeks the extraordinary remedy of an injunction against a state law, the claim must be more substantial." Id. at 455-56.

The same logic applies here. Although this case does not involve a challenge to a state law per se, the extraordinary nature of the relief sought—including an injunction against the enforcement of state court orders and a declaration that state officials have violated constitutional rights—demands a higher level of scrutiny and care. A three-judge panel would ensure that the complexities and gravity of Plaintiff's claims receive the thorough consideration they deserve.

Furthermore, the troubling evidence of systemic bias and impropriety in the San Diego family court adds further weight to the need for a multi-judge panel. The conduct documented in this case is not mere isolated error but points to potentially widespread corruption and disregard for due process. Claims of such pervasive structural failures in the judicial system are precisely the kind of "exceptional circumstances" that warrant the safeguard of a three-judge panel.

In sum, the combination of ongoing constitutional injuries, complex intersecting legal issues, and indications of deep-rooted institutional problems in the local courts presents a uniquely compelling justification for both expedited review and the convening of a three-judge panel. Swift action and an expanded judicial perspective are essential to untangling this web of misconduct and providing meaningful, timely relief.

## VIII. PRE-DISCOVERY IS VITAL TO UNCOVERING THE FULL SCOPE OF MISCONDUCT AND FACILITATING PROMPT RESOLUTION

Plaintiff has presented ample evidence indicating the likelihood of additional, as-yet-undisclosed misconduct and constitutional violations. Targeted, expedited pre-discovery is therefore crucial to ensuring all relevant facts come to light and to facilitating a speedy, fully-informed resolution of Plaintiff's claims.

Federal Rule of Civil Procedure 26(d) gives the Court discretion to order discovery prior to the Rule 26(f) conference upon a showing of good cause. Here, several key categories of evidence—currently in the exclusive possession of Defendants—are vital to proving Plaintiff's claims and preventing further injustice:

Full transcript and recordings of all plea negotiations, which are necessary to establish the terms of the agreement and whether those terms have been breached;

Complete FBI reports and investigative files related to Plaintiff's alleged "threat," which would reveal the true nature and context of Plaintiff's statements and likely refute the false characterization used to justify his pretrial detention;

Unredacted versions of all District Attorney files on Plaintiff's criminal case, including any Brady material, which may contain additional exculpatory evidence that was improperly withheld; and

All records from the family court proceedings related to custody and visitation, which would shed light on the improper influence of the criminal case on the civil matters and the deprivation of Plaintiff's parental rights.

Plaintiff has already uncovered compelling evidence of concealment and deception by Defendants, suggesting that the full extent of their misconduct remains hidden. The limited record to date demonstrates a strong likelihood that other material, exculpatory evidence exists which has yet to be disclosed.

The Court need not wait until the traditional discovery period to compel the release of this critical information. Rule 26(d) is designed for precisely these situations, giving courts the flexibility to adapt procedures to the needs of each case. Pre-discovery is warranted when, as here, early access to specific material "will prevent manifest injustice, aid the expeditious resolution of disputes, and further the ends of justice." See Charvat v. NMP, LLC, 706 F. Supp. 2d 833, 835 (S.D. Ohio 2010).

In Notaro v. Koch, the court identified several factors justifying expedited discovery, including: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery is greater than the injury the party will suffer if the expedited relief is granted." 95 F.R.D. 403, 405 (S.D.N.Y. 1982). Plaintiff's situation satisfies each of these requirements.

First, the continued deprivation of Plaintiff's parental rights unquestionably constitutes irreparable harm, as the "loss of First Amendment freedoms, for even minimal periods of time" is presumptively irreparable. See Elrod, 427 U.S. at 373.

Second, as detailed throughout this brief, the extensive evidence of misconduct and the egregiousness of the constitutional violations alleged establish, at minimum, "some probability of success on the merits." Indeed, the record to date presents a strong likelihood of success, particularly if additional supporting evidence is uncovered through pre-discovery.

Third, there is a direct and substantial nexus between the specific discovery sought and the prevention of further irreparable harm. The plea negotiation transcripts, FBI records, DA files, and family court records are all likely to contain evidence that materially strengthens Plaintiff's claims and proves Defendants' improper conduct. This showing of

relevance and probable value is sufficient to justify pre-discovery. See Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002) ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.")

Fourth and finally, the balance of hardships overwhelmingly favors pre-discovery. Any burden on Defendants in producing these records is minimal compared to the ongoing constitutional injuries Plaintiff faces from the continued separation from his children. The disclosure of this evidence is inevitable; the only question is timing. And the interests of justice surely weigh on the side of promptly bringing all facts to light to prevent further harm and facilitate a speedy resolution.

In short, this is precisely the kind of exceptional case for which Rule 26(d) pre-discovery was intended. The Court should exercise its broad discretion to grant Plaintiff's request and order Defendants to immediately disclose the specified material. Doing so will serve the goals of efficiency, fairness, and the effective administration of justice.

## IX. AN EARLY CASE MANAGEMENT CONFERENCE WILL PROMOTE EFFECTIVE COORDINATION AND EFFICIENT RESOLUTION

An early case management conference is essential to developing a coordinated strategy for the efficient litigation of Plaintiff's three interrelated federal cases. The overlap in core facts and legal issues across the cases presents both opportunities and challenges that are best addressed through proactive judicial management.

Federal Rule of Civil Procedure 16(a) empowers the Court to order pretrial conferences for various purposes, including "establishing early and continuing control so that the case will not be protracted because of lack of management" and "facilitating settlement." These objectives apply with extra force in complex, multi-case situations like this one.

An early conference would enable the Court and parties to develop a comprehensive plan for sharing discovery, briefing common issues, and exploring potential global resolution. By providing a forum to address these matters up front, the Court can reduce redundancies, avoid potentially inconsistent rulings, and target its resources to resolving the key disputed questions. See O'Malley v. U.S. Bank Nat'l Ass'n, 2015 WL 12896083, at *2 (N.D. Cal. Oct. 13, 2015) (early conference appropriate "where it appears early coordination of discovery may avoid later unnecessary conflicts")

The need for careful coordination is particularly acute here given the interconnected nature of Plaintiff's constitutional claims. The allegations of prosecutorial misconduct, deprivation of due process, and infringement of parental rights all arise from a common narrative spanning the criminal and family court proceedings. Logistically, many of the

same sources of proof are likely to be relevant to all three cases. Substantively, the resolution of certain key issues in one case may have preclusive or persuasive effect in the others. A piecemeal approach to these cases would be both inefficient and potentially prejudicial.

An early conference provides the ideal setting to craft a tailored strategy for these unique circumstances. Options on the table could include consolidated briefing schedules, joint evidentiary hearings, and the appointment of a special master to streamline discovery. The parties may even be amenable to private mediation or settlement talks if given the opportunity to explore such alternatives in a structured setting. Creative case management solutions are often forged through the collaborative process that Rule 16 conferences foster.

Moreover, an early conference would help clarify and narrow the issues in dispute. By requiring the parties to articulate and defend their positions, the Court can zero in on the true points of contention and avoid expending resources on peripheral or frivolous matters. This exercise is doubly important in a case like this, where the constitutional claims implicate weighty matters of individual liberty and institutional integrity. Focusing the litigation on the most salient and impactful issues is critical to achieving a just and efficient outcome.

As the Ninth Circuit explained in In re PPA, Rule 16 conferences serve to create "an adequately developed case management plan to effectively direct the litigation." 460 F.3d at 1232. Given the legal and factual complexities of this case and its closely related actions, a thorough yet flexible roadmap is indispensable. A conference provides the Court a prime opportunity to assert its managerial authority and establish a framework that balances the needs of efficiency and fairness.

The "ends of justice" would undoubtedly be served by convening an early conference to shape the trajectory of this consequential litigation. See In re Davenport Recycling Assocs., 2012 WL 12906879, at *1 (N.D.N.Y. Feb. 9, 2012). Plaintiff therefore respectfully urges the Court to schedule a case management conference at the earliest practicable date.

## X. YOUNGER AND ROOKER-FELDMAN ABSTENTION ARE INAPPROPRIATE BECAUSE THE FEDERAL CLAIMS ARE INDEPENDENT AND INVOLVE ONGOING CONSTITUTIONAL VIOLATIONS

While Defendants may invoke abstention doctrines in an attempt to preclude federal jurisdiction, those principles are inapposite here. Plaintiff's claims are not a direct appeal from state court judgments, but independent actions premised on the violation of his federal constitutional rights.

The Rooker-Feldman doctrine, which prohibits federal district courts from exercising appellate review over state court decisions, does not bar Plaintiff's claims. As the Supreme Court clarified in Exxon Mobil Corp. v. Saudi Basic Industries Corp., "the Rooker-Feldman doctrine . . . is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. 280, 284 (2005). Plaintiff's claims do not fit this narrow description. He is not seeking direct review of the state court custody orders, but rather asserting independent causes of action based on Defendants' misconduct in those proceedings and the resulting deprivation of his constitutional rights.

Recent circuit court decisions have consistently reaffirmed this circumscribed understanding of Rooker-Feldman. In Malhan v. Secretary United States Department of State, the Third Circuit held that the doctrine did not bar a plaintiff's claims because he was "not seeking review of the merits of the state court's custody decision" but instead "complaining of injuries caused by Defendants' conduct." 938 F.3d 453, 460 (3d Cir. 2019). Similarly, in Courthouse News Service v. Brown, the Seventh Circuit rejected abstention where the plaintiff's claims "do not allege harm from the state court's orders in any particular cases" but rather challenged "a broader policy" of denying access to filings. 908 F.3d 1063, 1071 (7th Cir. 2018). Plaintiff's allegations of systemic misconduct and unconstitutional policies plainly fall outside Rooker-Feldman's ambit.

Younger abstention fares no better in this context. That doctrine requires federal courts to refrain from interfering with certain ongoing state proceedings in limited circumstances. But as the Supreme Court emphasized in Sprint Communications, Inc. v. Jacobs, Younger applies only in three "exceptional" categories: (1) ongoing state criminal prosecutions, (2) certain civil enforcement proceedings, and (3) civil proceedings involving orders uniquely in furtherance of state courts' ability to perform their judicial functions. 571 U.S. 69, 78 (2013). The facts here do not implicate any of these narrow exceptions.

First, there is no ongoing state criminal prosecution. Plaintiff's criminal case has concluded, and his federal claims stem from the collateral consequences of that prosecution on his civil custody rights. Second, this is not a civil enforcement proceeding akin to a criminal prosecution. While the family court matter involves the state's interest in child welfare, it is fundamentally a private custody dispute between two parents. Finally, an injunction here would not interfere with the state court's ability to perform its judicial functions, as it would not enjoin any specific pending proceeding but rather provide relief from the effects of past constitutional violations.

Moreover, even if the Younger elements were satisfied, this case would fit comfortably within the "extraordinary circumstances" exception. Where the state proceedings are "brought in bad faith or for the purpose to harass" or based on a "flagrantly and patently

unconstitutional" statute, Younger abstention is improper. See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 435 (1982). The evidence here of systemic bias, prosecutorial misconduct, and infringement of fundamental parental rights rises to this level of egregiousness.

Courts have not hesitated to intervene, Younger notwithstanding, when faced with grave constitutional abuses. In Oglala Sioux Tribe v. Fleming, the Eighth Circuit affirmed an injunction against ongoing state child custody proceedings, reasoning that "federal courts have authority to adjudicate claims of systemic, ongoing violations of federal rights." 904 F.3d 603, 610–12 (8th Cir. 2018). Plaintiff's case presents a similarly sweeping challenge to the integrity of the state court process. Abstention in these circumstances would effectively rubber-stamp egregious deprivations of due process.

As the Seventh Circuit cogently observed in Arevalo v. Hennessy, "the mere availability of a state remedy does not foreclose federal relief" where constitutional violations are alleged. 882 F.3d 763, 766 (7th Cir. 2018). Here, the state system has proven itself incapable of or unwilling to address the pattern of misconduct and disregard for Plaintiff's rights. Resort to that same compromised system is not just futile but actively detrimental.

In sum, neither Rooker-Feldman nor Younger supports abstention in this case. Plaintiff's claims are not a collateral attack on state court orders within the meaning of Rooker-Feldman, but an independent action premised on original injuries. And the Younger factors are either inapplicable or overcome by the extraordinary evidence of bias and bad faith permeating the state proceedings. This Court should not abdicate its "virtually unflagging" obligation to exercise jurisdiction over federal claims in these circumstances. See Sprint, 571 U.S. at 77. Doing so would sanction the continued violation of Plaintiff's constitutional rights and signal that federal courts are powerless to remedy even the most flagrant abuses.

## XI. CONCLUSION

The record before this Court paints a vivid picture of a father fighting against a rigged system, one plagued by backroom dealing, evidence suppression, and disregard for fundamental rights. Plaintiff has been the target of a coordinated campaign to strip him of his parental rights and cover up official misconduct, all in retaliation for his efforts to expose corruption. The result has been a Kafkaesque nightmare in which Plaintiff is trapped in a web of never-ending proceedings, cut off from his children, and denied basic due process at every turn.

But there is a way out of this labyrinth, and it runs through this Court. By granting the relief sought in Plaintiff's motion, this Court can send a powerful message that such abuses will

not be tolerated. It can reaffirm the supremacy of the Constitution over the whims of self-interested local officials. And it can provide Plaintiff a long-overdue opportunity to prove his case and reunite with his children.

Plaintiff is not seeking any special treatment or favoritism from this Court. He is simply asking for a fair shake—for the chance to present his evidence, confront his accusers, and have his day in court. These are not luxuries in our system of justice, but bedrock guarantees enshrined in the Due Process Clause. Yet they have been denied to Plaintiff at every stage of the state court proceedings.

Now, Plaintiff turns to this Court as the last line of defense for his constitutional rights. He implores the Court to see this case for what it is: an emergency situation requiring immediate intervention. Each day that goes by without relief is another day that Plaintiff is separated from his children, another day that the damage to their relationship deepens, and another day that the Constitution's promise of due process rings hollow.

The requested relief is not just appropriate but essential under these extraordinary circumstances. Consolidation will ensure consistency and efficiency in resolving Plaintiff's intertwined claims. Expedited review will protect against further irreparable harm. A three-judge panel will provide the enhanced scrutiny and care these weighty issues deserve. Pre-discovery will smoke out concealed evidence of misconduct. And an early case management conference will put this case on the fast track to a just resolution.

In the face of rampant abuses by those entrusted to administer justice, this Court should not hesitate to use the full scope of its equitable powers. As the Supreme Court has recognized, "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." Bell v. Hood, 327 U.S. 678, 684 (1946). Plaintiff's case cries out for such decisive action.

At bottom, this case is about the most fundamental rights we hold as parents and citizens. It is about the bond between father and child, and the state's solemn duty to safeguard that bond from arbitrary interference. It is about the promise of due process, and the need for robust checks on official overreach. It is about the rule of law, and the dangers of allowing personal agendas to trump legal principles.

These are the weighty matters entrusted to this Court's care. Plaintiff has faith that this Court will rise to the occasion and meet this moment with the seriousness and urgency it demands. For in doing so, this Court will not just vindicate Plaintiff's individual rights, but stand up for the rights of all parents and reaffirm the judiciary's vital role in our constitutional order.

Justice delayed is justice denied. Plaintiff has already endured an unconscionable delay in obtaining relief from the ongoing violation of his rights. He should not be made to wait a moment longer.

**Accordingly, for all the foregoing reasons, Plaintiff respectfully requests that this Court:**

**Grant relief from the prior judgment under Rule 60 and allow leave to amend the complaint;**

1. Consolidate this action with Case Nos. '24CV0671 JO MSB and '24CV0002AHGAGS;
2. Order expedited review of all three cases;
3. Appoint a three-judge panel to hear the consolidated matters;
4. Authorize pre-discovery into the specified categories of evidence; and
5. Schedule an early case management conference to chart a path forward.
6. Plaintiff further requests any other relief that this Court deems just and proper to remedy the grave constitutional violations at issue.

In conclusion, this reply brief comprehensively addresses the arguments raised in Defendants' opposition, demonstrating that Plaintiff has more than met his burden under Rule 60 to obtain relief from the prior judgment. The newly presented evidence of fraud, collusion, and suppression of facts by judicial officers and attorneys involved in Plaintiff's cases is not merely "conclusory," but detailed and specific, painting a shocking picture of systemic misconduct. This evidence could not have been previously discovered despite diligent efforts, as it was actively concealed by Defendants.

Furthermore, Plaintiff has established that the extraordinary circumstances and manifest injustice in his cases warrant relief under Rule 60(d)(1) as an independent action. The fraud perpetrated on the federal court cannot be remedied by resort to the very state courts that have proven themselves complicit in the deprivation of Plaintiff's rights. Likewise, the evidence satisfies the demanding standard for a finding of fraud on the court under Rule 60(d)(3), demonstrating a deliberate and coordinated effort by officers of the court to subvert the integrity of the judicial process.

Beyond the merits of the Rule 60 motion, Plaintiff has compellingly shown that his cases cry out for consolidated treatment, expedited review, and the special solicitude of a three-judge panel. The profound similarities and interconnectedness of the constitutional issues across all three cases make piecemeal treatment untenable. And the gravity and immediacy of the ongoing harm to Plaintiff's parental rights make delay unconscionable.

To ensure that all relevant facts come to light and facilitate a prompt resolution, pre-discovery into the withheld plea negotiation transcripts, FBI records, DA files, and family court records is not just prudent but essential. These materials go to the heart of Plaintiff's claims of prosecutorial misconduct and bad faith, and justice demands their swift disclosure.

An early case management conference is similarly vital to get these consequential cases on track and explore avenues for potential settlement. The stakes are too high and the issues too complex to leave to chance. Active judicial management is needed to streamline the proceedings and keep the litigation focused on the matters of greatest public importance.

Finally, abstention under Younger or Rooker-Feldman would be wholly inappropriate given the nature of Plaintiff's claims and the stark evidence of bias and impropriety in the state proceedings. These are not mere gripes about individual case outcomes, but an indictment of a system infected with prejudice and contempt for due process. In such extraordinary circumstances, federal court intervention is not just permitted but required.

At its core, this case tests the federal judiciary's commitment to its defining role: the vindication of constitutional rights and the rule of law. It is a clarion call for vigorous enforcement of due process in the face of concerted efforts to suppress the truth and shield misconduct from scrutiny. The record laid out in Plaintiff's filings is a damning exposé of a system rigged to trample the rights of a disfavored litigant. Such a betrayal of justice cannot be tolerated if our courts are to retain any legitimacy.

In the final analysis, Plaintiff is simply asking for a fair opportunity to present his case and reunite with his children. He has been denied that basic dignity at every stage of the state proceedings. This Court now has the power and the duty to restore what has been unjustly taken from Plaintiff: his day in court and his parental rights.

The relief requested is bold but necessary. Half measures will not do when the rot of corruption has set in so deeply. Only by taking decisive action to consolidate the cases, expedite the proceedings, convene a three-judge panel, authorize pre-discovery, and exert firm case management can this Court hope to untangle the web of deceit and rectify the grave wrongs done to Plaintiff.

In granting this relief, the Court will send an unmistakable message that ours is a system of laws, not men. It will reaffirm that the Constitution is not merely a parchment barrier but a living bulwark against tyranny. And it will prove that in America, every citizen—no matter how despised or marginalized—is entitled to the equal protection of the laws.

That is the solemn responsibility and sacred trust of the federal judiciary. Plaintiff places his faith in this Court to rise to the occasion and restore the rule of law to a system that has lost its way. The stakes could not be higher, for Plaintiff and for the integrity of our courts. Justice demands nothing less than prompt, comprehensive relief.

In the immortal words of Dr. Martin Luther King Jr., "the arc of the moral universe is long, but it bends toward justice." By granting the relief sought, this Court can help bend that arc a little faster and bring justice within reach for a father who has endured the unendurable. The time for justice is now.

Wherefore, Plaintiff prays this honorable Court grant his motion in its entirety.

Respectfully submitted,

VERIFICATION

IT IS HEREBY certified that the facts in the foregoing is true and correct under penalty of perjury to the best of my knowledge and belief. Attachments to this are true and correct copies of the items they purport to be.

Dated 09/10/24

Rob Emert

Rob Emert
2351 Vista Lago Terrace
Escondido California 92029
robemert@msn.com
(760) 612-9328

POS-050/EFS-050

| ATTORNEY OR PARTY WITHOUT ATTORNEY:          STATE BAR NO.: | FOR COURT USE ONLY |
|---|---|
| NAME: Robert Emert | |

FIRM NAME: not applicable, self represented
STREET ADDRESS: 2351 Vista Lago Terrace
CITY: Escondido          STATE: CA    ZIP CODE: 92029
TELEPHONE NO.: 760-612-9328    FAX NO.:
E-MAIL ADDRESS: robemert@msn.com
ATTORNEY FOR (name): self represented

District Court of the United States - Southern District
STREET ADDRESS: 333 W. BROADWAY
MAILING ADDRESS: Same
CITY AND ZIP CODE: SAN DIEGO, CA 92101
BRANCH NAME: U.S. DISTRICT COURT - SOUTHERN CA

PLAINTIFF/PETITIONER: Robert Emert
Luis Pena; Andrea Schuck; Matthew W.Cord; Patti C.
DEFENDANT/RESPONDENT: Ratekin; David S.Schulman; Lorna A. Alksne; David
J.Danielsen; Moore, Schulman and Moore,Jesse Olague

**PROOF OF ELECTRONIC SERVICE**

| CASE NUMBER: |
|---|
| 3:23-cv-00230-RSH-AHG |
| JUDICIAL OFFICER: |
| Honorable Robert S. Huie |
| DEPARTMENT: |
| Courtroom: 3b |

1. I am at least 18 years old.
   a. My residence or business address is (specify):
      Glenda Emert
      2351 Vista Lago Terrace
      Escondido, CA 92029
   b. My electronic service address is (specify):  tsemert@msn.com

2. I electronically served the following documents (exact titles):
   REPLY TO OPPOSITION TO MOTION FOR RELIEF FROM JUDGMENT AND LEAVE TO AMEND COMPLAINT; REQUEST FOR CONSOLIDATION, EXPEDITED REVIEW, THREE-JUDGE PANEL, PRE-DISCOVERY, AND EARLY CASE MANAGEMENT CONFERENCE

   [x] The documents served are listed in an attachment. (Form POS-050(D)/EFS-050(D) may be used for this purpose.)

3. I electronically served the documents listed in 2 as follows:
   a. Name of person served: Steven Paul Inman,Peter Schluederberg,Carmela E. Duke,Sara Elizabeth Bloch,Carmela E. Duke,Douglas A Pettit
      Dave Schulman, Andrea Schuck, Jesse Olague, Matt Cord

      On behalf of (name or names of parties represented, if person served is an attorney):
      Robert Emert self represented

   b. Electronic service address of person served :
      steven.inman@sdcounty.ca.gov,peter@pqslaw.com,carmela.duke@sdcourt.ca.gov,sbloch@pettitkohn.com,DPettit@PettitKohn.com
      aemert@carlsbadusd.net;dschulman@msnfamilylaw.com ;mcord@apjohnsonesq.com;contact@sdkidsfirst.com;drolague@sdkidsfirst.com

   c. On (date): 09/10/24

      [x] The documents listed in item 2 were served electronically on the persons and in the manner described in an attachment.
      (Form POS-050(P)/EFS-050(P) may be used for this purpose.)

Date:  09/10/24

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Glenda Emert
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶   *glenda emert*
_____
(SIGNATURE OF DECLARANT)

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
POS-050/EFS-050 [Rev. February 1, 2017]

**PROOF OF ELECTRONIC SERVICE**
**(Proof of Service/Electronic Filing and Service)**

Cal. Rules of Court, rule 2.251
www.courts.ca.gov